Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| ELIZABETH HERNANDEZ,<br><br>    Plaintiff,<br><br>vs.<br><br>ROB KOLKMAN, CONSTABLE KOLKMAN LLC, and JOHN DOES 1 -5,<br><br>    Defendants. | **COMPLAINT**<br><br>*(Jury Demanded)*<br><br>Case Number: 2:23-cv-00772-DOA<br>Judge: Daphne A. Oberg |

### JURISDICTION AND VENUE

1.      This action arises from Defendants' violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. § 1692, *et seq.*, the Utah Consumer Sales Practices Act (UCSPA) Utah Code Ann. § 13-11-1 *et seq*.; common law fraud; and for deprivation of Plaintiff's civil rights under 42 U.S.C. § 1983.

2.      Jurisdiction in this case is founded upon 28 U.S.C. § 1331, § 1367, and 1343(a)(3) which grant the United States District Courts jurisdiction to hear this action without regard to the amount in controversy.

3.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and transactions giving rise to Plaintiff's claims occurred within this federal judicial district and because the Defendants each conduct business and reside in the State of Utah within the meaning of 28 U.S.C. § 1391(b) and (c).

4.      This Court has personal jurisdiction over each of the Defendants in this case because they have continuous and systematic contacts with the State of Utah including, but not limited to, collecting debt in Utah from Utah residents, depriving Utah residents of their civil rights, residing in Utah, conducting business in Utah, enforcing consumer transactions in Utah, entering into agreements with Utah consumers, contacting and communicating with consumers in Utah and others by telephone, email, Internet communications, and other instruments of interstate commerce, and by availing themselves of the benefits of the Utah legal and judicial systems.

PARTIES

5.      The Plaintiff is a natural person who resides in Salt Lake County, Utah and was directly harmed by the Defendant's conduct and violations complained of herein.

6.      Defendant Rob Kolkman is an individual who holds himself out as Salt Lake County constable. He is believed to reside at 6928 West Hunter Valley Drive, West Valley, Utah 84128. As the managing member of Defendant Constable Kolkman LLC, Kolkman regularly collects debt and plays an active role in the management of the company. He also formulated, directed, controlled, had the authority to control, or participated in the debt collection practices of the other Defendants, including the acts and practices alleged in this Complaint.

7.      Defendant Constable Kolkman LLC is a limited liability company believed to be located at 6928 West Hunter Valley Drive, West Valley, Utah 84128. This company regularly collects debt and participated and played an active role in formulating, directing, and controlling the debt collection practices of the other Defendants, including the acts and practices alleged in this Complaint.

8.      The John Doe Defendants are individuals or companies whose true identities are unknown at this time. They each regularly collect debt and participated and played an active role in formulating, directing, and controlling the debt collection practices of the other Defendants, including the acts and practices alleged in this Complaint. One of the John Doe Defendants who worked as an agent of the other Defendants is believed to be named "Cory."

9.      Upon information and belief, one of the John Doe Defendants is the Utah Peace Officer's Association located at 5671 South Redwood Rd. #19, Salt Lake City, Utah 84123.

10.     At all times relevant to this Complaint, each of the Defendants regularly collected debt, resided and worked in Utah, and participated in, directed, controlled, authorized, ratified, cooperated in, or otherwise conspired with the other Defendants to engage in the acts and practices alleged in this Complaint.

11.     When this Complaint refers to the "Defendants" that specifically includes all of the constables, their companies, and the John Doe Defendants.

12.     At all times material to this Complaint, each of the Defendants regularly collected or attempted to collect, directly or indirectly, consumer debts, including a debt allegedly owed by the Plaintiff. Each Defendant is therefore a "debt collector" as defined by 15 U.S.C. § 1692a(6).

13.     None of the Defendants are government employees or agencies.

14.     None of the conduct complained of herein constitutes the official duties Utah law authorizes constables to perform.

FACTUAL ALLEGATIONS

**Alleged Debt**

15.     Sometime prior to September 18, 2020 someone named Elizabeth Hernandez incurred a debt (alleged debt) with Mountain America Credit Union.

16.     After the alleged debt fell past due, Mountain America Credit Union assigned it to a debt collection company called N.A.R. to collect.

17.     N.A.R. then hired Olson Associates P.C. dba Olson Shaner and Chip Shaner (hereafter jointly referred to as Olson Shaner) to collect the alleged debt on its behalf as agents.

18.     Olson Shaner then commenced a lawsuit on September 18, 2020 against the true debtor in Salt Lake County, Utah on behalf of N.A.R. Inc.[1]

19.     The alleged debt Olsen Shaner was seeking to collect was a personal account originated by Mountain America Credit Union and used for personal, family, or household purposes.

20.     Shortly after filing the case, Olson Shaner obtained a judgment in the amount of $5,969.78.

21.     On August 9, 2023 Olson Shaner requested a Writ of Execution that the Court issued the next day on August 10, 2023.

22.     The amount due for the alleged debt stated in the Writ of Execution was $6,148.81.

23.     Plaintiff is not the Eliabeth Hernandez that owes the alleged debt. Plaintiff is a victim of Defendants' failures to correctly identify the true debtor.

---

[1] *N.A.R. Inc., v. Elizabeth Hernandez*, Case No. 209913641

24.    Plaintiff never owed the alleged debt. She is not the Elizabeth Hernandez that originated the debt, she did not benefit from the debt, and she did not authorize or approve of the debt.

25.    Plaintiff is, and always was, a completely innocent and unconnected third party with no liability for the debt whatsoever.

**Assignment to the Constable Defendants**

26.    Sometime after obtaining the Writ of Execution, Olson Shaner and N.A.R. Inc., hired the constable Defendants as their surrogate debt collectors and provided them with court documentation and instructions about how to proceed to collect the alleged debt from the Plaintiff.

27.    Because Olson Shaner engaged the constable Defendants to collect as its surrogates, Olson Shaner and N.A.R. both stopped any of their own efforts to collect the alleged debt.

28.    The constable Defendants then followed Olson Shaner's and N.A.R.'s instructions in collecting and attempting to collect the alleged debt by, among other things, threatening to seize and sell Plaintiff's personal property, negotiating payment arrangements, collecting periodic payments, placing collection calls, mailing collection letters, adding amounts to the debt, and taking other similar actions.

29.    Everything the constables did to collect the debt on behalf of N.A.R. Inc., and Olson Shaner was within the course and scope of the authority N.A.R. and Olson Shaner granted to the constables and for the purpose of collecting money on their behalf.

30.    In the alternative, the constable Defendants' were falsely and fraudulently holding themselves out as agents of  N.A.R. and Olson Shaner.

**Defendants' August 16, 2023 Collection Letter**

31.     Sometime on or around August 16, 2023, the Defendants, while employed as collectors for Olson Shaner and N.A.R. Inc., contacted Plaintiff by mail about paying the alleged debt originally owed to Mountain America Credit Union even though she was not the true debtor.

32.     An insignia of a sheriff-style law enforcement badge shaped like a star was printed at the top of the Defendants' August 16, 2023 collection letter.

33.     The letter the Defendants mailed to Plaintiff on August 16, 2023 in attempting to collect the debt from Plaintiff included or referred to a Writ of Execution obtained by Olson Shaner to collect the alleged debt even though she never owed the alleged debt.

34.     The August 16, 2023 collection letter represented that Plaintiff owed a balance due of $6,408.04.

35.     The August 16, 2023 collection letter represented that Plaintiff owed $259.23 for costs of the writ of execution that were never actually incurred.

36.     The August 16, 2023 collection letter demanded contact to make payment arrangements within ten days of the date of the letter.

37.     The August 16, 2023 collection letter threatened to add additional court costs if Plaintiff did not make payment arrangements.

38.     The August 16, 2023 collection letter was the initial collection communication the Defendants had with the Plaintiff but it did not provide notice that it was from a debt collector attempting to collect a debt and that any information obtained will be used for that purpose.

39.     None of the Defendants ever sent Plaintiff the notices required by 15 U.S.C. §§ 1692e(11) or 1692g(1).

**Defendants' August 21, 2023 Collection Letter**

40.     Sometime on or around August 21, 2023, the Defendants contacted Plaintiff in person about paying the alleged debt in accordance with the course and scope of the authority granted to them by Olson Shaner and N.A.R.

41.     An insignia of a sheriff-style law enforcement badge shaped like a star was printed at the top of the Defendants' August 21, 2023 collection letter.

42.     The August 21, 2023 collection letter was styled as a court filing or legal process even though it was not.

43.     The letter the Defendants delivered to Plaintiff on August 21, 2023 in an attempt to collect from Plaintiff included or referred to a Writ of Execution and Notice of Sale.

44.     The August 21, 2023 collection letter represented that sale fees may have been added to the alleged debt even though no such fees were ever incurred or owed by Plaintiff.

45.     The August 21, 2023 collection letter represented that a service fee of $50.00, mileage fee of $26.00, commission of $97.23, a notices fee of $60.00 and a second mileage fee of $26.00 were added to the alleged debt even though such fees were never actually incurred, permitted, or authorized.

46.     The August 21, 2023 collection letter represented that the amount of the alleged debt was $6,408.04.

**Defendants' September 15, 2023 Collection Letter**

47.     Sometime on or around September 15, 2023, the Kolkman Defendants contacted Plaintiff by mail about paying the alleged debt in accordance with the course and scope of the authority granted to them by Olson Shaner and N.A.R.

48.     An insignia of a sheriff-style law enforcement badge shaped like a star was printed at the top of the Defendants' September 15, 2023 collection letter.

49.     The letter the Kolkman Defendants mailed to Plaintiff on September 15, 2023 as collection agents for N.A.R., and Olson Shaner included or referred to a Notice of Sale.

50.     The September 15, 2023 collection letter threatened to add additional amounts to the alleged debt if Plaintiff did not make payment arrangements.

51.     The September 15, 2023 collection letter did not provide notice that it was from a debt collector attempting to collect a debt and that any information obtained will be used for that purpose.

**Defendants' Notice of Sale**

52.     The Notice of Sale included with the Defendants' September 15, 2023 collection letter stated that the Defendants were holding a sale of Plaintiff's personal property at Plaintiff's home on October 6, 2023 at 15:50.

53.     The Notice of Sale included a solicitation of payment by card, cash, or certified funds and represented that "immediate" contact to make a payment or arrangements was required to cancel the threatened sale.

54.     The representations and implications made in the Notice of Sale were false. No sale was actually scheduled to occur and Plaintiff did not need to contact Defendants to make a payment or arrangements to cancel the nonexistent sale.

Plaintiff did not even owe the debt or any of the amounts Defendants demanded and represented were owed.

55.    Defendants never carried out their threat to seize and sell Plaintiff's property.

56.    Because no sale ever actually occurred, none of the Defendants ever incurred any of the travel, advertising, service of process, or other similar fees and costs Defendants claimed to have incurred.

57.    Upon information and belief, none of the Defendants are appointed as constables by Salt Lake County.

58.    Defendants never intended and were not legally capable of carrying out their threat of selling Plaintiff's property on October 6, 2023 as threatened.

59.    Because Plaintiff was not the actual debtor who owed the debt, it was never legal to threaten to seize and sell or to actually seize and sell her property.

60.    Defendants regularly falsely threaten to hold property seizures and sales like the one made in their Notice of Sale without ever actually serving the writs of execution or carrying out those threats.

61.    Defendants have a policy and practice of falsely threatening to seize and sell debtor's property for the purpose of obtaining payments from those debtors rather than actually holding the threatened sales.

62.    There is nothing in Utah law that allows or requires constables to threaten to seize and sell property, negotiate payment arrangements, collect periodic payments, engage in collection telephone calls, mail collection letters, mail collection letters falsely formatted to look like court pleadings, or otherwise act as a debt collector.

63.     On the contrary, Utah law strictly limits a constable's official duties to; (1) attending justice courts within their appointed city or county; (2) executing, serving, and returning legal process within their appointed city or county; and (3) serving process throughout the state.[2] Constables may also evict tenants and execute writs to seize and dispose of property when properly authorized by a court of law.[3]

64.     Utah law also prohibits constables from serving Writs and attempting to seize or sell personal property without first notifying local sheriffs or police departments. That required notification never happened in this case.

**Personal and Telephone Contacts with the Defendants**

65.     In response to Defendants' threats and attempts to collect the debt from her, Plaintiff and her husband spoke with Defendants on multiple occasions by telephone and in person.

66.     During those communications, Plaintiff and her husband provided Defendants written documentation to prove she was not the debtor.

67.     Despite providing written proof she was not the debtor, Defendants continued their collection efforts against the Plaintiff.

68.     At no time during these communications was Plaintiff ever notified that Defendants were debt collectors attempting to collect a debt and that any information obtained will be used for that purpose.

69.     Upon information and belief, additional collection communications similar to this one also occurred.

---

[2] Utah Code Ann. § 17-25-1
[3] Utah Code Ann. §§ 17-25a-3(2), 78B-6-812(1), (3); Utah R. Civ. P. 64(a)(7), (d)

**Court Filings**

70.     In response to Defendants' threats and attempts to collect the debt from her, Plaintiff filed an objection with the court on September 19, 2023 notifying the Defendants she was not the debtor and did not owe the debt.

71.     Because notifying Defendants she was not the debtor and did not owe the debt failed to stop Defendants from collecting and threatening her, Plaintiff hired an attorney.

72.     At Plaintiff's expense, Plaintiff's attorney filed a Notice of Limited Appearance and Motion to Quash the Writ of Execution on September 21, 2023.

73.     A few hours after Plaintiff filed her Notice of Limited Appearance and Motion to Quash, Defendants initiated a telephone call to Plaintiff even though they knew she was represented by counsel.

74.     During the call with the Plaintiff, Defendants apologized and stated that they would take no further efforts to collect from Plaintiff.

75.     Defendants did not, however, provide anything in writing to confirm they were cancelling the threatened sale of Plaintiff's property that they represented was scheduled on October 6, 2023.

76.     Defendants also made no efforts to publicly post a cancellation of the threatened sale.

77.     The reason Defendants did not notify the public the threatened sale was cancelled in because the sale was never actually scheduled to occur.

**Notice of Claim**

78.     Plaintiff filed a Notice of Claim with Salt Lake County and Ogden City on October 16, 2023.

79.     In response to the Notice of Claim, Salt Lake County confirmed that the constables are not employed by the County, affiliated with the County, have never been contracted with the County, and are not agents of the County.

80.     In other cases, Salt Lake and Utah Counties have each confirmed that constables are not government agencies, employees, or agents.

81.     None of the Defendants acts or practices at issue qualify as governmental functions.

82.     Because none of the Defendants are government agencies or employees, and because their conduct does not qualify as governmental functions, Defendants are not entitled to any governmental immunity or any other immunity for the acts and practices at issue in this case.

**Damages**

83.     Plaintiff received and read each of the Defendants' collection letters and she personally participated in at least one collection communication with the Defendants.

84.     Because Plaintiff reasonably believed the Defendants' unintended and unlawful threats and demands, she attempted to object to the Writ of Execution, tried to discuss the incorrect identification of her as the debtor with the Defendants' and was ultimately forced to hire an attorney to defend her from Defendants threats, demands, and attempts to collect the alleged debt.

85.     Because these Defendants knowingly and willfully acted in concert with each other, within the course and scope of their employment and authority granted to each other, and for the common purpose of collecting amounts from the Plaintiff, they are jointly and severally liable for the Plaintiff's damages.

86.     As a direct and proximate result of Defendants' acts and practices, Plaintiff incurred attorney's fees and costs and suffered concrete and actual personal injury damages.

87.     Plaintiff suffered from headaches, sleepless nights, anxiety, shortness of breath, confusion, anger, fear, depression, withdrawal, distrust of authority, loss of focus, and other similar personal physical injuries as a result of the Defendants' acts and practices at issue.

88.     Plaintiff's damages also include, *inter alia*; deprivations of her Constitutional and civil rights, invasion of privacy, intrusion upon her seclusion, emotional distress, humiliation, stress, anxiety, frustration, confusion, panic, fear, outrage, and other personal injuries and emotional distress.

## COUNT I
### Fair Debt Collection Practices Act
*15 U.S.C. § 1692 et seq.*

89.     Plaintiff hereby incorporates all other allegations set forth herein.

90.     Each collection letter and telephone call the Defendants had with the Plaintiff is a "communication" as defined in 15 U.S.C. § 1692a(2).

91.     Defendants are all debt collectors as defined by 15 U.S.C. § 1692a(6) because each Defendant regularly collects or attempts to collect debt originally owed or due to others.

92.     Defendants are all debt collectors as defined by 15 U.S.C. § 1692a(6) since their primary purpose is the collection of debt.

93.     The Defendants each regularly send collection letters, place collection calls, negotiate payment arrangements with Utah consumers, and enforce consumer agreements.

94.     The Defendants regularly contract with N.A.R., Olson Shaner, and others to collect or attempt to collect debt from Utah consumers.

95.     The Defendants regularly send collection letters, engage in collection calls, and negotiate payment arrangements with Utah consumers.

96.     All of the Defendants regularly accept payments from debtors to collect debts owed to others.

97.     The representations, implications, demands, threats, conduct, actions, and omissions by which the Defendants collected the alleged debt caused Plaintiff damages as described herein and were violations of numerous and multiple provisions of 15 U.S.C. § 1692 *et seq*.

98.     By contacting Plaintiff after they were advised she was represented by counsel, Defendants violated 15 U.S.C. § 1692c(a)(2).

99.     By placing an insignia of a sheriff-style law enforcement badge shaped like a star in their collection letters, the Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(1), 1692e(4), 1692e(5), 1692e(6), 1692e(7), 1692e(9), 1692e(10), 1692e(13), 1692e(14), and 1692f.

100.    Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1) by representing that Plaintiff owed for amounts, costs, and fees that were not owed, authorized by the judgment, or permitted by law.

101.    Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, 1692f(1) by threatening to add additional amounts that were not incurred, not permitted by law, and not authorized by the court.

102.    Defendants violated 15 U.S.C. §§ 1692d, 1692d(1), 1692e, 1692e(1), 1692e(2), 1692e(4), 162e(5), 1692e(6), 1692e(9), 1692e(10), 1692e(12), 1692e(13), 1692f, 1692f(1), 1692f(6), and 1692g by representing, implying, or

threatening to seize and sell Plaintiff's property when such action could not be legally taken and was not intended to be taken.

103.    By representing that a sale was scheduled when it was not scheduled, intended, or legal to carry out, Defendants violated 15 U.S.C. §§ 1692d, 1692d(1), 1692e, 1692e(1), 1692e(2), 1692e(4), 162e(5), 1692e(6), 1692e(9), 1692e(10), 1692e(12), 1692e(13), 1692f, 1692f(1), 1692f(6), and 1692g.

104.    Defendants violated 15 U.S.C. § 1692e(11) by failing to disclose in their initial written communication that they were attempting to collect a debt and that any information obtained will be used for that purpose.

105.    Defendants violated 15 U.S.C. §§ 1692e(11), 1692d, and 1692d(6) by failing to disclose in subsequent communications that the communications were from a debt collector.

106.    Defendants violated 15 U.S.C. § 1692g by failing to provide the required notices, failing to allow Plaintiff 30 days to dispute the alleged debt and request verification, and by engaging in other collection acts and practices that overshadowed and were otherwise inconsistent with Plaintiff's rights to dispute the alleged debt and request verification.

107.    Defendants violated 15 U.S.C. § 1692e(12) by representing or implying that the alleged debt had been turned over to innocent purchasers of value when it was not.

108.    Defendants' collection communications, acts, and practices also violated other provisions of the FDCPA.

109.    As a result of the Defendants' violations of the FDCPA, Plaintiff suffered concrete actual damages as described herein and is entitled to an award against the Defendants jointly and severally for causing those damages pursuant to

15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2); and attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT II
### Utah Consumer Sales Practices Act
*Utah Code Ann. § 13-11-1 et seq.*

110.    Plaintiff hereby incorporates all other allegations set forth herein.

111.    The Utah Consumer Sales Practices Act was enacted to "protect consumers from suppliers who commit deceptive and unconscionable sales practices" and to "recognize and protect suppliers who in good faith comply with the provisions of this act."[4]

112.    Under its plain language the UCSPA "shall be construed liberally" in the consumer's favor to promote those policies.[5]

113.    The UCSPA protects consumers from deceptive acts or practices whether they occur before, during, or after the consumer transaction.[6]

114.    The alleged debt was incurred for personal, family, or household purposes. It is therefore a consumer transaction under Utah Code Ann. § 13-11-3(2).

115.    Each collection letter and telephone call the Defendants had with the Plaintiff is also a "consumer transaction" and attempt to enforce the alleged debt under Utah law.

116.    Each Defendant is a supplier since they regularly solicit, engage in, and enforce consumer transactions, whether directly or indirectly. They also received the alleged debt through assignment and then sought to enforce it and regularly do the same in other cases.

---

[4] Utah Code Ann. § 13-11-2
[5] *Id.*
[6] Utah Code Ann. 13-11-4(1)

117.    By engaging in the acts and practices discussed above, Defendants each violated Utah Code Ann. §§ 13-11-4 and 5 which prohibit deceptive and unconscionable collection practices whether they occur before, during, or after the transaction.

118.    Defendants violated the Utah Consumer Sales Practices Act by knowingly and intentionally:

118.1.  contacting Plaintiff directly knowing she was represented by counsel;

118.2.  making false and illegal threats to seize and sell Plaintiff's property;

118.3.  falsely representing or implying their actions were legal and authorized by the law when they were not;

118.4.  charging Plaintiff for amounts she did not agree to pay;

118.5.  adding amounts to the alleged debt Plaintiff did not agree to pay;

118.6.  adding amounts to the alleged debt that were not actually incurred;

118.7.  representing or implying that the constables are government officers, employees, or agencies, when they are not;

118.8.  falsely representing or implying that they and their collection acts and practices are approved, authorized, or otherwise sponsored by the court, county, or other governmental agency;

118.9.  falsely representing that Plaintiff was required to make contact and payment within ten days of the first collection communication when Plaintiff was not so required;

118.10.   falsely indicating or implying that because N.A.R. and Olson Shaner hired the constables to collect as their surrogate debt collectors that

Plaintiff is somehow deprived of her legal and constitutional rights and protections;

118.11.  using the office and status of a constable and acting under the color of law to coerce, intimidate, extort, and trick Plaintiff into making payment arrangements she was not otherwise required to make; and

118.12.  holding the constables out as law enforcement officers when they were collecting debts instead of serving legal process or performing any other lawful duties.

119.    Defendants' other knowing and intentional conduct, threats, representations, and other actions discussed herein also constitute violations of the Utah Consumer Sales Practices.

120.    Defendants' conduct described herein was unconscionable as it was willful and malicious, intentionally fraudulent, or manifested a knowing and reckless indifference toward, and a disregard of, the rights of the Plaintiff.

121.    By engaging in the conduct described herein, the Defendants exercised a gross inequality of bargaining power and deprived Plaintiff of any meaningful choice.

122.    No decent, fair-minded person would view the Defendants' conduct, or the lack of any meaningful choice that conduct created, without being possessed of a profound sense of injustice.

123.    As a result of Defendants' violations of the UCSPA, Plaintiff suffered the concrete actual damages described herein and requests this Court for an award against Defendants, jointly and severally, for actual and punitive damages in an amount to be proven at trial, and for all other relief which Plaintiff may be entitled pursuant to Utah Code Ann. § 13-11-19 and Utah Code Ann. §78B-8-201.

## COUNT III
**Fraud**

124.    Plaintiff hereby incorporates all other allegations set forth herein.

125.    Defendants knowingly and intentionally made fraudulent representations, implications, and threats in connection with collecting the alleged debt, executing and selling Plaintiff's property, soliciting and receiving payment for the alleged debt, enforcing payment agreements without due process of law, the legal authority they are authorized to exercise, and other similar false representations.

126.    Defendants knowingly and intentionally made fraudulent representations, implications, threats, and omissions about the amount of the alleged debt, proper venue, service of process, due process of law, the amounts they could charge to collect the alleged debt, the amounts they could legally add to the alleged debt, the assignment of the alleged debt, and the legal process available to seize and sell Plaintiff's property.

127.    Defendants fraudulently asserted that they had the power and authority to serve a writ of execution and seize and sell Plaintiff's property when they had no such authority or power.

128.    Defendants fraudulently claimed Plaintiff owed the alleged debt when she was actually an innocent victim of their intentional failure to properly investigate and verify her identity prior to collecting.

129.    Defendants made fraudulent representations, implications, threats, and omissions about the enforceability of the Writ of Execution and their legal authority, affiliations, authorizations, and ability to be the ones who could enforce and execute the Writ of Execution.

130.    Defendants fraudulently held themselves out as law enforcement officers acting under color of law when they were not performing any official duties.

131.    Defendants fraudulently held themselves out as government officials exercising governmental authority in collecting the alleged debt.

132.    Defendants made fraudulent representations, implications, threats, and omissions about scheduling, advertising, and postponing a sale that was never actually intended, scheduled, or legal.

133.    Defendants made fraudulent representations, implications, threats, and omissions about their authority to allow the general public into Plaintiff's private property and residence.

134.    Defendants made fraudulent representations, implications, threats, and omissions about whether or not the property they were threatening to seize and sell was exempt.

135.    Defendants committed fraud by holding themselves out to the Plaintiff and others as agents with express and implied authority from N.A.R. and Olson Shaner to collect the debt, negotiate payment plans, accept payments, calculate amounts due, and take other actions on behalf of N.A.R. and Olson Shaner to collect the debt that they did not have.

136.    In the alternative, Defendants committed fraud by claiming to have authority from N.A.R. Inc., or Olson Shaner to act on their behalf in collecting the debt when they did not have such authority.

137.    Defendants knowingly and intentionally made other fraudulent representations, implications, demands, threats, actions, omissions, and communications.

138.    Because Plaintiff relied on and believed Defendants' fraudulent representations, implications, and threats, she hired an attorney and incurred attorney's fees and legal costs to oppose Defendant's collection efforts.

139.    Plaintiff was ignorant to the falsity of Defendants' fraudulent representations when she acted upon them.

140.    Defendants never corrected or retracted their fraudulent conduct.

141.    In all respects, Defendants each participated, allowed, concealed, ratified, acquiesced to, and benefitted from the fraud at issue.

142.    Each of Defendants' fraudulent implications, representations, and omissions was made by Defendants to induce Plaintiff or others into acting on their behalf.

143.    Each of Defendants' fraudulent implications, representations, and omissions were material as they formed the basis for all of the additional collection acts and practices Defendants employed to collect the alleged debt.

144.    As co-conspirators with the authority to control and knowledge of each other's conduct and representations, Defendants are jointly and severally responsible for the harm their fraudulent representations and conduct caused to the Plaintiff.

145.    Plaintiff's injuries discussed above all resulted from the Defendants' fraud and arrangements with each other to commit that fraud.

146.    Defendants' fraudulent communications were all made or omitted intentionally, knowingly, or with a reckless disregard for the truth.

147.    Because of Defendants' fraud, Plaintiff was harmed as discussed above and is entitled to an award of his actual damages, punitive damages, and court costs against all the Defendants jointly and severally.

COUNT IV
**Civil Rights Act**
**42 U.S.C. § 1983**

148.    Plaintiff hereby incorporates all other allegations set forth herein.

149.    42 U.S.C. § 1983 provides a federal cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."[7]

150.    At all times relevant to this case the Defendants were acting in concert with each other under color of law in attempting to collect the alleged debt.

151.    At all times relevant to this case the constable Defendants held themselves out as government officials exercising governmental authority in collecting the alleged debt and did so with the knowledge, approval, and under the supervision of Olson Shaner and N.A.R.

152.    In the alternative, the Defendants held themselves out as government officials exercising governmental authority in collecting the alleged debt but did so without the knowledge, approval, and under the supervision of Olson Shaner and N.A.R.

153.    Through their collection acts and practices described above, the Defendants subverted the prohibitions and requirements of state and federal laws pertaining to debt collection and consumer sales practices.

154.    By employing the collection acts and practices at issue while acting under the color of law, the Defendants unlawfully deprived Plaintiff of property without due process of law and her rights to equal protection under the law in violation of the Fourteenth Amendment to the Constitution of the United States.

155.    The Defendants also unlawfully deprived Plaintiff of her rights, privileges, and immunities guaranteed by the Fourth Amendment to the Constitution of the United States.

---

[7]  42 U.S.C. § 1983

156.     The Defendants also unlawfully deprived Plaintiff of her property and rights, privileges, and immunities guaranteed by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*.

157.     At all times relevant hereto, the Defendants acted pursuant to a policy or custom of depriving debtors of personal property without due process of law, denying debtors of their right to equal protection of the law, and in depriving Plaintiff and others of their property and their rights, privileges, and immunities guaranteed by the Constitution of the United States and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*.

158.     The Defendants failed to adopt clear policies and failed to properly train their constables, agents, and employees about their proper role in private debt collection disputes.

159.     The Defendants' policies or customs, their failure to adopt clear policies, and failure to properly train and supervise their constables, agents, and employees were direct and proximate causes of the constitutional and legal deprivations suffered by Plaintiff.

160.     At all relevant times, each Defendant knew about and acquiesced in the civil rights violations and fraud at issue as part of a common plan with each other.

161.     As a result of the constitutional and legal deprivations the Defendants caused, Plaintiff suffered the concrete actual damages described herein and requests this Court for an award against the Defendants, jointly and severally, for damages in an amount to be proven at trial, and for all other relief which Plaintiff may be entitled pursuant to 42 U.S.C. § 1983.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests judgment against Defendants jointly and severally as follows:

162.    For an award of actual and statutory damages;

163.    For an award of punitive damages;

164.    For reimbursement of the amounts that unjustly enriched the Defendants;

165.    For an award of Plaintiff's attorney's fees and costs;

166.    For pre-judgment and post judgment interest at the legal rates;

167.    For appropriate injunctive relief;

168.    For declaration that the constable Defendants' acts, taken in their individual and official capacities, violate the Fourth and Fourteenth Amendments to the United States Constitution.

169.    For leave to amend this Complaint as interests of justice may allow; and

170.    For such other and further additional relief as may be determined to be appropriate and as the Court may find just, equitable, and proper.

JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

DATED 10/25/2023                    Eric Stephenson
                                   *Attorney for the Plaintiff*