Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| ELIZABETH HERNANDEZ,<br><br>  Plaintiff,<br><br>vs.<br>ROB KOLKMAN,<br>CONSTABLE KOLKMAN<br>LLC, and JOHN DOES 1-5,<br><br>  Defendants. | **MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case Number: 2:23-cv-00772<br><br>Judge: Ann Marie McIff Allen<br>Magistrate Judge: Daphne A. Oberg |

  Plaintiff respectfully requests partial judgment in her favor pursuant to Rule 56 of the Federal Rules of Civil Procedure against the Defendants jointly and severally for the particular violations of the Fair Debt Collection Practices Act (FDCPA) discussed herein.

INTRODUCTION

  The constable Defendants unabashedly violated multiple sections of the FDCPA and continue to do so in at least hundreds of other cases throughout Utah. Among other things, they violated the FDCPA's prohibitions on (1) collecting a debt Plaintiff never owed,[1] (2) collecting and attempting to collect amounts that were not authorized or permitted,[2] (3) making threats they never intended to carry

---

[1] 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692f, 1692f(1)
[2] 15 U.S.C. §§ 1692f and 1692f(1)

out,[3] (4) falsely representing the character, amount, and legal status of the debt,[4] and (5) using and distributing written communications that were deceptively styled as official court filings or other legal process.[5] Defendants also violated the FDCPA by failing to provide Plaintiff with the FDCPA's required notices so she could make a well-informed choice about how to proceed in response to the Defendants' threats and demands for payment.[6] As a result of the Defendants' violations, Plaintiff is entitled to partial summary judgment as a matter of law under Rule 56.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Sometime prior to August 31, 2020, Mountain America Credit Union assigned a past due consumer debt to NAR Inc., to collect.[7]

2. That past due debt was for a personal credit card issued to someone other than Plaintiff (unknown debtor) for personal, family, or household purposes.[8]

3. To collect the past due debt, NAR Inc., hired Olson Shaner who commenced a lawsuit on or around August 31, 2020.[9]

4. Shortly thereafter, Olson Shaner obtained a default judgment against the unknown debtor in the amount of $5,969.78.[10]

5. After it obtained the judgment, Olson Shaner obtained a Writ of Execution which augmented the amount of the debt to $6,148.81.[11]

---

[3] 15 U.S.C. §§ 1692e(4) and (5)
[4] 15 U.S.C. §§ 1692e(2)(A) and 1692e(10)
[5] 15 U.S.C. § 1692e(9), (10), and (13)
[6] 15 U.S.C. §§ 1692e(11) and 1692g(a)
[7] Exhibit P-1 Complaint
[8] Exhibit P-1 Complaint
[9] Exhibit P-1 Complaint
[10] Exhibit P-2 Default Judgment
[11] Exhibit P-3 Application for Writ of Execution; Exhibit P-4 Writ of Execution

6. Olson Shaner then provided the Writ of Execution to Rob Kolkman, and Constable Kolkman LLC (constable Defendants or Defendants) to collect from the Plaintiff.[12]

7. Various debt collection lawyers and debt collectors, such as, Olson Shaner, The Cherrington Firm, Mountain Land Collections, LeBaron and Jensen, and NAR Inc., regularly place debts with the constable Defendants to collect on their behalf.[13]

8. The principal purpose of the constable Defendants is the collection of debts.[14]

9. Defendants regularly collect debts on behalf of others.[15]

10. On or about August 16, 2023, the constable Defendants mailed Plaintiff a collection letter that threatened to seize and sell Plaintiff's personal property if she did not pay them for the debt.[16]

11. On or about August 21, 2023 the constable Defendants mailed Plaintiff another collection letter threatening to seize and sell her personal property if she did not pay them for the debt.[17]

12. In their August 21, 2023 collection letter, Defendants demanded payment front the Plaintiff in the amount of $6,408.04 even though the judgment amount was only $6,148.81.[18]

---

[12] Exhibit P-5 August 16, 2023 Collection Letter; Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 Notice of Sale; Exhibit P-10 Requests for Admis. No. 11
[13] Exhibit P-12 Kolkman Dep. 26:2-4, 28:14-23, 30:5-31:5, 32:15-33:22; *See also Campbell v. Constable Kolkman LLC*, 2:23-cv-00914; *Young v. Constable Kolkman LLC*, 2:23-cv-00420; *Cordero v. Constable Kolkman LLC*, 2:23-cv-00756; *Thomas v. Constable Kolkman LLC*, 2:23-cv-00899; *Peretto v. Utah County Constable's Office*, 1:23-cv-00025
[14] *Id.*
[15] *Id.*
[16] Exhibit P-5 August 16, 2023 Collection Letter; Exhibit P-10 Requests for Admis. No. 2
[17] Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-10 Requests for Admis. No. 3
[18] Exhibit P-3 Application for Writ of Execution; Exhibit P-4 Writ of Execution

13. In their August 21, 2023 collection letter, the Defendants added a $50.00 service fee, $26.00 mileage fee, an $97.23 commission, a $60.00 notices fee, and an additional mileage to post fee of $26.00 (bogus sale fees) even though none of those additional amounts were authorized by the court, permitted by law, or earned by the Defendants.[19]

14. On or about September 15, 2023, the constable Defendants mailed Plaintiff a "Notice of Sale" collection letter.[20]

15. Defendants stated in their "Notice of Sale" collection letter that a sale would be held on October 6, 2023 in Plaintiff's home at 15:50 if Plaintiff did not make a payment or arrangements to cancel the sale.[21]

16. Defendants stated in their "Notice of Sale" collection letter that "Sale fees may have been added to the total judgment" even though no such fees were ever actually added, authorized, or incurred.[22]

17. The constable Defendants never carried out their threat to seize and sell Plaintiff's property.[23]

18. Although they regularly threaten to do so, the constable Defendants never execute writs of execution or hold execution sales when they collect debts on behalf of others.[24]

19. Two of the constable Defendants' collection letters are styled to resemble court filings or other legal process.[25]

---

[19] *Id.*; Exhibit P-10 Requests for Admis. Nos. 8-9; Exhibit P-11 Requests for Prod. Nos. 8-9
[20] Exhibit P-7 Notice of Sale; Exhibit P-10 Requests for Admis. No. 1
[21] *Id.*
[22] *Id.*
[23] Exhibit P-10 Requests for Admis. Nos. 8-9; Exhibit P-11 Requests for Prod. Nos. 8-9
[24] Exhibit P-8 Notice of Sale Exemplars; Exhibit P-10 Requests of Admis. Nos. 8-9; Exhibit P-11 Request for Prod. Nos. 3-5, and 9
[25] Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 Notice of Sale

20. None of the Defendants' collection letters are court filings or other legal process.[26]

21. None of the Defendants ever notified Plaintiff that the constables were debt collectors and that any information they obtain would be used to collect the alleged debt.[27]

22. None of the constable Defendants' letters to the Plaintiff contained a notice that Plaintiff had 30 days to dispute the debt.[28]

23. Plaintiff never owed the debt Defendants sought to collect.[29]

STANDARD OF REVIEW

Summary judgment is appropriate when the movant establishes that there is no genuine dispute about the material facts and the law entitles it to judgment.[30] When the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial.[31] The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."[32] If the evidence produced by the nonmoving party, "is merely colorable... or is not significantly probative, ... summary judgment may be granted."[33] Where a rational trier of fact,

---

[26] Exhibit P-5 August 16, 2023 Collection Letter; Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 Notice of Sale
[27] Exhibit P-5 August 16, 2023 Collection Letter; Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 Notice of Sale; Exhibit P-10 Requests for Admis. No. 6; Exhibit P-11 Requests for Prod. Nos. 12-13
[28] Exhibit P-10 Requests for Admis. No. 7; Exhibit P-11 Requests for Prod. No. 13; Exhibit P-5 August 16, 2023 Collection Letter; Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 Notice of Sale
[29] Exhibit P-9 Order Quashing Writ of Execution; Exhibit P-10 Requests for Admis. Nos. 8-10
[30] Fed. R. Civ. P. 56(a)
[31] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986)
[32] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)
[33] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249 (*citations omitted*)

considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.[34]

## THE FAIR DEBT COLLECTION PRACTICES ACT

The Fair Debt Collection Practices Act was enacted in 1977 for, *inter alia*, the purpose of eliminating abusive debt collection practices by debt collectors.[35] The legislative history of the passage of the FDCPA explains that the need for the FDCPA arose because of collection abuses such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."[36]

Examples of particular practices debt collectors are forbidden to employ are set forth in the statute.[37] That includes collecting amounts not owed or misrepresenting the amount, character, or legal status of a debt.[38] The list, however, is non-exhaustive, and the FDCPA generally forbids collectors from engaging in any unfair, deceptive, harassing, abusive, or unconscionable behavior.[39]

---

[34] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)
[35] J*erman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 130 S.Ct. 1605, 1608, 176 L.Ed.2d 519 (2010); *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 398 (6th Cir.1998) (*quoting* 15 U.S.C. § 1692(e))
[36] S. Rep. No. 95–382, at 2 (1977), *reprinted* in 1977 U.S.C.C.A.N. 1695, 1696.
[37] *See* 15 U.S.C. § 1692 *et seq.*
[38] 15 U.S.C. § 1692f(1) and 15 U.S.C. § 1692e(2)(A) respectively
[39] *See* 15 U.S.C. § 1692 *et seq.*

The FDCPA is considered a strict liability statute since it "does not ordinarily require proof of intentional violation."[40] "Proof of one violation is sufficient to support a finding of summary judgment in favor of the Plaintiff in an FDCPA action."[41]

The Fair Debt Collection Practices Act is also considered a remedial statute and therefore "it should be construed liberally in favor of the consumer."[42] "[T]he Act is 'extraordinarily broad' and must be enforced as written, even when eminently sensible exceptions are proposed in the face of innocent and/or de minimis violations."[43] Such broad construction is necessary, "so as to effect its purpose."[44]

In determining whether there is a violation of the FDCPA, courts apply the least sophisticated consumer test.[45] This objective standard, "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd ... the ignorant, the unthinking and the credulous."[46] The least sophisticated consumer standard is a low standard and "is consistent with the norms that courts have traditionally applied in consumer-protection law."[47] For example, "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead

---

[40] *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010)(*citing* 15 U.S.C. § 1692k; *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010))
[41] *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2nd Cir.1993); *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D.Conn.1990)
[42] *Johnson v. Riddle*, 305 F.3d 1007, 1117 (10th Cir. 2002)
[43] *Blevins v. Hudson & Keyse, Inc.,* 395 F.Supp.2d 655, 658 (S.D. Ohio 2004) (referring to *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir.1992))
[44] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)
[45] *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993); *see also Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320, 1329 (D. Utah 1997)
[46] *Id.* at 1318-1319
[47] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)

the least sophisticated debtor."[48] Accordingly, "any lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor."[49]

ARGUMENT

I. **Defendants violated 15 U.S.C. §§ 1692f and 1692f(1) by collecting and attempting to collect amounts Plaintiff never owed**

Under the Fair Debt Collection Practices Act certain conduct is considered *per se* unfair and unconscionable. This includes "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."[50] The FDCPA also more generally prohibits the use of any unfair or unconscionable means to collect a debt.[51] Defendants violated these sections of the FDCPA by collecting a debt Plaintiff did not owe.

It is undisputed that Plaintiff never owed the debt the constables sought to collect.[52] The Writ of execution against her was quashed for that exact reason.[53] Defendants nonetheless made several attempts to collect from the Plaintiff. They sent her at least three collection letters, demanded payments, and even threatened to seize and sell all of Plaintiff's non-exempt personal property at a public auction in Plaintiff's own home.[54] Each of those individual collection attempts violated the FDCPA. Under its strict liability provisions, Defendants are therefore liable

---

[48] *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (*quoting Wilson v. Quadramed*, 225 F.3d 350, 354 (3d Cir. 2000))
[49] *Brown*, 464 F.3d at 454
[50] 15 U.S.C. § 1692f(1)
[51] 15 U.S.C. § 1692f
[52] Exhibit P-9 Order Quashing Writ of Execution; Exhibit P-10 Requests for Admis. Nos. 8-10
[53] *Id*.
[54] Exhibit P-10 Requests for Admis. No. 2; Exhibit P-5 August 16, 2023 Collection Letter; Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 Notice of Sale

for those attempts.[55] And although these collection attempts represent multiple violations of the FDCPA, even a single violation is sufficient to ground liability.[56]

Adding various bogus sale fees to the debt Defendants never actually incurred and that were never authorized by law, also violates these provisions. On August 21, 2023 Defendants demanded payment of $6,408.04 even though the judgment amount was only $6,148.81.[57] In their August 21, 2023 collection letter, the Defendants also added a $50.00 service fee, $26.00 mileage fee, an $97.23 commission, and a $60.00 notices fee, and an additional mileage to post fee of $26.00 even though none of those additional amounts were authorized by the court or permitted by law.[58] That is a *per se* violation of the FDCPA because Plaintiff never owed any of the debt, let alone the full $6,408.04 for which Defendants demanded payment.[59] The additional amounts Defendants demanded for the bogus sale fees came about because Defendants illicitly added certain fees to the debt the court never authorized or knew about. Even if she would have owed the actual debt, it was illegal for Defendants to add those additional bogus sale fees to the debt.[60]

Lest there be any doubt, Utah law also strictly limits the amounts constables can charge for their services.[61] But even when those fees are allowed by statute, the amounts are only allowed when they are earned and the debt is owed. Utah law does not authorize constables to charge amounts for services the

---

[55] 15 U.S.C. § 1692k
[56] *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2nd Cir.1993); *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D.Conn.1990)
[57] Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-10 Requests for Admis. No. 3; Exhibit P-3 Application for Writ of Execution; Exhibit P-4 Writ of Execution
[58] *Id*.
[59] Exhibit P-9 Order Quashing Writ of Execution; Exhibit P-10 Requests for Admis. Nos. 8-10
[60] 15 U.S.C. §§ 1692f and 1692f(1)
[61] Utah Code Ann. § 17-22-2.5(2)(d)

constables never performed or for debts not owed.[62] Nonetheless, these Defendants added $50.00 to the debt for a "service" fee even though they never levied the execution.[63] They added two separate mileage charges of $26.00 each for mileage they never traveled.[64] They added a $15.00 fee for posting notices they never posted.[65] And Defendants added $88.13 for a commission they never earned.[66] Like the other fees, such a commission is only allowed for "levying an execution" which never occurred.[67] Plaintiff never owed any of those amounts and Defendants never incurred those bogus sale fees.[68]

There is no dispute on these points. Defendants never incurred or earned the extra amounts, were never authorized to collect the extra amounts, but nonetheless added and attempted to collect the extra amounts.[69] Defendants therefore violated 15 U.S.C. §§ 1692f and 1692f(1) by collecting amounts that were not permitted by law. This is the exact kind of abuse the FDCPA was enacted to prevent.[70] Like the debt itself, those additional fees were not "expressly authorized by the agreement creating the debt or permitted by law."[71]

---

[62] *Id*.
[63] Exhibit P-10 Requests for Admis. Nos. 8-9; Exhibit P-11 Requests for Prod. Nos. 8-9
[64] *Id*.
[65] *Id*.
[66] *Id*.
[67] Utah Code Ann. § 17-22-2.5(2)(d) and (m)
[68] Exhibit P-10 Requests for Admis. Nos. 8-10; Exhibit P-11 Requests for Prod. Nos. 8-9
[69] *Id*.
[70] 15 U.S.C. § 1692; *see also* S. Rep. 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696 ("The committee has found that debt collection abuse by third party debt collectors is a widespread and serious national problem.")
[71] 15 U.S.C. §§ 1692f(1); *See* also 15 U.S.C. § 1692f

## II. Defendants violated 15 U.S.C. §§ 1692e(4) and (5) by making threats they never intended to carry out

The FDCPA strictly prohibits debt collectors from asserting any "threat to take any action that cannot legally be taken **or that is not intended to be taken**."[72] It more specifically also prohibits debt collectors from;

> "The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person **or the seizure, garnishment, attachment, or sale of any property or wages** of any person unless such action is lawful and the debt collector or creditor intends to take such action."[73]

Defendants violated both prohibitions at least three separate times by threatening to seize and sell Plaintiff's personal property.[74] "Please call my office within ten days to make payment arrangements to pay the judgment **to avoid the sale of your non-exempt personal property**."[75] Defendants followed up that threat with an even more specific threat that included a fake "Notice of Sale" purporting to set a date, time, and location for the fake sale.[76] Any one of those threats is sufficient to ground liability.[77]

Despite so many threats, none of the Defendants ever intended to follow through. Instead, there were using the threat to shock Plaintiff into making

---

[72] 15 U.S.C. § 1692e(5)(*emphasis added*)
[73] 15 U.S.C. § 1692e(4)(*emphasis added*)
[74] Exhibit P-5 August 16, 2023 Collection Letter; Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 Notice of Sale
[75] Exhibit P-6 August 21, 2023 Collection Letter (*emphasis added*); Exhibit P-10 Requests for Admis. No. 3
[76] Exhibit P-7 Notice of Sale; *See* Exhibit P-10 Requests for Admis. No. 1
[77] 15 U.S.C. §§ 1692e(4) and (5)

payments toward the debt. That is why they never bothered to post notice or otherwise advertise the fake sale—it was a complete fiction from the beginning.[78]

It should be obvious why they assert threats of seizure and sale of debtors' personal property without ever carrying them out; because it works. Despite its effectiveness, however, using the threat of sale to extract payments from unsuspecting debtors is strictly prohibited by the plain language of the FDCPA.[79] "Misrepresentations are condemned if they possess a tendency to deceive."[80] That obviously includes the "**threat to take any action** that cannot legally be taken or that is not intended to be taken."[81] It also includes threats or even implications of legal action such as the threats of "seizure, garnishment, attachment, or sale of any property or wages" the debt collector does not intend to take.[82] Such threatening statements violate the FDCPA, especially when they are "calculated to intimidate plaintiffs and facilitate the collection of the underlying debt."[83]

The least sophisticated consumer standard is used to determine whether a communication violates the FDCPA.[84] "If the least sophisticated debtor would take a communication as threatening legal action, it violates the FDCPA."[85] When the "'least sophisticated consumer' would interpret this language to mean that

---

[78] Exhibit P-10 Requests for Admis. Nos. 8-9; Exhibit P-11 Requests for Prod. Nos. 3-5, 8-9; *See also* Exhibit P-8 Notice of Sale Exemplars
[79] 15 U.S.C. § 1692e(4) and (5)
[80] *Trans World Accounts, Inc.* v. F.T.C., 594 F.2d 212, 214 (9th Cir. 1979)
[81] 15 U.S.C. § 1692e(5)(*emphasis added*)
[82] 15 U.S.C. § 1692e(4)
[83] *Van Westrienen v. Americontinental Collection*, 94 F.Supp.2d 1087, 1104 (D. Or. 2000); *See also Irwin v. Mascott*, 96 F.Supp.2d 968, 971 (N.D.Cal.1999)
[84] *See, e.g., Baker v. G.C. Services Corp.*, 677 F. 2d 775, 778 (9th Cir. 1982); *United States v. National Fin. Servs.*, 98 F. 3d 131, 135-136 (4th Cir. 1996); *Smith v. Transworld Systems, Inc.*, 953 F. 2d 1025, 1028 (6th Cir. 1992)
[85] *Irwin v. Mascott*, 112 F.Supp.2d 937, 951 (N.D. Cal. 2000)

legal action was authorized, likely and imminent" the representation violates the FDCPA.[86] The case at hand squarely fits that framework.

There is no other rational way to read the Defendants' collection letters. Each one explicitly refers to a fake sale and demands payment to stop that fake sale.[87] One of the letters even purports to schedule a date, time, and location where that fake sale is supposed to occur even though that sale was never actually scheduled.[88] They even solicit payments to stop the fake sale; "Please call my office within ten days to make payment arrangements to pay the judgment to avoid the sale of your non-exempt personal property."[89] In the next letter, they emphasize the threats by stating in all capital letters "CONTACT THIS OFFICE IMMEDIATELY TO MAKE A PAYMENT OF ARRANGEMENTS TO CANCEL THE SALE."[90] It would be intellectually and judicially dishonest to pretend these statements and implications somehow don't constitute illegal "threats" as contemplated by the FDCPA. "A 'threat' is easily found where a debt collector sends a communication to a debtor that explicitly states some future civil or criminal action will be taken against the debtor unless the debt is paid."[91]

This is especially true considering the requirement to liberally construe the FDCPA.[92] "[T]he Act is 'extraordinarily broad' and must be enforced as written, even when eminently sensible exceptions are proposed in the face of innocent

---

[86] *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2nd Cir. 1993)
[87] Exhibit P-5 August 16, 2023 Collection Letter; Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 Notice of Sale
[88] Exhibit P-7 Notice of Sale
[89] Exhibit P-6 August 21, 2023 Collection Letter
[90] Exhibit P-7 Notice of Sale (*emphasis in original*)
[91] *See, e.g., Gradisher v. Check Enforcement Unit, Inc.*, 210 F.Supp.2d 907, 915–17 (W.D.Mich.2002)
[92] *Johnson v. Riddle*, 305 F.3d 1007, 1117 (10th Cir. 2002)

and/or de minimis violations."[93] Such broad construction is necessary, "so as to effect its purpose."[94]

This Court should therefore enter judgment in Plaintiff's favor. As the Supreme Court has held in the general context of consumer protection–of which the Fair Debt Collection Practices Act is a part–"it does not seem 'unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'"[95]

### III. Defendant violated 15 U.S.C. §§ 1692e(2)(A) and 1692e(10) by falsely representing the character, amount, and legal status of the debt

The Fair Debt Collection Practices Act strictly prohibits debt collectors from making any false representations about the character, amount, and legal status of a debt and more generally prohibits any false representations made in connection with collecting a debt.[96] In falsely threatening to seize and sell Plaintiff's property, Defendants squarely violated each of these prohibitions. Representing that the additional fake sale fees were owed when they never actually incurred, authorized by the court, or earned also violates these prohibitions. Even just under the catch-all sections of the FDCPA, falsely representing the legal and financial consequences Plaintiff faced if he failed to pay also violates these prohibitions.[97] Merely asserting she owed the debt violates these provisions. It is inescapable that "the use of any false, deceptive, or

---

[93] *Blevins v. Hudson & Keyse, Inc.,* 395 F.Supp.2d 655, 658 (S.D. Ohio 2004) (referring to *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir.1992))
[94] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)
[95] *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393, 85 S.Ct. 1035 1047, 13 L.Ed.2d 904 (1965) (*quoting Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340, 72 S.Ct. 329, 330-31, 96 L.Ed. 367 (1952))
[96] 15 U.S.C. §§ 1692e(2)(A) and 1692e(10)
[97] 15 U.S.C. §§ 1692e and 1692f

misleading representation … violates § 1692e—regardless of whether the representation in question violates a particular subsection of that provision."[98]

Defendants represented that the amount Plaintiff owed included the bogus sale fees discussed previously.[99] But she never did. Plaintiff never owed the debt at all.[100] Even if she had, the court never authorized those additional amounts[101] and the constables never earned or incurred those additional amounts.[102] It is therefore a *per se* violation of the FDCPA to assert Plaintiff owed amounts Plaintiff never owed.[103]

The character and legal status of the debt were also not as Defendants stated. According to the collection communications, a property sale was imminent and could only be stopped by making a payment.[104] That was never the true character or legal status of the debt. There was never any risk whatsoever of the execution sale actually occurring.[105] To state otherwise was clearly false, deceptive, or misleading.[106] Plaintiff is therefore entitled to summary judgment on these claims.

---

[98] *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2nd Cir. 1993)(*citing* 15 U.S.C. § 1692e (specifying certain prohibited acts '[w]ithout limiting the general application of the foregoing' language)
[99] Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-10 Requests for Admis. No. 3; *See* Exhibit P-5 August 21, 2023 Collection Letter
[100] Exhibit P-9 Order Quashing Writ of Execution; Exhibit P-10 Requests for Admis. No. 10
[101] Exhibit P-3 Application for Writ of Execution; Exhibit P-4 Writ of Execution
[102] Exhibit P-10 Requests for Admis. Nos. 8-9; Exhibit P-11 Requests for Prod. Nos. 8-9
[103] 15 U.S.C. §§ 1692e(2)(a) and 1692e(10)
[104] Exhibit P-7 Notice of Sale; Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-5 August 16, 2023 Collection Letter
[105] Exhibit P-10 Requests for Admis. Nos. 8-9; Exhibit P-11 Requests for Prod. Nos. 8-9
[106] 15 U.S.C. § 1692e

> IV. **Defendants violated 15 U.S.C. § 1692e(9), (10), and (13) by using and distributing written communications that were styled as official court filings or other legal process**

The FDCPA strictly prohibits debt collectors from using or distributing written communications that are styled as official court filings or other legal process.[107] The collection letters the Defendants mailed to Plaintiff squarely fit that prohibition as they were intentionally styled as court filings or other legal process despite being nothing more than collection letters.[108] Two of their collection letters contained a case caption complete with the identification and affiliation of each party, the case number, and even had a line separating those two sections exactly as it appears in court filings.[109] The letters included the Defendants' name and address where that information would be in a court caption, identified NAR as the plaintiff and Elizabeth Hernandez as the defendant, and stated the case number all in the same place as would be in any normal court filing.[110] The constables' name and address even appeared where the filing attorney's information is normally provided.[111]

By falsely styling their collection letters as court filings or other legal process, the Defendants violated multiple provisions of the FDCPA. Primarily, the FDCPA prohibits the "use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."[112]

---

[107] 15 U.S.C. § 1692e(9), (10), and (13)
[108] This Court can and should take judicial notice of these facts under Fed. R. Evid. 201.
[109] Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 Notice of Sale
[110] Utah R. Civ. P. 10(a)
[111] Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 Notice of Sale.
[112] 15 U.S.C. § 1692e(9)

The FDCPA similarly prohibits any "false representation or implication that documents are legal process."[113] Falsely styling collection letters as legal process or court filings also violates the FDCPA's more general prohibition on the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."[114]

There is no dispute the Defendants' collection letters are deceptively styled as court filings or other legal process. Under the least sophisticated consumer standard, these falsely styled letters are plainly violative of the FDCPA. The least sophisticated consumer would certainly be fooled into believing these collection letters are official court filings that were "authorized, issued, or approved by any court, official, or agency" or that they otherwise "creates a false impression as to its source, authorization, or approval."[115] A false impression as to their "source, authorization, or approval" is, after all, the exact message Defendants intended to convey.[116] Even on a cursory glance these collection letters create the "false representation or implication that documents are legal process."[117]

Given the deliberate similarities these collection letters have with court filings, the least sophisticated consumer must agree.[118] Defendants therefore violated 15 U.S.C. § 1692e(9), (10), and (13) by using and distributing written communications that were styled as official court filings or other legal process. "This least-sophisticated-consumer standard best effectuates the Act's purpose of

---

[113] 15 U.S.C. § 1692e(13)
[114] 15 U.S.C. § 1692e(10)
[115] 15 U.S.C. § 1692e(9)
[116] 15 U.S.C. § 1692e(9)
[117] *Id.*
[118] *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993) (adopting test for Sec. 1692e); *see also Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir.1993)

limiting the 'suffering and anguish' often inflicted by independent debt collectors."[119]

## V. Defendants violated the FDCPA's notice requirements

In its initial communication with a debtor, a debt collector is required by the FDCPA to notify the debtor "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose."[120] In each subsequent communication, the debt collector is also required to notify the debtor "the communication is from a debt collector."[121] Debt collectors are also required to send written notice to the debtor that they have 30 days to dispute the debt.[122] These notices serve the crucial purpose of guaranteeing consumers "receive adequate notice of their rights under the law."[123]

Every communication the constable Defendants had with Plaintiff violated these notice requirements as none of their collection letters contained these notices.[124] Even the constables agree they never provided these required notices. "Defendants admit that they did not 'notify' Plaintiff that they 'were attempting to collect a debt and that any information obtained will be used for that purpose.'"[125] "Defendants admit that their communications did not contain information contained in 15 U.S.C. § 1692g."[126] Defendants therefore violated and 15 U.S.C. §§ 1692e(11) and 1692g(a) at least three separate times.

---

[119] *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2nd Cir. 1996); S.Rep. No. 95-382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696
[120] 15 U.S.C. § 1692e(11)
[121] *Id*.
[122] 15 U.S.C. § 1692g(a)
[123] *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir.2000)
[124] Exhibit P-5 August 16, 2023 Collection Letter; Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 Notice of Sale
[125] Exhibit P-10 Request for Admis. No. 6
[126] Exhibit P-10 Request for Admis. No. 7

### VI. Plaintiff reserves the determination of damages and other claims for a trial by jury

By this motion Plaintiff only seeks entry of partial summary judgment against the Defendants for the specific FDCPA violations discussed herein. The determination of other claims, issues, and appropriate damages are reserved for trial by jury.[127] After the determination of liability and damages, Plaintiff will seek an award of attorney's fees and costs as provided for by law.[128]

### CONCLUSION

Some of Defendants' violations of the FDCPA are presented here for summary judgment because the material facts pertaining to those violations are not in dispute. Defendants violated the FDCPA by; (1) collecting amounts Plaintiff never owed,[129] (2) collecting and attempting to collect amounts that were not authorized or permitted,[130] (3) making illegal threats they never intended to carry out,[131] (4) falsely representing the character, amount, and legal status of the debt,[132] (5) using and distributing written communications styled as official court filings or other legal process,[133] and (6) failing to provide the FDCPA's required notices.[134] Plaintiff is therefore entitled to partial summary judgment in her favor that the constable Defendants violated multiple sections of the Fair Debt Collection Practices Act.

DATED 5/15/2024                 Eric Stephenson
*Attorney for the Plaintiff*

---

[127] *Kobs v. Arrow Service Bureau, Inc.*, 134 F.3d 893, 895-896 (7th Cir. 1986); *Sibley v. Fulton DeKalb Collection Services*, 677 F.2d 830 (11th Cir. 1982)
[128] 15 U.S.C. § 1692k(a)(3); Utah Code Ann. § 13-11-19(5)
[129] 15 U.S.C. §§ 1692f and 1692f(1)
[130] 15 U.S.C. §§ 1692f and 1692f(1)
[131] 15 U.S.C. §§ 1692e(4) and (5)
[132] 15 U.S.C. §§ 1692e(2)(A) and 1692e(10)
[133] 15 U.S.C. § 1692e(9), (10), and (13)
[134] 15 U.S.C. §§ 1692e(11) and 1692g(a)

CERTIFICATE OF SERVICE

    I hereby certify that on 5/15/2024 I served the foregoing MOTION FOR PARTIAL SUMMARY JUDGMENT to all counsel of record through this Court's electronic filing system.

          /s/ Eric Stephenson
          *Attorney for Plaintiff*