UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ELIZABETH HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>ROB KOLKMAN; CONSTABLE KOLKMAN LLC; and JOHN DOES 1-5,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER (DOC. NO. 27) AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DOC. NO. 29)**<br><br>Case No. 2:23-cv-00772<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Elizabeth Hernandez brought this case against Defendants Rob Kolkman and Constable Kolkman LLC, alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and the Utah Consumer Sales Practices Act, and bringing common law fraud and civil rights claims.[1] Ms. Hernandez's central argument is that Defendants wrongfully attempted to collect from her a debt owed by a different person with the same name.[2]

Defendants and Ms. Hernandez have filed competing motions for relief relating to the contentious deposition of Rob Kolkman. Defendants seek a protective order limiting discovery to matters relevant to this case,[3] while Ms. Hernandez seeks sanctions in the

---

[1] (Compl. ¶ 1, Doc. No. 2.)

[2] (*See generally id.* ¶¶ 15–88.)

[3] (Mot. for Protective Order from Disc. ("Defs.' Mot.") 2, Doc. No. 27.)

1

form of an additional deposition and fees incurred in deposing Mr. Kolkman.[4]  Because neither party has shown it is entitled to relief, the motions are denied—and Mr. Kolkman's deposition shall resume.[5]

## BACKGROUND

On April 22, 2024, Ms. Hernandez's counsel, Eric Stephenson, deposed Mr. Kolkman, who was represented by his counsel, Christopher Hill.[6]  Some of the questions Mr. Stephenson asked Mr. Kolkman related to how Defendants collect debt in general—as opposed to how Defendants attempted to collect debt from Ms. Hernandez in particular.[7]  Mr. Hill objected to these general questions on the basis of relevance, but he instructed Mr. Kolkman to answer despite the objections.[8]

After Mr. Stephenson argued relevancy was "not a proper objection for a deposition,"[9] Mr. Hill changed the basis for his objections, instead objecting that

---

[4] (Mot. for Sanctions ("Ms. Hernandez's Mot.") 1, Doc. No. 29.)

[5] Pursuant to Rule 37-1 of the Local Rules of Civil Practice, the motions are decided based on the parties' briefing.  *See* DUCivR 37-1(b)(5)(B).

[6] (*See* Ex. 1 to Ms. Hernandez's Mot., Dep. of Rob Kolkman ("Kolkman Dep."), Doc. No. 30.)

[7] (*See, e.g.*, *id.* at 36:11–13 ("Is looking in people's windows and pounding on their doors and looking in their car windows part of serving these writs of execution?").)

[8] (*See id.* at 10:4–8 ("[Mr. Stephenson]: And what does Constable Kolkman LLC do that's different from your other company?  Mr. Hill: I'm going to object on the grounds that it's beyond the scope of discovery or relevance in this action.  You can answer."), 10:10–13 (same objection and instruction), 10:15–17 (same objection and instruction), 12:8–12 (same objection and instruction).)

[9] (*Id.* at 12:13–16 ("I'm going to stop you real quick, because that's the third time you've objected for relevancy and it's not a proper objection for a deposition.  It's one of those deposition [objections] that's reserved, so.").)

2

"because [the question] is outside the scope of discovery, it is intended to annoy [or] harass."[10] Mr. Hill also asked the court reporter to designate answers to some questions as confidential, pursuant to this court's Standard Protective Order.[11] When Mr. Hill asserted several more "annoyance and harassment" objections and confidentiality designations, Mr. Stephenson and Mr. Hill began exchanging threats to seek legal redress for each other's conduct.[12] Eventually Mr. Hill suspended the deposition in order to seek a protective order.[13]

Shortly after the failed deposition, the parties filed competing motions for relief. Defendants moved for a protective order under Rules 26(c) and 30(d)(3) of the Federal Rules of Civil Procedure, requesting the court "limit the scope of questions allowed during any resumed or future deposition (as well as written discovery) in this case to matters directly related to [Ms. Hernandez]."[14] Noting Mr. Stephenson has filed six actions against Defendants in the last year, Defendants contend "Mr. Stephenson has

---

[10] (*Id.* at 12:17–21 ("I'm going to amend my objection: because it is outside the scope of discovery, it is intended to annoy, harass—or only intended to annoy/harass the witness which is a proper objection. And you can answer the question.").)

[11] (*See, e.g.*, *id.* at 18:15–18 ("I will allow the witness to answer the question, but I'm going to ask the court reporter to designate that portion of the transcript as confidential under the court's standard protective order.").)

[12] (*See, e.g.*, *id.* at 37:7–12 ("Mr. Stephenson: You're obstructing my deposition, by the way. And we are going to put an end of this in a little while, and then I'm going to go after fees and costs. Mr. Hill: We're about ready to put in a termination to this to seek a protective order.").)

[13] (*See id.* at 38:22–39:2); *see also* Fed. R. Civ. P. 30(d)(3)(A) ("At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.").

[14] (Defs.' Mot. 2, Doc. No. 27.)

sought to obtain and use information from one case to another, seemingly in an effort to bring additional cases, bolster purported claims and arguments in the other [c]ases, or to obtain evidence from one case for the benefit of other cases."[15] Claiming the information Mr. Stephenson sought is "wholly irrelevant," Defendants argue "it can only be assumed" that Mr. Stephenson seeks it "with the intent to annoy, embarrass, oppress, and harass [them]."[16] Defendants ask the court to "curtail the fishing expedition exhibited by Plaintiff's counsel and prohibit discovery by Plaintiff (and her counsel) . . . that is unrelated to Plaintiff and the limited scope of facts in this case."[17]

For her part, Ms. Hernandez filed a motion for sanctions, seeking attorneys' fees and costs incurred in deposing Mr. Kolkman, and seeking to compel Mr. Kolkman to sit for an additional deposition.[18] Ms. Hernandez maintains the questions Mr. Stephenson asked are relevant, and Mr. Hill "intentionally impeded, delayed, and frustrated the fair examination of [Mr.] Kolkman by asserting improper objections[,] unilaterally terminating the deposition . . . . [and] designating public information as confidential."[19]

---

[15] (*Id.* at 3.)

[16] (*Id.* at 9.)

[17] (*Id.* at 10.)

[18] (Ms. Hernandez's Mot. 1, Doc. No. 29.) The parties filed response and reply briefs to both motions, asserting the same arguments raised in their own motions. (*See* Mem. in Opp'n to Mot. for Protective Order, Doc. No. 37; Reply in Supp. of Mot. for Protective Order, Doc. No. 43; Opp'n to Mot. for Sanctions, Doc. No. 40; Reply Mem. in Supp. of Mot. for Sanctions, Doc. No. 41.)

[19] (Ms. Hernandez's Mot. 1–9, Doc. No. 29.)

LEGAL STANDARDS

Rule 30(d)(3)(A) of the Federal Rules of Civil Procedure provides:

> At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. . . . If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.[20]

Relatedly, under Rule 30(d)(2), if an attorney "impedes, delays, or frustrates the fair examination of [a] deponent," the court may impose sanctions, "including the reasonable expenses and attorney's fees incurred by any party."[21] Grounds for sanctions include "making an excessive number of unnecessary objections during a deposition."[22]

ANALYSIS

Where neither party has shown entitlement to relief, both motions are denied.[23] Mr. Kolkman's deposition will resume, and the parties are ordered to fully comply with

---

[20] Fed. R. Civ. P. 30(d)(3)(A); *see also* Fed. R. Civ. P. 26(c) (providing "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").

[21] Fed. R. Civ. P. 30(d)(2).

[22] *Palmer v. Lampson Int'l, LLC*, No. 11-CV-199, 2012 U.S. Dist. LEXIS 194612, at *2 (D. Wyo. Oct. 12, 2012) (unpublished) (citing Fed. R. Civ. P. 30(c)(2) advisory committee's note to 1993 amendment).

[23] In addition to failing on substantive grounds, neither motion complies with this district's local rules regarding discovery motions. *See generally* DUCivR 37-1 (requiring parties to confer in writing and limiting length of motions and responses to 500 words, among other things).

the Utah Standards of Professionalism and Civility[24] throughout the remainder of this case.

### I. Defendants' Motion for Protective Order

The crux of Defendants' position is that because Mr. Stephenson's questioning repeatedly exceeded the scope of this case, it was intended to annoy or harass Mr. Kolkman.[25] But Defendants have not shown the questioning fell outside the scope. The discovery sought is relevant and not intended to annoy or harass, which obviates the need for a protective order.

With regard to relevance, Defendants argue Ms. Hernandez may only seek discovery related to Defendants' "direct interaction" with Ms. Hernandez.[26] Specifically, Defendants contend "information concerning anyone, or any matter, beyond the facts and circumstances related directly to [Ms. Hernandez, is] irrelevant and should not be discoverable."[27] But relevance is broadly construed in discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[28]

The discovery Ms. Hernandez seeks—information relating to Defendants' debt collection practices—is relevant to her claims. Ms. Hernandez brings claims under the

---

[24] Available at https://www.utcourts.gov/en/about/courts/sup/civility.html [https://perma.cc/CP3C-NR53].

[25] (*See* Defs.' Mot. 6, Doc. No. 27.)

[26] (*Id.* at 8.)

[27] (*Id.*)

[28] Fed. R. Civ. P. 26(b)(1).

6

FDCPA, which requires her to establish Defendants are "debt collectors" for the purposes of that law.[29]  To show Defendants are debt collectors," Ms. Hernandez must show that either Defendants' principal business is to collect debt or Defendants regularly collect debt for others.[30]  In assessing whether a defendant regularly collects debt, courts look to the factors set out in the *Goldstein*[31] case, which include "the absolute number of debt collection communications issued," and "whether any patterns of [debt collection] activity are discernible."[32]  Moreover, "[f]acts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity."[33]

Defendants cite cases suggesting courts may not evaluate a debt collector's practices regarding persons other than the plaintiff when calculating statutory damages under the FDCPA.[34]  But this is not a question of evidentiary admissibility regarding damages.  Information need not be admissible to be discoverable.[35]  And regardless of

---

[29] *See* 15 U.S.C. § 1692a(6).  Notably, Defendants argue they are not "debt collectors" under the FDCPA.  (*See* Answer ¶¶ 12, 90–96, Doc. No. 5.)

[30] *See* 15 U.S.C. § 1692a(6).

[31] *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56 (2d Cir. 2004); *see also James v. Wadas*, 724 F.3d 1312, 1318 (10th Cir. 2013) ("We agree with and adopt the standard set forth by the Second Circuit in *Goldstein*.").

[32] *Goldstein*, 374 F.3d at 62.

[33] *Id.* at 63.

[34] (*See* Defs.' Mot. 7–8 (citing *Powell v. Comput. Credit, Inc.*, 975 F. Supp. 1034, 1039 (S.D. Ohio 1997), and *Cusumano v. NRB, Inc.*, No. 96 C 6876, 1998 U.S. Dist. LEXIS 15418, at *2 (N.D. Ill. Sept. 22, 1998) (unpublished)).)

[35] Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

whether general debt collection practices are relevant to damages, they are relevant to the threshold question of whether Defendants are debt collectors under the FDCPA, which is disputed in this case.[36] Accordingly, discovery concerning Defendants' overall debt collection practices is relevant.

Defendants also argue the question of whether Defendants are debt collectors under the FDCPA is not at issue in this case, because the FDCPA excludes officers of the state, such as constables collecting debt in performance of official duties.[37] But the FDCPA does not exclude a constable's debt collection efforts which exceed official duties.[38] In other words, if Ms. Hernandez shows Defendants exceeded their official duties when attempting to collect debt from her, the FDCPA standard for "debt collector"—including the question of whether Defendants regularly collect debt—is again

---

[36] *See, e.g.*, *James*, 724 F.3d at 1318–19 (evaluating total number of a defendant's debt collection cases and whether the defendant has issued debt collection communications generally, in determining whether the defendant qualifies as a "debt collector"). Defendants' attempt to distinguish *James*—on the grounds the defendants in *James* were attorneys, not constables—is unavailing. The FDCPA standard for "debt collector" does not distinguish between attorneys or constables. *See* 15 U.S.C. § 1692a(6) ("The term 'debt collector' means *any person* who . . . regularly collects or attempts to collect [debts]." (emphasis added)). Defendants do not explain why the relevance of general debt collection practices should change based on the identity of the defendant, nor cite any law in support of this proposition.

[37] (Defs.' Mot. 8, Doc. No. 27.)

[38] *See* 15 U.S.C. § 1692a(6)(C) (providing the term "debt collector" excludes "any officer or employee of the United States or any State *to the extent that collecting or attempting to collect any debt is in the performance of his official duties*" (emphasis added)); *see also Sexton v. Poulsen & Skousen P.C.*, 372 F. Supp. 3d 1307, 1318 (D. Utah 2019) ("This conclusion [that constables are officers of the state], however, does not automatically shield the constable defendants from liability. An officer of the state is immune from liability under the FDCPA only while collecting a debt in the performance of his or her official duties.").

8

at issue. Where Ms. Hernandez contends Defendants acted outside the scope of their official duties,[39] discovery regarding Defendants' debt collection activities is relevant at this stage in the case. Accordingly, Defendants' motion for a protective order is denied.

## II. Ms. Hernandez's Motion for Sanctions

Based on the same deposition, Ms. Hernandez seeks sanctions in the form of her attorney's fees, and seeks to compel an additional deposition of Mr. Kolkman.[40] Ms. Hernandez asserts Mr. Hill "intentionally impeded, delayed, and frustrated the fair examination of [Mr.] Kolkman by asserting improper objections and unilaterally terminating the deposition."[41] She also claims Mr. Hill impeded the deposition "by designating public information as confidential."[42] While this is a closer call, because Mr. Hill appears to have been working from the good-faith understanding that Mr. Stephenson's questions exceeded the scope of the case, sanctions are unwarranted.

Ms. Hernandez seeks sanctions for the numerous objections Mr. Hill made during the deposition. Specifically, Ms. Hernandez argues Mr. Hill initially asserted improper objections based on relevancy, and "[w]hen called out on the impropriety" of these objections, "Mr. Hill continued asserting the same objections but thinly disguised

---

[39] (See Compl. ¶ 14, Doc. No. 2 ("None of the conduct complained of herein constitutes the official duties Utah law authorizes constables to perform.").)

[40] (Ms. Hernandez's Mot. 1, Doc. No. 29.)

[41] (Id.)

[42] (Id. at 7.)

them as objections based on harassment and annoyance."[43] Ms. Hernandez also contends Mr. Hill's "excessive number of unnecessary objections" is sanctionable.[44] Although relevance objections during a deposition are generally improper,[45] Mr. Hill only made four such objections—and still instructed the witness to answer each question.[46] After Mr. Stephenson expressed that relevance objections were improper, Mr. Hill ceased raising them. And while Ms. Hernandez characterizes Mr. Hill's subsequent objections as "disguised relevancy objection[s]," Mr. Hill may object on the grounds harassment and annoyance, so long as he does so reasonably and in good faith.[47] Nothing in the deposition transcript suggests Mr. Hill's objections were based on anything other than a good-faith (albeit mistaken) belief that the information sought exceeded the scope of this case.[48] While Mr. Hill's conduct pushed up against the limits

---

[43] (*Id.* at 2.)

[44] (*Id.* at 5 (quoting Fed. R. Civ. P. 30(c)(2) advisory committee's note to 1993 amendment).)

[45] *See Lawson v. Spirit Aerosystems*, No. 18-1100, 2020 U.S. Dist. LEXIS 66892, at *16 (D. Kan. Apr. 16, 2020) (unpublished) ("Relevance is not an appropriate deposition objection."); *but see Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 700 (S.D. Fla. 1999) ("[I]f counsel feels that he must make a relevancy objection, the objection should briefly be made for the record, and the deposition should continue with the testimony being taken subject to the objection.").

[46] (*See* Kolkman Dep. at 10:4–8 ("Mr. Hill: I'm going to object on the grounds that it's beyond the scope of discovery or relevance in this action. You can answer."), 10:10–13 (same objection and instruction), 10:15–17 (same objection and instruction), 12:8–12 (same objection and instruction), Doc. No. 30.)

[47] *See Cincinnati Ins. Co. v. Serrano*, No. 11-2075, 2012 U.S. Dist. LEXIS 1363, at *14 (D. Kan. Jan. 5, 2012) (unpublished) (noting if a deposition question "so exceeds the scope of discovery that it evidences bad faith on the part of the questioner, or results in questioning which 'unreasonably annoys, embarrasses, or oppresses the deponent,' counsel may object").

[48] (*See also* Opp'n to Mot. for Sanctions 6, Doc. No. 40 ("The objections were raised

of reasonableness,[49] where most of his objections stemmed from his incorrect assessment of relevance and case scope, they were not so unnecessary as to be sanctionable.[50]

Ms. Hernandez also argues Mr. Hill impeded Mr. Kolkman's deposition by "unilaterally terminat[ing] the deposition without any just cause."[51] But Rule 30 of the Federal Rules of Civil Procedure entitles litigants to suspend depositions in order to file a motion to terminate or limit the deposition:

> At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. . . . If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.[52]

Mr. Hill expressly stated he was suspending the deposition for this purpose,[53] and Defendants filed their motion seeking Rule 30(d)(3)(A) relief promptly after the

---

because [Mr. Hill], in good faith, reasonably believed that the underlying questions were seeking information to be used in other pending or future litigation, which amounts to annoyance, harassment, and/or oppression . . . .").)

[49] Not only did Mr. Hill object on relevance and harassment grounds, he repeatedly objected on vagueness and foundation grounds. (*See, e.g.*, Kolkman Dep. at 5:20, Doc. No. 30.)

[50] *Cf. Palmer*, 2012 U.S. Dist. LEXIS 194612, at *4–5 (finding objections sanctionable where attorney objected groundlessly seventy-four times in an eighty-minute deposition, twenty-four times in a sixteen-minute deposition, thirty-three times in a thirty-five-minute reposition, and twenty-three times in a twenty-two-minute deposition).

[51] (Ms. Hernandez's Mot. 9, Doc. No. 29.)

[52] Fed. R. Civ. P. 30(d)(3)(A); *see also, e.g.*, *Yeager v. Fort Knox Sec. Prods.*, No. 2:11-cv-00091, 2013 U.S. Dist. LEXIS 60105, at *8 (D. Utah Apr. 25, 2013) ("[I]f Plaintiff's counsel believed that Defendant's counsel was acting in bad faith, or in a manner that unreasonably 'annoy[ed], embarrass[ed], or oppresse[d] the deponent,' Plaintiff's counsel could have stopped the deposition and sought a protective order . . . .").

[53] (*See* Kolkman Dep. at 38:22–39:2, Doc. No. 30 ("Mr. Hill: In light of the last question

deposition.  Regardless of the ultimate propriety of the deposition questions and objections, Rule 30 entitles Defendants to suspend the deposition in good faith in order to file a motion to terminate or limit it.

Ms. Hernandez similarly complains that Mr. Hill impeded the deposition by repeatedly asking the reporter to designate testimony as confidential.[54]  But Mr. Hill is entitled to make such designations under the standard protective order governing this case.[55]  Mr. Stephenson himself admitted this during the deposition.[56]  And to the extent Ms. Hernandez believes the designations themselves are improper, the Standard Protective Order includes a process for challenging confidentiality designations.[57]  Ms. Hernandez has not shown sanctions are warranted as to confidentiality designations.

---

that was answered and the repeated history of questions that have been objected to in this deposition, we are going to suspend and terminate the deposition . . . under Rule 30(d)(3), to terminate the deposition for the purpose of seeking a protective order.").)

[54] (Ms. Hernandez's Mot. 7–9, Doc. No. 29.)

[55] *See* Standard Protective Order § 4(d), available at https://www.utd.uscourts.gov/sites/utd/files/Standard%20Protective%20Order%20Cases%20Filed%20Before%2012-1-2023.pdf [https://perma.cc/26WB-36K5] ("A party may designate information disclosed at a deposition as [confidential] by requesting the reporter to so designate the transcript at the time of the deposition."); *see also* DUCivR 26-2(a) ("The Standard Protective Order . . . applies in every case involving the disclosure of any information designated as confidential, unless the court orders otherwise.").

[56] (*See* Kolkman Dep. at 43:3–6 ("[Mr. Stephenson:] Confidentiality: you don't have to make that [designation] during [the deposition.]  You can if you want, but you don't have to.  You can actually make that later on.  And under the standard protective order, that's totally fine.").)

[57] *See* Standard Protective Order § 9 (providing, inter alia, a party challenging confidentiality designations must "request the producing party in writing to change the designation of a document or documents, stating with particularity the reasons for that request").

In sum, Ms. Hernandez's motion is denied. While Mr. Hill's conduct overall was borderline, Ms. Hernandez has not shown Mr. Hill acted so unreasonably as to warrant sanctions.

* * *

A note on civility and professionalism: due to their previous conduct, the court has already reminded the parties of their obligation "to comply with both the letter and intent" of the Utah Standards of Professionalism and Civility.[58] This dispute makes another reminder necessary. As the deposition transcript shows, counsel for both sides spent nearly as much time arguing with each other as they spent on the substance of the deposition.[59] And some of this quarreling became personal.[60] It is apparent the parties to this case have a history litigating against each other, leading to bad feelings that are now bleeding over into this case.

All counsel in this case must avoid discourteous behavior, personal characterizations, impugning motives, and obstructing or impeding any aspect of this

---

[58] (*See* Docket Text Order Granting Motion for Extension of Time, Doc. No. 20 (noting "[t]he communications referenced in the briefing also raise questions about counsels' compliance with the Utah Standards of Professionalism and Civility")); *see also* DUCivR 83-1.1(d).

[59] (*See, e.g.*, Kolkman Dep. at 36:11–47:25.)

[60] (*See, e.g., id.* at 37:19–20 ([L]et's give him [Mr. Hill] a break to cool down because he's shaking right now."), 45:13–15 ("[Mr. Kolkman] has been willing to answer my questions. He's been extremely cooperative. It's just you [Mr. Hill] that hasn't been."); *see also* Mem. in Opp'n to Mot. for Protective Order 7, Doc. No. 37 ("Given how unreasonable and hasty Defendants' counsel was at [Mr.] Kolkman's deposition, they surely foresaw the likelihood of Plaintiff's Motion for Sanctions.").)

case. Anything less than full compliance with the Utah Standards of Professionalism and Civility[61] risks sanctions—particularly now, after this second warning.

## CONCLUSION

Because neither party has shown entitlement to relief, Defendants' motion for protective order[62] and Ms. Hernandez's motion for sanctions[63] are both denied,[64] and Mr. Kolkman's deposition shall resume.

DATED this 16th day of August, 2024.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[61] Available at https://www.utcourts.gov/en/about/courts/sup/civility.html [https://perma.cc/CP3C-NR53].

[62] (Doc. No. 27.)

[63] (Doc. No. 29.)

[64] Where both parties' motions are denied, an award of attorney's fees as to either motion would be unjust—the parties shall bear their own fees and costs. *See* Fed. R. Civ. P. 37(a)(5)(B) (providing when a discovery motion is denied, the court must not order payment of fees if "other circumstances make an award of expenses unjust").