Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| ELIZABETH HERNANDEZ,<br><br>        Plaintiff,<br><br>vs.<br><br>ROB KOLKMAN,<br>CONSTABLE KOLKMAN<br>LLC, and JOHN DOES 1-5,<br><br>        Defendants. | **MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case Number: 2:23-cv-00772<br><br>Judge: Ann Marie McIff Allen<br>Magistrate Judge: Daphne A. Oberg |

Plaintiff requests partial summary judgment in her favor pursuant to Rule 56 of the Federal Rules of Civil Procedure against Constable Kolkman LLC and Rob Kolkman jointly and severally for the violations of the Fair Debt Collection Practices Act (FDCPA) discussed herein.

### INTRODUCTION

This case challenges the unlawful debt collection practices of Rob Kolkman and his company Constable Kolkman LLC, a private business that operated under the guise of a law enforcement officer to pressure payments from the Plaintiff. Despite having no legal basis to collect from her, the Defendants repeatedly attempted to collect a debt Plaintiff did not owe, sent deceptive letters styled as official legal documents, added amounts to the debt they never earned, illegally threatened to seize her property, and failed to provide notices required under the Fair Debt Collection Practices Act (FDCPA). The undisputed facts show that although Plaintiff never owed the debt, these Defendants' acted in concert with each other to violate multiple provisions of the FDCPA. Partial summary judgment is therefore appropriate under Rule 56.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**Origin of the Debt**

1.      Sometime prior to August 31, 2020, Mountain America Credit Union assigned a past due consumer debt to NAR Inc., to collect.[1]

2.      That past due debt was for a personal credit card issued to someone other than Plaintiff (unknown debtor) for personal, family, or household purposes.[2]

3.      To collect the past due debt, NAR Inc., engaged Olson Shaner who subsequently obtained a default judgment against the unknown debtor in the amount of $5,969.78.[3]

4.      After it obtained the judgment, Olson Shaner obtained a Writ of Execution which augmented the amount of the debt to $6,148.81.[4]

5.      Olson Shaner then provided the Writ of Execution and a Praecipe to Rob Kolkman and his company Constable Kolkman LLC to collect the judgment from the Plaintiff.[5]

6.      Plaintiff was not named as a party in the original judgment, was not the account holder, and did not receive any underlying credit or services associated with the debt.[6]

**Debt Collection Purpose, Regularity, and Activities**

7.      Rob Kolkman is the sole owner of Constable Kolkman LLC[7] and was personally involved in the LLC's daily operations,[8] managed the business operations,[9] participated in implementing the collection process,[10] ratified and directly participated in the strategies used to

---

[1] Exhibit P-1 State Court Complaint
[2] Exhibit P-1 State Court Complaint
[3] Exhibit P-2 Default Judgment
[4] Exhibit P-3 Application for Writ of Execution; Exhibit P-4 Writ of Execution
[5] Exhibit P-4 Writ of Execution at 2; Exhibit P-5 Praecipe; *See* Exhibit P-10 Requests for Admis. No. 11; Exhibit P-6 August 16, 2023 Collection Letter; Exhibit P-7 August 21, 2023 Collection Letter; Exhibit P-8 Notice of Sale
[6] Exhibit P-9 Order Quashing Writ of Execution
[7] Exhibit P-21 Annual Report; Exhibit P-22 Certificate of Organization
[8] Kolkman Dep. 11:9-11; Exhibit P-10 Admis. Nos. 1-3
[9] Kolkman Dep. 11:14:19
[10] Kolkman Dep. 19:13-20:4, 22:23-23:4, 24:5-16, 26:2-4; Kolkman Second Dep. 131:21-135:10; Exhibit P-10 Admis. Nos. 1-3

collect,[11] and reaped financial benefits from the collection activity to the tune of collecting more than $3,200,000.00 in a two-year period.[12]

       8.     Constable Kolkman LLC's principal business purpose is focused mainly on using writs of execution to collect judgments from judgment debtors.[13]

       9.     Over the last few years, Constable Kolkman LLC and Rob Kolkman received thousands of writs of execution from various debt collection lawyers and debt collectors, including; Olson Shaner, The Cherrington Firm, Mountain Land Collections, and others.[14]

      10.     Beginning January 1, 2023, and continuing over a two-year period, Constable Kolkman LLC and Rob Kolkman received thousands of Writs of Execution from Olson Shaner, typically in weekly batches ranging from 20 to 50 writs.[15]

      11.     Constable Kolkman LLC and Rob Kolkman received approximately 600 writs of execution from The Cherrington Firm in 2023 and 2024.[16]

      12.     Constable Kolkman LLC and Rob Kolkman received approximately 1300 writs of execution from Mountain Land Collections in 2023 and 2024.[17]

      13.     Instead of executing the writs of execution the law firms provided, Constable Kolkman LLC and Rob Kolkman mailed letters requesting payments, communicated with debtors by telephone, solicited payments, and discussed payment arrangements.[18]

---

[11] Kolkman Dep. 11:20-25, 15:18-25; Kolkman Second Dep. 61:24-63:3, 79:1-12, 80:1-81:21, 85:5-11, 85:22-25, 88:22-89:13, 90:2-14, 92:3-8, 93:1-8, 97:13-98:22, 99:16-24, 100:13-21, 105:17-20, 108:21-109:2, 111:22-112:3, 114:17-24; Exhibit P-10 Admis. Nos. 1-3
[12] Kolkman Second Dep. 190:18-191:23; Exhibit P-18 Square Payments Register
[13] Kolkman Dep. 10:4-9, 10:20-11:1, 34:20-1; Kolkman Second Deposition 23:21-24 and 24:1-4, 59:21-60:8; Exhibit P-16 Cherrington Dep. 109:14-110:4
[14] Exhibit P-12 Kolkman Dep. 28:14-23, 28:14-23, 30:5-15; Kolkman Second Deposition 56:17-57:14, 59:21-24
[15] Kolkman Second Dep. 51:9-18, 56:17-21, 59:21-24; Kolkman Dep. 34:20-35:1
[16] Kolkman Second Deposition 56:22-57:7; Exhibit P-16 Cherrington Dep. 63:6-13 and 85:13-20
[17] Kolkman Second Deposition 57:8-11; Exhibit P-13 Mountain Land Collections Interrog. No. 21
[18] Kolkman Second Dep. 50:8-13 and 59:21-60:8

14.     From January 3, 2023 to March 12, 2025, Constable Kolkman LLC and Rob Kolkman received more than 22,000 individual payments, totaling more than $3,382,000.00 collected in that some period.[19]

15.     The LLC remitted money it collected to the law firms and reported its results to the law firms "once a week."[20]

16.     On May 3, 2023, the LLC had more than 3200 cases in its work queue.[21]

17.     Constable Kolkman LLC uses a software platform to track payments and debtor interactions,[22] a payment processing company to process debtor's payments,[23] and employs between five and seven employees to handle its collection processes.[24]

18.     The letters the LLC and Rob Kolkman send, and have sent in thousands of other cases, are based on templates inherited from a prior constable.[25]

19.     Rob Kolkman approved of the form letters his LLC used, the representations they contained, and the strategies implemented to obtain payments from debtors.[26]

**August 16, 2023 Letter to the Plaintiff**

20.     On or about August 16, 2023, Constable Kolkman LLC mailed Plaintiff a letter signed by Rob Kolkman.[27]

---

[19] Exhibit P-18 Square Payments Register; *See* Exhibit P-17 Kolkman Second Dep. 59:21-60:8 (Confirming it successfully collected payments in 70% to 80% of the thousands of cases it handled.)
[20] Exhibit P-17 Kolkman Second Dep. 171:3-6; *See also Id*. 180:11-17 (confirming payment reports were provided on such a regular basis that Kolkman characterized the frequency of those reports as "clockwork."; Exhibit P-19 Payment History (Specific numbers cannot be provided because this exhibit was produced in PDF format rather than its native format.)
[21] Exhibit P-20 Payment Update Emails
[22] Kolkman Second Dep. 32:8-12, 142:11-143:7
[23] Kolkman Second Dep. 143:14-20
[24] Kolkman Second Dep. 6:22-25, 7:9-8:13
[25] Kolkman Second Dep. 30:1-6, 31:11-14, 63:1-2, 74:18-20, 80:7-15
[26] Kolkman Second Dep. 63:1-11, 64:2-14, 65:4-14; Exhibit P-10 Admis. Nos. 1-3
[27] Exhibit P-6 August 16, 2023 Letter; Exhibit P-10 Requests for Admis. No. 2; Kolkman Second Dep. 61:24-62:16

21.     The August 16, 2023 letter was prepared by Constable Kolkman LLC using a template it uses in thousands of other cases.[28]

22.     The August 16, 2023 letter contained Constable Kolkman LLC's business phone number of (801) 561-9391 and address of 750 East 9000 South, Suite B, Sandy, Utah 84070.[29]

23.     An insignia of a sheriff-style law enforcement badge shaped like a star was printed at the top of the August 16, 2023 letter.[30]

24.     The August 16, 2023 letter stated the balance due on the judgment was $6,148.81 and the costs of the Writ of Execution were $259.23 for a total balance due of $6,408.04.[31]

25.     The August 16, 2023 letter requested Plaintiff to "contact this office **within 10 days** of the date of this letter **to make payment arrangements**."[32]

26.     The August 16, 2023 letter did not contain notice Constable Kolkman LLC was attempting to collect a debt and that any information obtained would be used for that purpose.[33]

27.     The August 16, 2023 letter did not provide notice that Plaintiff had 30 days to dispute the alleged debt.[34]

28.     The August 16, 2023 letter was the first communication Constable Kolkman LLC and Rob Kolkman had with the Plaintiff.[35]

**August 21, 2023 Letter to the Plaintiff**

29.     On August 21, 2023, Constable Kolkman LLC mailed Plaintiff a letter signed by Rob Kolkman.[36]

---

[28] Kolkman Second Dep. 62:24-63:3 and 63:23-64:1
[29] Exhibit P-6 August 16, 2023 Letter; Exhibit P-21 Constable Kolkman LLC Annual Report 2024
[30] Exhibit P-6 August 16, 2023 Letter; Answer ¶ 32
[31] Exhibit P-6 August 16, 2023 Letter; Kolkman Second Dep. 61:24-62:16; Answer ¶
[32] Exhibit P-6 August 16, 2023 Letter (*emphasis added*); Kolkman Second Dep. 65:4-10
[33] Exhibit P-6 August 16, 2023 Letter; Exhibit P-10 Request for Admis. No. 6; Exhibit P-11 Requests for Prod. No. 12; Kolkman Second Dep. 70:16-19
[34] Exhibit P-7 August 21, 2023 Letter; Exhibit P-10 Requests for Admis. No. 7; Exhibit P-11 Requests for Prod. No. 13; Kolkman Second Dep. 70:20-23
[35] Kolkman Second Dep. 67:14-22
[36] Exhibit P-7 August 21, 2023 Letter; Answer ¶ 40; Exhibit P-10 Admis. No. 12

30.     The August 21, 2023 letter was written by Constable Kolkman LLC using a template it also uses in other cases.[37]

31.     The August 21, 2023 letter contained Constable Kolkman LLC's business phone number of (801) 561-9391 and address of 750 East 9000 South, Suite B, Sandy, Utah 84070.[38]

32.     An insignia of a sheriff-style law enforcement badge shaped like a star was printed at the top of the August 21, 2023 letter.[39]

33.     The August 21, 2023 letter included a section styled as a court caption; listing NAR Inc., as the Plaintiff, Elizabeth Hernandez as the Defendant, displaying the case number, and featuring a horizontal dividing line similar to those used in court filings. The letter also listed Constable Kolkman LLC's address in the location typically reserved for an attorney's address.[40]

34.     The August 21, 2023 letter stated that Plaintiff must call "my office [Constable Kolkman LLC] within ten days to make arrangements to pay the judgment and avoid the sale of your non-exempt personal property."[41]

35.     The August 21, 2023 letter stated that the total amount due was $6,408.04.[42]

36.     The August 21, 2023 letter stated that Plaintiff owed a $50.00 service fee, $26.00 mileage fee, a commission of $97.23, a $60.00 notices fee, and an additional mileage to post fee of $26.00.[43]

37.     The August 21, 2023 letter did not state that neither Rob Kolkman nor Constable Kolkman LLC had actually incurred the costs itemized in the letter.[44]

---

[37] Kolkman Second Dep. 62:24-63:3, 63:23-64:1, 79:1-3
[38] Exhibit P-7 August 21, 2023 Letter; Exhibit P-21 Constable Kolkman LLC Annual Report 2024
[39] Exhibit P-7 August 21, 2023 Letter; Answer ¶ 41
[40] Exhibit P-7 August 21, 2023 Letter; Answer ¶ 42; Kolkman Second Dep. 74:21-75:3
[41] Exhibit P-7 August 21, 2023 Letter; Exhibit P-10 Requests for Admis. No. 3
[42] Exhibit P-**7** August 21, 2023 Letter; Kolkman Second Dep. 75:8-14
[43] Exhibit P-**7** August 21, 2023 Letter
[44] Exhibit P-**7** August 21, 2023 Letter; Kolkman Second Dep. 76:23-77:22, 78:19-21

38.     Constable Kolkman LLC and Rob Kolkman mailed letters using the same template as the August 21, 2023 letter with similar costs listed to "thousands of other debtors."[45]

39.     The August 21, 2023 letter included the Writ of Execution Olson Shaner obtained on behalf of NAR Inc., and a Praecipe directing a constable to "take into your custody whatever property the Defendant(s) may have in the State of Utah that is not exempt by law."[46]

40.     The Praecipe included with the August 21, 2023 letter also directed a constable to "attach and execute" on all non-exempt personal property and to "take possession" of that property.[47]

41.     The August 21, 2023 letter did not contain notice that Constable Kolkman LLC and Rob Kolkman were attempting to collect a debt and that any information obtained would be used for that purpose.[48]

42.     The August 21, 2023 letter did not provide notice that Plaintiff had 30 days to dispute the alleged debt.[49]

**September 15, 2023 "Notice of Sale"**

43.     On September 15, 2023 Constable Kolkman LLC mailed Plaintiff a letter signed by Rob Kolkman that notified her to "PLEASE TAKE NOTICE OF THE ATTACHED SALE NOTICE."[50]

44.     The September 15, 2023 letter also notified Plaintiff that "[w]hen sending payment or calling in reference to this letter, please refer to DOCKET # 228303" and that "sale fees may have been added to the total judgment."[51]

---

[45] Kolkman Second Dep. 79:1-3
[46] Exhibit P-**7** August 21, 2023 Letter; *See also* Exhibit P-4 Writ of Execution; *See also* Exhibit P-5 Praecipe
[47] Exhibit P-5 Praecipe**;** Exhibit P-**7** August 21, 2023 Letter
[48] Exhibit P-6 August 16, 2023 Letter; Exhibit P-10 Request for Admis. No. 6; Exhibit P-11 Req. for Prod. No. 12
[49] Exhibit P-7 August 21, 2023 Letter; Exhibit P-10 Requests for Admis. No. 7; Exhibit P-11 Req. for Prod. No. 13
[50] Exhibit P-8 September 15 Notice of Sale Letter (*emphasis in original*); Exhibit P-10 Request for Admis. Nos 1, 13, and 14; Kolkman Second Dep. 79:11-12 and 80:1-3
[51] Exhibit P-8 September 15 Notice of Sale Letter

45.     The September 15, 2023 letter was styled similar to a court caption as it contained the case number, Plaintiff's information, Defendant's information in the same places as in a court filing, the constable's name and address in the same place as a lawyer's information would be in a court filing, and a separation line between the designation of the parties and the case number as would be found in a court filing.[52]

46.     Included with the September 15, 2023 letter was a "Notice of Sale" that stated "NOTICE IS HEREBY GIVEN that all of the right, title and interest of the defendant in the property listed below may be sold at public auction to the highest bidder at the place and time listed."[53]

47.     The place of the sale stated in the Notice of Sale was Plaintiff's home address of 5049 W. Corlyn Cir, Salt Lake City, Utah.[54]

48.     The time of the sale stated in the Notice of Sale was October 6, 2023 at 15:50.[55]

49.     The property to be sold was listed in the Notice of Sale as "Any and all non exempt personal property. Including, but not limited to non exempt TV's, stereos, electronic equipment, DVD's and players, office equipment, cameras, art, collections, guns, camping equipment, livestock, machinery, farm equipment, tools and any and all non exempt vehicles."[56]

50.     The Notice of Sale indicated that Plaintiff must "**CONTACT THIS OFFICE IMMEDIATELY TO MAKE A PAYMENT OR ARRANGEMENTS TO CANCEL THE SALE**" and that "**PAYMENT MAY BE MADE BY CARD, CASH OR CERTIFIED FUNDS.**"[57]

---

[52] Exhibit P-8 Notice of Sale Letter at 1; Kolkman Second Dep. 85:12-15
[53] Exhibit P-8 Notice of Sale (*emphasis in original*)
[54] Exhibit P-8 Notice of Sale
[55] *Id.*
[56] *Id.*
[57] Exhibit P-8 Notice of Sale (*emphasis in original*)

51.     The September 15, 2023 letter was written by Constable Kolkman LLC using a template it also uses in thousands of other cases.[58]

52.     The September 15, 2023 letter contained Constable Kolkman LLC's business phone number of (801) 561-9391 and address of 750 East 9000 South, Suite B, Sandy, Utah 84070.[59]

53.     An insignia of a sheriff-style law enforcement badge shaped like a star was printed at the top of the September 15, 2023 letter and again at the top of the Notice of Sale attached thereto.[60]

54.     The Notice of Sale did not notify the Plaintiff that Constable Kolkman LLC and Rob Kolkman were attempting to collect a debt and that any information obtained would be used for that purpose.[61]

**FDCPA Mini Miranda and Validation Notices**

55.     None of Constable Kolkman LLC's letters to the Plaintiff contained notice that Constable Kolkman LLC and Rob Kolkman were attempting to collect a debt and that any information obtained would be used for that purpose.[62]

56.     Constable Kolkman LLC and Rob Kolkman never notified Plaintiff that they were debt collectors and that any information it obtained would be used to collect the alleged debt.[63]

57.     None of Rob Kolkman's or Constable Kolkman LLC's letters provided notice that Plaintiff had 30 days to dispute the alleged debt.[64]

---

[58] Kolkman Second Dep. 80:4-15, 114:17-24
[59] Exhibit P-8 September 15, 2023 Notice of Sale Letter
[60] *Id.*
[61] Exhibit P-8 Notice of Sale; Exhibit P-10 Request for Admis. No. 6
[62] *See* Exhibit P-6 August 16, 2023 Letter, *See* Exhibit P-7 August 21, 2023 Letter; *See* Exhibit P-8 Notice of Sale; Exhibit P-10 Request for Admis. No. 6; Exhibit P-11 Requests for Prod. No. 12; Kolkman Second Dep. 70:16-19
[63] *Id.*
[64] Exhibit P-10 Requests for Admis. No. 7; Exhibit P-11 Requests for Prod. No. 13; Exhibit P-6 August 16, 2023 Letter; Exhibit P-7 August 21, 2023 Letter; Exhibit P-8 Notice of Sale; Kolkman Second Dep. 70:20-23

58.    Constable Kolkman LLC and Rob Kolkman never notified Plaintiff that she had 30 days to dispute the alleged debt.[65]

**Asset Seizures and Sales**

59.    Constable Kolkman LLC mailed a Notice of Sale letter signed by Rob Kolkman similar to the September 15, 2023 Notice of Sale to approximately 90% to 100% of the debtors to whom it served or mailed Writs of Execution.[66]

60.    Constable Kolkman LLC and Rob Kolkman are aware that mailing debtors the Notice of Sale letter will cause the debtors "fear, urgency, concern."[67]

61.    Constable Kolkman LLC and Rob Kolkman are aware that seizing and selling a debtor's property would be "devasting" to the debtor.[68]

62.    Approximately 80% of the debtors Constable Kolkman LLC mails the Notice of Sale letter respond to that letter while 95% of those who respond make a payment.[69]

63.    The reason 80% of debtors respond to the Notice of Sale and 95% of those who respond pay, is "[b]ecause they want to keep their stuff."[70]

64.    Constable Kolkman LLC and Rob Kolkman have never seized or sold any debtor's personal property after mailing the Notice of Sale.[71]

65.    Constable Kolkman LLC's and Rob Kolkman's intention in mailing the Notice of Sale Letters is to "get ahold of the people and have communication with them to find out what their assets are and go from there."[72]

---

[65] *Id.*
[66] Exhibit P-17 Kolkman Second Dep. 61:3-20
[67] Kolkman Second Dep. 89–10-22, 99:16-24
[68] Kolkman Second Dep. 98:13-98:5
[69] Kolkman Second Dep. 97:13-22
[70] Exhibit P-17 Kolkman Second Dep. 97:13-22
[71] Kolkman Second Dep. 24:9-20, 59:21-60:8, 105:17-20, 108:21-109:2, 127:1-9; Exhibit 10 Admis. Nos. 8-9
[72] Kolkman Second Dep. 89:89:1-13

66.     Constable Kolkman LLC's and Rob Kolkman's other intention in mailing the Notice of Sale Letter to the Plaintiff was "not to notify them [the debtors] that a sale will take place, it's to trigger a phone call from them so [they] can discuss their assets."[73]

67.     When Constable Kolkman LLC told the Plaintiff to "contact this office immediately to make a payment or arrangements to cancel the sale" it was not necessary for Plaintiff to make arrangements or contact the LLC because the sale was not going to take place.[74]

68.     Rob Kolkman and Constable Kolkman LLC never advertised any sale of the Plaintiff's property[75] and never do despite being aware of that obligation since the 1980s.[76]

69.     Rob Kolkman and Constable Kolkman LLC did not arrange for any movers or storage to accommodate a seizure and storage of Plaintiff's property.[77]

70.     Rob Kolkman and Constable Kolkman LLC did not post public notice of a sale of Plaintiff's property.[78]

71.     Rob Kolkman and Constable Kolkman LLC did not contact local law enforcement before notifying Plaintiff about the Writ of Execution or mailing the Notice of Sale.[79]

72.     Neither Defendant ever seized or sold Plaintiff's property.[80]

73.     Plaintiff never owed the debt Defendants sought to collect.[81]

74.     Constable Kolkman LLC Rob Kolkman and have no procedures in place to avoid violating the FDCPA.[82]

---

[73] Exhibit P-17 Kolkman Second Dep. 89:9-13 and 93:6-8
[74] Kolkman Second Dep. 85:22-86:7
[75] Kolkman Second Dep. 126:25-127:9; Exhibit P-10 Admis. No. 8
[76] Kolkman Second Dep. 126:25-127:24
[77] Kolkman Second Dep. 93:9-14
[78] Kolkman Second Dep. 93:15-16; Exhibit P-10 Admis. No. 8
[79] Kolkman Second Dep. 117:16-19 and 121:25-122:2; *See also* Kolkman Second Dep. 118:15-17, 119:9-120:1, and 123:10-15 (confirming neither Constable Kolkman LLC nor Rob Kolkman do not make these required contacts)
[80] Exhibit P-10 Req. for Admis. Nos. 3, and 8-9; Exhibit P-11 Req. for Prod. Nos. 8-9; Kolkman Second Dep. 92:3-8
[81] Exhibit P-9 Order Quashing Writ of Execution; Exhibit P-10 Requests for Admis. Nos. 8-10
[82] Kolkman Second Dep. 36:1-9; Exhibit P-11 Req. for Produc. Nos. 4-5

## STANDARD OF REVIEW

Summary judgment is required when the movant establishes there is no genuine dispute about the material facts and the law entitles it to judgment.[83] When the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial.[84] The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."[85] If the evidence produced by the nonmoving party, "is merely colorable... or is not significantly probative, ... summary judgment may be granted."[86] Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.[87]

## THE FAIR DEBT COLLECTION PRACTICES ACT

The Fair Debt Collection Practices Act was enacted in 1977 for, *inter alia*, the purpose of eliminating abusive debt collection practices by debt collectors.[88] The legislative history of the passage of the FDCPA explains that the need for the FDCPA arose because of collection abuses such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."[89]

Examples of particular practices debt collectors are forbidden to employ are set forth in the statute.[90] That includes collecting amounts not owed or misrepresenting the amount,

---

[83] Fed. R. Civ. P. 56(a)

[84] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986)

[85] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)

[86] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249 (*citations omitted*)

[87] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)

[88] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 130 S.Ct. 1605, 1608, 176 L.Ed.2d 519 (2010); *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 398 (6th Cir.1998) (*quoting* 15 U.S.C. § 1692(e))

[89] S. Rep. No. 95–382, at 2 (1977), *reprinted* in 1977 U.S.C.C.A.N. 1695, 1696.

[90] *See* 15 U.S.C. § 1692 *et seq.*

character, or legal status of a debt.[91] The list, however, is non-exhaustive, and the FDCPA

generally forbids collectors from engaging in any unfair, deceptive, harassing, abusive, or

unconscionable behavior.[92]

     The FDCPA is considered a strict liability statute since it "does not ordinarily require

proof of intentional violation."[93] "Proof of one violation is sufficient to support a finding of

summary judgment in favor of the Plaintiff in an FDCPA action."[94]

     The Fair Debt Collection Practices Act is also considered a remedial statute and therefore

"it should be construed liberally in favor of the consumer."[95] "[T]he Act is 'extraordinarily

broad' and must be enforced as written, even when eminently sensible exceptions are proposed

in the face of innocent and/or de minimis violations."[96] Such broad construction is necessary, "so

as to effect its purpose."[97]

     In determining whether there is a violation of the FDCPA, courts apply the least

sophisticated consumer test.[98] This objective standard, "ensure[s] that the FDCPA protects all

consumers, the gullible as well as the shrewd ... the ignorant, the unthinking and the

credulous."[99] The least sophisticated consumer standard is a low standard and "is consistent with

the norms that courts have traditionally applied in consumer-protection law."[100] For example, "a

communication that would not deceive or mislead a reasonable debtor might still deceive or

---

[91] 15 U.S.C. § 1692f(1) and 15 U.S.C. § 1692e(2)(A) respectively
[92] *See* 15 U.S.C. § 1692 *et seq.*
[93] *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1190 (11th Cir. 2010)(*citing* 15 U.S.C. § 1692k; *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010))
[94] *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2nd Cir.1993); *Cacace v. Lucas,* 775 F. Supp. 502, 505 (D.Conn.1990)
[95] *Johnson v. Riddle*, 305 F.3d 1007, 1117 (10th Cir. 2002)
[96] *Blevins v. Hudson & Keyse, Inc.,* 395 F.Supp.2d 655, 658 (S.D. Ohio 2004) (referring to *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir.1992))
[97] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)
[98] *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993); *see also Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320, 1329 (D. Utah 1997)
[99] *Id.* at 1318-1319
[100] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)

mislead the least sophisticated debtor."[101] Accordingly, "any lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor."[102]

ARGUMENT

**Constable Kolkman LLC is a debt collector under the FDCPA**

The Fair Debt Collection Practices Act protects consumers from abusive, deceptive, or otherwise unfair debt collection practices.[103] It applies to debt collectors which are defined as "any person . . . in any business the **principal purpose** of which is the collection of any debts."[104] Alternatively, the FDCPA also governs the activity of anyone "who **regularly collects or attempts to collect**, directly or indirectly, debts owed or due or asserted to be owed or due another."[105] Based on witness testimony and its operational structure, Constable Kolkman LLC squarely fits both definitions.

As used in the FDCPA, the term "principal purpose" refers to a business's most important goal or objective.[106]

> "Determining a business's principal purpose thus involves comparing and prioritizing its objectives, not analyzing the means employed to achieve them. Accordingly, the relevant question in assessing a business's principal purpose is whether debt collection is incidental to the business's objectives or whether it is the business's dominant, or principal, objective.[107]

---

[101] *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (*quoting Wilson v. Quadramed*, 225 F.3d 350, 354 (3d Cir. 2000))
[102] *Brown*, 464 F.3d at 454
[103] 15 U.S.C. § 1692(a)
[104] 15 U.S.C. § 1692a(6) (*emphasis added*)
[105] *Id.*
[106] *See Barbato v. Greystone All., LLC*, 916 F.3d 260, 267 (3d Cir. 2019)
[107] *McAdory v. M.N.S. & Assocs., Ltd. Liab. Co.*, 952 F.3d 1089, 1093 (9th Cir. 2020)

Here, Constable Kolkman LLC's dominant or principal objective—indeed, its only objective—consists of collecting money on behalf of high-volume debt collection law firms like Olson and Shaner.[108] Unlike a normal constable, sheriff, or process server, Constable Kolkman LLC does not perform general service of legal process.[109] Instead, the company focuses exclusively on collecting money from judgment debtors in exactly the same manner as any other debt collector; through written correspondence, telephone communications, and by discussing and negotiating payment arrangements for debts it collects for others—all hallmarks of debt collection activity under the FDCPA.[110]

Even Rob Kolkman, the LLC's sole owner, agrees that like any run-of-the-mill debt collector, the LLC never engages in traditional service of process of summons, complaints, evictions, or other similar legal process[111] but instead "mails letters, makes phone calls, collects money from debtors, and discusses payment arrangements with debtors."[112] Because its most important business purpose is collecting debts from judgment debtors, Constable Kolkman LLC squarely fits the "principal purpose" definition.[113] "As long as a business's raison d'être is obtaining payment on the debts that it acquires, it is a debt collector."[114]

Based on the volume and regularity of its debt collection activities, Constable Kolkman LLC also falls squarely under the "regularly collects or attempts to collect" definition of a debt collector.[115] Beginning January 1, 2023, and continuing over a two-year period, Constable Kolkman LLC received thousands of writs of execution from Olson Shaner, typically in weekly

---

[108] Kolkman Second Dep. 50:8-13
[109] Kolkman Second Dep. 23:21-24:4; Kolkman Dep. 10:4-9, 10:20-11:1, 34:2-8
[110] Kolkman Second Dep. 46:7-47:21 and 50:8-13
[111] Kolkman Second Dep. 23:21-24
[112] Kolkman Second Dep. 50:8-13
[113] 15 U.S.C. § 1692a(6)
[114] *Barbato v. Greystone All., LLC*, 916 F.3d 260, 267 (3d Cir. 2019)
[115] 15 U.S.C. § 1692a(6)

batches.[116] In the same time period, it received more than 1300 writs of execution from Mountain Land Collections[117] and 600 more from The Cherrington Firm.[118]

Rather than execute those writs, the LLC mailed thousands of letters demanding payments, communicated with debtors by telephone, solicited payments, discussed payment arrangements,[119] and as a result of those communications, received more than 22,000 individual payments for a total of more than $3,382,000.00 collected.[120] The LLC then remitted portions of the money it collected to the law firms and reported its results on such a regular basis that Kolkman characterized the frequency of those reports as "clockwork."[121] On May 3, 2023 the LLC had more than 3200 cases in its collection queue.[122] This steady, high-volume stream of template-based collections reflects a systematic and continuous, (i.e. "regular") debt collection operation.

In that same two-year period, despite receiving close to 10,000 writs of execution, Constable Kolkman LLC collected thousands of payments without even attempting to seize any personal property, advertise any sales, hold any sales, or arrange for any storage, moving vehicles, or movers.[123] It is therefore undisputed that the LLC's established business model involves monetary recovery for other companies through debtor contact and communication, not from executing writs of execution, serving legal papers, or handling other neutral court processes. And, the volume of debt collection cases Constable Kolkman LLC handles is so extensive, even the LLC cannot specify how many collections it has handled over the years.[124]

---

[116] Kolkman Second Dep. 51:9-18, 56:17-21, 58:2-5; Kolkman Dep. 34:20-35:1 and 35:22-24
[117] Kolkman Second Dep. 57:8-11; Exhibit 13 Mountain Land Collections Interrog. No. 21
[118] Kolkman Second Dep. 56:17-57:14
[119] Kolkman Second Dep. 50:8-13
[120] Exhibit 18 Square Payments Register; *See also* Exhibit 14 MLC Interrog. Nos. 21-22; *See* Kolkman Second Dep. 59:21-60:8 (Confirming it successfully collected payments in 70% to 80% of the thousands of cases it handled.)
[121] Kolkman Second Dep. 180:11-17; Exhibit 18 Square Payments Register; Exhibit P-19 Payment History (Specific numbers cannot be provided because this exhibit was produced in PDF format rather than its native format.)
[122] Exhibit P-20 Payment Update Emails
[123] Exhibit 10 Admis. No. 9; Kolkman Second Dep. 23:21-24, 24:9-20, 59:21-60:8
[124] Kolkman Second Dep. 56:17-24

All the *Goldstein* factors courts use to evaluate regularity of collections are therefore satisfied.[125] The frequency of the LLC's communications is easily discernable and substantial—indeed, it is all they do.[126] Constable Kolkman LLC also uses at least two different software programs to monitor and track its efforts and payments[127] and employs five to seven employees at any given time whose sole job is to engage in collection activities.[128] The letters the LLC sends, and has sent to thousands of other debtors, are based on templates inherited from a prior constable.[129] Finally, all of the LLC's collection activity takes place in connection with ongoing relationships with the debt collection law firms who hired them to assist in the collection of outstanding consumer debt obligations.[130] Even Kolkman agrees, that like any run-of-the-mill debt collector, the LLC regularly "mails letters, makes phone calls, collects money from debtors, and discusses payment arrangements with debtors."[131]

Because its principal business purpose is debt collection and because it regularly collects debts owed to others, Constable Kolkman LLC falls squarely within the scope of the FDCPA's definition of a debt collector.

> "A primary purpose of the FDCPA was to protect consumers from abusive debt collection practices by debt collectors, 15 U.S.C. § 1692(e), and given the emergence of entities that purchase debt and subcontract regular collection activities, this purpose would be entirely circumvented if the Act's restrictions did not apply to entities like [Constable Kolkman LLC]."[132]

---

[125] *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61-63 (2d Cir. 2004); *see also James v. Wadas*, 724 F.3d 1312, 1318 (10th Cir. 2013) ("We agree with and adopt the standard set forth by the Second Circuit in Goldstein.")

[126] Kolkman Second Dep. 23:21-24, 24:1-4, 24:9-20, 59:21-60:8; Kolkman Dep. 10:4-9 and 10:20-24; Exhibit 10 Admis. No. 9

[127] Kolkman Second Dep. 32:8-12 and 142:10-143:4

[128] Kolkman Second Dep. 6:22-25, 7:9-8:13; Kolkman Dep. 17:11-24

[129] Kolkman Second Dep. 31:11-14, 63:1-2, 74:18-20, 80:7-15

[130] Kolkman Second Dep. 56:17-57:14

[131] Kolkman Second Dep. 50:8-13

[132] *McAdory v. M.N.S. & Assocs., Ltd. Liab. Co.*, 952 F.3d 1089, 1098 (9th Cir. 2020)

**Constable Kolkman LLC violated 15 U.S.C. §§ 1692f and 1692f(1) by collecting and attempting to collect amounts Plaintiff never owed**

Under the Fair Debt Collection Practices Act, certain conduct is considered *per se* unfair and unconscionable. This includes "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."[133] The FDCPA also more generally prohibits the use of any unfair or unconscionable means to collect a debt.[134] Constable Kolkman LLC violated each of these sections of the FDCPA.

For starters, it is undisputed that Plaintiff never owed the debt.[135] The state court quashed the Writ of Execution for that exact reason.[136] Constable Kolkman LLC nonetheless engaged in multiple communications to collect from the Plaintiff. On August 16, 2023, it mailed a letter demanding payment and representing the principal balance due of $6,148.81 with costs added in the amount of $259.23 for a total of $6,408.04.[137] To reinforce its demand for payment, the letter unequivocally implored Plaintiff to "contact this office within 10 days of the date of this letter make payment arrangements."[138] As it was based on a template, Constable Kolkman LLC regularly mailed a similar letter to at least several thousand other debtors.[139]

That one letter alone is sufficient to prove liability under the strict liability FDCPA.[140] Plaintiff did not owe the debt or any of the amounts the LLC demanded and represented as owed.[141] Because Plaintiff was never legally obligated to pay the alleged debt, the amounts

---

[133] 15 U.S.C. § 1692f(1)
[134] 15 U.S.C. § 1692f
[135] Exhibit P-9 Order Quashing Writ of Execution; Exhibit P-10 Requests for Admis. No. 10
[136] *Id*.
[137] Exhibit P-6 August 16, 2023 Collection Letter; Kolkman Second Dep. 61:24-62:25; Exhibit P-10 Requests for Admis. No. 2
[138] Exhibit P-6 August 16, 2023 Letter; Kolkman Second Dep. 65:4-10
[139] Kolkman Second Dep. 63:23-64:1
[140] *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2nd Cir.1993); *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D.Conn.1990)
[141] Exhibit P-9 Order Quashing Writ of Execution

sought were neither authorized by contract nor permitted by law.[142] Representing otherwise and attempting to collect such unauthorized amounts constitutes an unfair and unconscionable debt collection practice.[143] Whatever agreement created the debt cannot be a basis for collecting from an innocent person who never had any liability for that debt.[144]

Even though one letter was sufficient to violate the FDCPA, Constable Kolkman LLC mailed Plaintiff another letter on August 21, 2023.[145] This one not only reiterated the demand for payment of a debt Plaintiff never owed, it also clarified the additional fees added to the debt that the LLC and Rob Kolkman never earned. The letter added a $50.00 service fee, $26.00 mileage fee, an $97.23 commission, and a $60.00 notices fee, and an additional mileage to post fee of $26.00 even though none of those additional amounts were authorized by the court or permitted by law.[146]

Adding those amounts is another *per se* violation of the FDCPA. Because Plaintiff never owed any of the debt, let alone the full $6,408.04 for which the LLC was demanding payment, it was never legal for anyone to collect those amounts.[147] Even Kolkman admitted those fees were never earned.[148] And, like its other letters, this one was also based on a template regularly used by the LLC in thousands of other collections.[149] Under the Act, collecting amounts a person does not owe, even when they owe the underlying debt, is a *per se* violation.[150]

These facts are not in dispute: the state court determined that Plaintiff never owed the underlying debt.[151] As a result, she could not be liable for that debt or any additional amounts

---

[142] 15 U.S.C. § 1692f(1)
[143] 15 U.S.C. § 1692f(1) 15 U.S.C. § 1692f
[144] *Reid v. LVNV Funding, LLC*, No. 2:14CV471DAK, 2016 U.S. Dist. LEXIS 7233 ¶ 9 (D. Utah Jan. 20, 2016)
[145] Exhibit P-7 August 21, 2023 Letter; Kolkman Second Dep. 74:7-20
[146] Exhibit P-7 August 21, 2023 Letter
[147] Exhibit P-9 Order Quashing Writ of Execution; Exhibit P-10 Requests for Admis. Nos. 8-10
[148] Kolkman Second Dep. 77:20-22, 78:6-10, 78:22-25; Exhibit P-10 Req. for Admis. Nos. 8-10; Exhibit P-11 Req. for Prod. Nos. 8-9
[149] Kolkman Second Dep. 74:10-17 and 79:1-3
[150] 15 U.S.C. §§ 1692f and 1692f(1)
[151] Exhibit P-9 Order Quashing Writ of Execution

claimed in connection with its collection—particularly where those fees were neither earned nor actually incurred.[152] Constable Kolkman LLC therefore violated 15 U.S.C. §§ 1692f and 1692f(1) by collecting amounts Plaintiff never owed.[153]

**Constable Kolkman LLC violated 15 U.S.C. § 1692e(14) by using a false business name to collect from the Plaintiff**

One of the FDCPA's core protections is its prohibition against debt collectors using any name other than their true legal business name when attempting to collect a debt.[154] This provision ensures that consumers know who is contacting them rather than being misled by fictitious, ambiguous, or deceptive names that obscure the true source of the communications.[155] The requirement to use their true legal name also levels the playing field so debt collectors cannot use deception or abuse to the competitive disadvantage of other debt collectors.[156]

Constable Kolkman LLC violated this core FDCPA requirement by using the name "Constable Rob Kolkman" in its collection letters, rather than its true legal business name.[157] This misrepresentation is not minor—it is materially misleading. By presenting itself as an individual law enforcement officer rather than a private LLC, the company concealed and obscured the true source of the communication and falsely suggested that official government authority was being exercised.[158] In reality, these were private collection efforts conducted by a

---

[152] Kolkman Second Dep. 77:20-22, 78:6-10, 78:22-25; Exhibit P-10 Admis. Nos. 8-10; Exhibit P-11 Requests for Prod. Nos. 8-9

[153] 15 U.S.C. § 1692; *see also* S. Rep. 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696 ("The committee has found that debt collection abuse by third party debt collectors is a widespread and serious national problem.")

[154] 15 U.S.C. § 1692e(14); *see also Hartman v. Meridian Financial Services, Inc*., 191 F. Supp.2d 1031, 1045 (W.D. Wis. 2002) ("Under the FDCPA, a debt collector is obligated to use its own name when corresponding with a consumer.")

[155] *See, e.g., Weinstein v. Fink*, 2001 U.S. Dist. LEXIS 2075, 2001 WL 185194, *5 (N.D. Ill. Feb. 26, 2001) ("The aim of § 1692e(14) is to prevent debt collectors from using a name other than [their] own in an attempt to mislead or deceive a consumer.")

[156] 15 U.S.C. § 1692e

[157] *Compare* Exhibit P-21 Annual Report and Exhibit P-22 Certificate of Organization *to* Exhibit P-6 August 16, 2023 Letter, Exhibit P-7 August 21, 2023 Letter, and Exhibit P-8 September 15, 2023 Notice of Sale

[158] 15 U.S.C. §§ 1692e(14), 1692e(1), and 1692e(9)

private business entity with no constable powers. This deceptive naming not only undermines the transparency the FDCPA requires but also deprived Plaintiff of the ability to identify the true collector and assess whether the communication was lawful. [159]

Such deception is precisely among the abuses the FDCPA was enacted to prohibit and supports a finding that Constable Kolkman LLC engaged in unlawful debt collection practices.[160] This is especially true here where the purpose of that deception serves the dual purpose of obtaining a competitive advantage over other debt collectors[161] and pressuring debtors to make payment arrangements out of fear of imminent legal enforcement by a government officer the LLC falsely portrayed itself to be.[162]

Under these facts, there is no genuine dispute of material fact. The LLC used a false name in connection with collecting a debt that was not its true legal business name.[163] "Although the statute never says what a 'true name' is, its import is straightforward: A debt collector may not lie about his institutional affiliation."[164] Plaintiff is therefore entitled to summary judgment that Constable Kolkman LLC violated Section 1692e(14) of the FDCPA. To allow otherwise would subvert the purposes of the FDCPA to eliminate deceptive collection practices and to prohibit this debt collector from gaining an unfair advantage over its competition.[165]

---

[159] 15 U.S.C. § 1692(c)
[160] 15 U.S.C. § 1692e(14); *Schwarm v. Craighead*, 552 F. Supp.2d 1056, 1076 (E.D. Cal. 2008) (finding violation of § 1692e(14) where "none of DATS' letters used its true name (DATS) or the name it was registered as doing business under (CSS)")
[161] 15 U.S.C. § 1692(e)
[162] Kolkman Second Dep. 90:2-14, 93:1-8, 99:16-24
[163] *Compare* Exhibit P-6 August 16, 2023 Letter, Exhibit P-7 August 21, 2023 Letter, Exhibit P-8 September 15, 2023 Notice of Sale *to* Exhibit P-21 Annual Report *and* Exhibit P-22 Certificate of Organization
[164] *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1115 (6th Cir. 2015)
[165] 15 U.S.C. § 1692(e)

**By falsely representing itself as a government official and as having governmental powers and authority it did not have, Constable Kolkman LLC violated 15 U.S.C. §§ 1692e, 1692e(1), 1692e(9), 1692e(10), 1692e(13), and 1692f**

Constable Kolkman LLC is a privately-owned limited liability company.[166] As such, it is not a government agency and holds no governmental power or authority of any kind. Nonetheless, in its communications with the Plaintiff, the LLC adopted the title of "Constable" and overtly asserted it was cloaked with the mantle and authority of a legally-appointed law enforcement officer.[167] By doing so, the LLC violated the FDCPA's clear prohibition on making any "false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof."[168] It also violated the FDCPA's prohibition on using written communications that falsely appear to be legal process[169] or to have originated from a court or government agency or imply official approval.[170] This also constitutes a violation of the FDCPA's more general prohibitions on using any false, deceptive, misleading, unfair, on unconscionable representations or means.[171]

Under Utah law, the title of "constable" has a specific and exclusive legal meaning that only applies to an individual "special function peace officer"[172] who has been appointed as a constable by a county or city government.[173] Under that definition, the LLC is not, and cannot be, a "constable" or perform governmental processes as the LLC stated. Only constables or sheriffs are authorized to execute writs of execution.[174] Nonetheless, the LLC's letters not only

---

[166] Exhibit P-22 Certificate of Organization; Exhibit P-21 Annual Report
[167] Exhibit P-6 August 16, 2023 Letter; Exhibit P-7 August 21, 2023 Letter; Exhibit P-8 September 15, 2023 Notice of Sale
[168] 15 U.S.C. § 1692e(1)
[169] 15 U.S.C. § 1692e(13)
[170] 15 U.S.C. § 1692e(9)
[171] 15 U.S.C. §§ 1692e, 1692e(10) and 1692f
[172] Utah Code Ann. § 17-25a-2(1)
[173] Utah Code Ann. § 17-25a-1(1)(a)
[174] Utah R. Civ. P. 64(a)(7); *See also* Utah R. Civ. P. 64(d), 69A, and 69B

suggested, but stated outright, that the LLC had immediate power to seize property and conduct law enforcement actions such as executing writs of execution.[175] This was false and materially misleading. As a private company, the LLC and its collection methods were never "vouched for, bonded by, or affiliated with the United States or any State…" as is implied by using the official title of "Constable" in its company name, placing a law enforcement insignia in its letters, and threatening to take action only a true law enforcement official can take.[176] The LLC was also never authorized to take any official government action despite stating otherwise in its letters.[177]

By appropriating this official title, and stating that it had government power, the LLC falsely conveyed that it not only possessed governmental authority it does not and cannot lawfully hold or exercise, but that it is "vouched for, bonded by, or affiliated with" the State of Utah or other governmental authority.[178] To bolster the notion that the LLC was acting as a governmental authority, Constable Kolkman LLC also used a law enforcement insignia, legal formatting, and language in its letters that conveyed the appearance of official government correspondence.[179] All three of its letters contained an insignia of a law enforcement badge.[180] Two of its letters contained a court case caption complete with the identification and affiliation of each party, the case number, and even had a line separating those two sections similar to what appears in court filings.[181] Those letters included the Defendants' name and address where that information would be in a court caption, identified NAR as the "Plaintiff" and Elizabeth Hernandez as the "Defendant," and stated the case number in the same place in any normal court

---

[175] Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 August 21, 2023 Collection Letter; Exhibit P-8 Notice of Sale
[176] 15 U.S.C. § 1692e(1)
[177] 15 U.S.C. § 1692e(10)
[178] 15 U.S.C. § 1692e(1)
[179] Exhibit P-7 August 21, 2023 Collection Letter; Exhibit P-8 Notice of Sale; Kolkman Second Dep. 90:2-14 (confirming the purpose of the LLC's letters is to notify debtors it can take their property if they don't make payment arrangements.)
[180] Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 August 21, 2023 Collection Letter; Exhibit P-8 Notice of Sale
[181] Exhibit P-7 August 21, 2023 Collection Letter; Exhibit P-8 Notice of Sale

filing.[182] The LLC even placed Rob Kolkman's name and address exactly where the filing attorney's information is normally provided.[183] There is no dispute these letters are styled to mimic official court filings even though doing so is strictly prohibited by the FDCPA.[184]

Case law or other authorities interpreting § 1692e(9) are not plentiful. However, the few cases which address this provision generally find violations of § 1692e(9) in situations like this case where the debt collector overtly impersonates a governmental agency or where the debt collector attempts to hide its identity by using a false alias. For example, in *Gradisher v. Check Enforcement Unit, Inc.*, the court found a violation of § 1692e(9) where the debt collector used the letterhead and envelopes of the sheriff's office, which created the false impression that the letter was generated by the sheriff's office.[185] In *Sonmore v. Checkrite Recovery Services, Inc.,* the court granted summary judgment in favor of the debtor under Section 1692e(9) for the debt collectors' false representations that collection letter came from an attorney by stating "Attorneys at Law," and noted that the letter came from a law firm which acted as a debt collector for the defendant.[186] Other cases agree with these results.[187] Similarly, in *Clomon v. Jackson*, the court found that collection letters on attorney letterhead with mechanically reproduced signatures were "false and misleading" under the FDCPA because the attorney had no meaningful personal

---

[182] Utah R. Civ. P. 10(a)

[183] Exhibit P-6 August 21, 2023 Collection Letter; Exhibit P-7 Notice of Sale

[184] 15 U.S.C. § 1692e(9)

[185] *Gradisher v. Check Enforcement Unit, Inc.*, 210 F. Supp. 2d 907, 914 (W.D. Mich. 2002)

[186] *Sonmore v. Checkrite Recovery Services, Inc*., 187 F. Supp.2d 1128, 1134-35 (D. Minn. 2001)

[187] *Wiener v. Bloomfield*, 901 F. Supp. 771 (S.D.N.Y. 1995) (finding violation of § 1692e(9) for falsely representing a document to be authorized or approved by a court, where the collection documents were captioned "Summons" and "Summons & Complaint: Service Pursuant to CPLR 312-a" and which adhered to the customary form of such documents when filed in New York State Supreme Court); *Johnson v. Eaton*, 873 F. Supp. 1019 (M. D. La. 1995) (letter questionnaire and consent judgment mailed by debt collection to consumer, both of which contained legal caption, would have appeared to least sophisticated consumer to have been originated or authorized by court, and violated § 1692e(9))

involvement in the mailing of the letters, but instead he allowed the debt collector to use his name much like Kolkman did here.[188]

The general consensus in the case law regarding Section 1692e(9) is that violations arise in situations where a debt collector overtly impersonates a governmental agency, or where a debt collector attempts to hide its identity by using a false alias; both of which occurred here.[189] Faced with such letters, the average consumer would reasonably believe they were subject to imminent legal enforcement by a government officer. Indeed, that was the exact message these letters were intended to convey.[190] The LLC deliberately stated that it would seize and sell Plaintiff's property if she didn't make payment arrangements.[191] These deceptions were not incidental or trivial—they were central to the LLC's collection strategy. By invoking the authority of government power and styling its correspondence to resemble official legal documents, the LLC successfully created a climate of fear and urgency designed to pressure payment through intimidation rather than lawful means. Even Kolkman agrees the purpose of the letters was to create "fear, urgency, concern" to convince debtors the letters were true and that their property would be sold if they didn't pay.[192] That is precisely why such an abnormally high percentage of debtors (70% to 80%) respond to the letters and make payment arrangements—to avoid that imminent legal enforcement.[193]

These false representations are also prohibited by the FDCPA's more generally applicable prohibitions. That includes its prohibitions on the "use of any false representation or

---

[188] *Clomon v. Jackson*, 988 F.2d 1314, 1320-21 (2d Cir. 1993); *See Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257-58 (7th Cir. 1994)(finding a violation of § 1692e(1) where the debt collector's statements created the impression of a close connection between the debt collector and federal and state taxing units).
[189] *Buckalew v. Suttell & Hammer, P.S.*, No. CV-10-3002-LRS, 2010 U.S. Dist. LEXIS 107075 ¶ 6 (E.D. Wash. Oct. 7, 2010)
[190] Kolkman Second Dep. 80:16–81:21, 90:2-14, 93:1-8, 99:16-24, 100:18-21
[191] Kolkman Second Dep. 85:5-11, 86:1-7, 90:2-14
[192] Kolkman Second Dep. 99:16-24 and 100:13-21
[193] Kolkman Second Dep. 59:21-60:8 (confirming the Defendants collect payments from around 70% to 80% of the debtors who receive the Notice of Sale and never seize or sell any property.)

deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"[194] the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt,"[195] and the use of any "unfair or unconscionable means to collect or attempt to collect any debt."[196]

Under these statutory provisions and authorities, Constable Kolkman LLC's deliberate misrepresentation of its private status, adoption of law enforcement symbols, and use of judicial-style communications amount to a multi-pronged violation of the FDCPA's core prohibitions. These practices are not just misleading—they are patently unlawful. The Court should therefore enter a finding that Constable Kolkman LLC's letters violated 15 U.S.C. §§ 1692e, 1692e(1), 1692e(9), 1692e(10), 1692e(13), and 1692f.

## Constable Kolkman LLC violated 15 U.S.C. §§ 1692e(4) and (5) by making threats it never intended to carry out

The FDCPA strictly prohibits debt collectors from asserting any "threat to take any action that cannot legally be taken **or that is not intended to be taken**."[197] It more specifically also prohibits debt collectors from;

> "The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person **or the seizure, garnishment, attachment, or sale of any property or wages** of any person unless such action is lawful and the debt collector or creditor intends to take such action."[198]

Constable Kolkman LLC violated both prohibitions by threatening to seize and sell Plaintiff's personal property in three separate letters if she didn't pay.[199] Those threats are

---

[194] 15 U.S.C. § 1692e(10)
[195] 15 U.S.C. § 1692e
[196] 15 U.S.C. § 1692f
[197] 15 U.S.C. § 1692e(5)(*emphasis added*)
[198] 15 U.S.C. § 1692e(4)(*emphasis added*)
[199] Exhibit P-6 August 16, 2023 Letter; Exhibit P-7 August 21, 2023 Letter; Exhibit P-8 September 15, 2023 Notice of Sale

sufficient to ground liability.[200] Despite threatening to hold a sale, and representing a specific date, time, and place for the sale, Constable Kolkman LLC never intended to follow through. Instead, it used the threat to shock Plaintiff into making payments toward the debt.[201] That is why it never made any effort to post public notice, arrange for movers, rent a storage facility, or otherwise advertise a sale—the threat was a complete fiction from the beginning.[202]

There is no dispute on this issue; even Rob Kolkman admits the Notice of Sale is not intended to notify the debtors of any impending sale, but is instead mailed to trigger a phone call to solicit payments from the debtors.[203] The letters also make that call to action abundantly clear.

- "Please contact this office within 10 days of the date of this letter **to make payment arrangements**."[204]

- "Please call my office within ten days **to make payment arrangements** to pay the judgment **to avoid the sale** of your non-exempt personal property."[205]

- "PAYMENT MAY BE MADE BY CARD, CASH, OR CERTIFIED FUNDS."[206]

- "CONTACT THIS OFFICE IMMEDIATELY TO MAKE A PAYMENT OR ARRANGEMENTS TO CANCEL THE SALE."[207]

Any debtor, especially the least sophisticated debtor, would read those calls to action as demanding payments under the pressure of an impending sale. There is no other rational way to interpret these demands for payment. Even Kolkman acknowledged the intention behind the letters is to "trigger a phone call" even though no sale will ever actually occur.[208]

---

[200] 15 U.S.C. §§ 1692e(4) and (5)
[201] Kolkman Second Dep. 85:5-11, 85:22-86:7, 93:1-9, 97:13-98:22, 99:16-24, 100:13-21
[202] Exhibit P-10 Requests for Admis. Nos. 8-9; Exhibit P-11 Requests for Prod. Nos. 3-5, 8-9; *See also* Exhibit P-8 Notice of Sale Exemplars; Kolkman Second Dep. 85:22-86:7 and 93:9-16
[203] Kolkman Second Dep. 93:1-8
[204] Exhibit P-5 August 16, 2023 Letter (*emphasis added*); Exhibit P-10 Requests for Admis. No. 3
[205] Exhibit P-6 August 21, 2023 Letter (*emphasis added*); Exhibit P-10 Requests for Admis. No. 3
[206] Exhibit P-8 Notice of Sale (*emphasis in original*)
[207] *Id*.
[208] Kolkman Second Dep. 93:1-8

Q.      And so when you say that this office—that my client "Contact this office immediately to make a payment or arrangements to cancel the sale," that isn't true because its not necessary for her to make arrangements to cancel the sale, or contact you. The sale is not going to take place?

A.      Yeah.[209]

The record is also undisputed that despite asserting the same threat in thousands of prior cases, and thousands more subsequent cases, Constable Kolkman LLC never seized a single item of personal property or conducted a public sale—not once.

Q.      You've sent thousands of these letters in the last two years?

A.      Yeah.

Q.      And you've never actually seized or sold a property?

A.      Correct.[210]

That failure to follow through any of its threats, across a massive volume of enforcement actions, proves that making the threat but never carrying it out is not an isolated oversight—it is a consistent, deliberate pattern invoked in thousands of other cases. Constable Kolkman LLC's Notices of Sale were therefore deliberately false and issued solely to coerce payments through fear and coercion rather than lawful enforcement.[211] Constable Kolkman LLC conveyed the false message that it would seize and sell Plaintiff's property unless she called and made a payment.[212] When doing so it was fully aware the sale would be "devastating" to the debtor[213] and that its intention is not to notify the debtor of a sale but to trigger fear, urgency, and concern in response to those threats without any real intention to act.[214]

---

[209] Kolkman Second Dep. 86:1-7
[210] Kolkman Second Dep. 92:3-8; *See also* Kolkman Second Dep. 88:22-24 (Confirming that he has never carried out any property sales in the last two years.); Kolkman Second Dep. 86:1-7(Confirming the sale was not going to take place whether Plaintiff paid or not.)
[211] Kolkman Second Dep. 90:2-14, 93:1-8; 97:13-98:5, 98:10-24, 99:16-24
[212] Kolkman Second Dep. 90:2-14
[213] Kolkman Second Dep. 98:2-5
[214] Kolkman Second Dep. 99:16-24

Even if Kolkman had not conceded the sales it pretends to schedule never take place, Utah law verifies that, for multiple reasons, Constable Kolkman LLC could not have lawfully carried out the sale as threatened. First and foremost, under Utah law, the seizure and sale of personal property pursuant to a writ of execution cannot occur on the same day as the LLC asserted in its Notice of Sale letter.[215] Instead, the statute prohibits that result by requiring that any property seized must be held for a minimum of 14 days before it may be sold.[216] This statutory safeguard exists to provide debtors a fair opportunity to respond—an opportunity that Constable Kolkman LLC deliberately misrepresented.

Holding the sale at Plaintiff's home as noted in the Notice of Sale would have also been unlawful as Rule 69B(d) of the Utah Rules of Civil Procedure requires that a sale take place "at a place reasonably convenient to the public." A private residence is neither open to the public nor reasonably convenient for public access. As such, the location indicated by the LLC rendered the sale legally impossible from the outset.

The proposed sale was also unlawful because Constable Kolkman LLC failed to notify local law enforcement as required by law. And Utah law is not unclear on this point; "Constables serving process outside the county in which they are appointed shall contact the sheriff's office or police department of the jurisdiction **prior to serving executions or seizing any property**."[217] This requirement to contact local law enforcement prior to serving the writ is not optional. It exists to ensure oversight, prevent abuse, and protect property owners from unauthorized enforcement actions.

Here, it is undisputed that Constable Kolkman LLC made no contact with local law enforcement before serving the Writ of Execution and threatening to seize and sell Plaintiff's

---

[215] Exhibit P-8 Notice of Sale
[216] Utah R. Civ. P. 64(d)(3)(C)
[217] Utah Code Ann. § 17-25a-3(2)(a) (*Emphasis added*)

property.[218] Even merely serving the writ without prior coordination violated the statute.[219] This procedural failure renders the entire enforcement action unlawful. It also reinforces the broader pattern of misrepresentation and coercion at the heart of Plaintiff's claims. Even if it had authority to carry out a sale, such a comprehensive disregard for the legally required procedures is confirmation the LLC never intended to carry out its threats.[220]

In other words, even if Constable Kolkman LLC claims it "scheduled" a sale or that it intended to carry out a sale as it stated in its letters, doing so would have been illegal for each of the reasons discussed above. Its conduct therefore still violated the two FDCPA's prohibitions on taking action that cannot legally be taken.[221] Making the representation when it was not legal to carry out the sale as noted in the Notice of Sale also violated the FDCPA's prohibitions on using false, deceptive, or misleading means to collect[222] and on using any unfair or unconscionable means to collect or attempt to collect any debt.[223]

It also bears repeating that Constable Kolkman LLC lacked any legal authority to carry out any property seizures or sales because Utah law grants those powers exclusively to law enforcement officers—specifically, constables and sheriffs.[224] A private business entity like Constable Kolkman LLC has no such statutory authority.[225] Representing itself as having that authority was therefore a fundamental misrepresentation of its legal capacity in violation of multiple subsections of the FDCPA.[226] Eschewing all the legal requirements necessary to hold a sale while threatening to seize and sell Plaintiff's property was not merely unlawful—it was deliberately and deceptively calculated to intimidate Plaintiff by impersonating the coercive

---

[218] Kolkman Second Dep. 117:16-19, 118:15-17, 120:1, and 121:25-122:2
[219] 15 U.S.C. § 1692e(4)(and (5)
[220] Kolkman Second Dep. 118:2-17
[221] 15 U.S.C. §§ 1692e(4) and 1692e(5)
[222] 15 U.S.C. § 1692e
[223] 15 U.S.C. § 1692f
[224] Utah R. Civ. P. 64(a)(7); *See also* Utah R. Civ. P. 64(d), 69A, and 69B
[225] *Id*.
[226] 15 U.S.C. §§ 1692e, 1692e(1), 1692e(9), 1692e(10), 1692e(13), and 1692f

powers of the state to proclaim itself as having immediate and drastic enforcement powers it did not legally possess.[227]

These threats were also substantially rewarding to the LLC. By asserting threats of sale without ever carrying out the sales, they not only collected payments in an industry-shocking 70% to 80% of the cases where they sent a Notice of Sale,[228] they also avoided all the time, burden, and expense of carrying out the property sales, while collecting well-over $3,200,000.00 in payments from unsuspecting debtors.[229]

Despite the remarkable effectiveness of these collection methods, using the threat of sale to elicit phone calls and extract payments from unsuspecting debtors is strictly prohibited by the FDCPA.[230] "Misrepresentations are condemned if they possess a tendency to deceive."[231] That statutorily includes the "**threat to take any action** that cannot legally be taken or that is not intended to be taken."[232] It also includes threats or implications of legal action such as the threats of "seizure, garnishment, attachment, or sale of any property or wages" the debt collector does not intend to take.[233] Such threatening statements violate the FDCPA, especially when "calculated to intimidate plaintiffs and facilitate the collection of the underlying debt."[234]

The least sophisticated consumer standard is used to determine whether a communication violates the FDCPA.[235] "If the least sophisticated debtor would take a communication as threatening legal action, it violates the FDCPA."[236] When the "'least sophisticated consumer'

---

[227] Kolkman Second Dep. 89:9-13, 90:2-14, 93:1-8; 97:13-98:5, 98:10-24, 99:16-24
[228] Kolkman Second Dep. 59:21-60:8
[229] Exhibit P-20 Square Ledger
[230] 15 U.S.C. § 1692e(4) and (5)
[231] *Trans World Accounts, Inc.* v. F.T.C., 594 F.2d 212, 214 (9th Cir. 1979)
[232] 15 U.S.C. § 1692e(5)(*emphasis added*)
[233] 15 U.S.C. § 1692e(4)
[234] *Van Westrienen v. Americontinental Collection*, 94 F.Supp.2d 1087, 1104 (D. Or. 2000); *See* also *Irwin v. Mascott*, 96 F.Supp.2d 968, 971 (N.D.Cal.1999)
[235] *See, e.g., Baker v. G.C. Services Corp.*, 677 F. 2d 775, 778 (9th Cir. 1982); *United States v. National Fin. Servs.*, 98 F. 3d 131, 135-136 (4th Cir. 1996); *Smith v. Transworld Systems, Inc.*, 953 F. 2d 1025, 1028 (6th Cir. 1992)
[236] *Irwin v. Mascott*, 112 F.Supp.2d 937, 951 (N.D. Cal. 2000)

would interpret this language to mean that legal action was authorized, likely and imminent" the representation violates the FDCPA.[237] The case at hand squarely fits that framework.

> "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking."[238]

When the collector then increases the pressure by engaging threats of seizing and selling the debtor's property as occurred here, the price of poker, or the threat to the debtor, increases exponentially. These practices are patently unlawful and far more harmful to the debtor than other lessor threats the FDCPA also prohibits.

As for characterizing the Notice of Sale as a threat, there is no other rational way to read the LLCs' letters. Each one explicitly refers to a sale that is represented as authorized, likely, and imminent, and each letter demands payment to stop that sale.[239] One of the letters even purports to schedule a specific date, time, and location where that sale is supposed to occur.[240] The letters also emphasize the urgency of acting prior to the upcoming sale; "Please call my office within ten days to make payment arrangements to pay the judgment to avoid the sale of your non-exempt personal property."[241] In the next letter, the LLC emphasizes the weight of its threats by stating in all capital letters "CONTACT THIS OFFICE IMMEDIATELY TO MAKE A PAYMENT OR ARRANGEMENTS TO CANCEL THE SALE."[242]

It would be incorrect to pretend these statements and implications somehow don't constitute illegal threats as contemplated by the FDCPA. The purpose of these letters was to

---

[237] *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2nd Cir. 1993)
[238] *Avila v. Rubin*, 84 F.3d 222, 228 (7th Cir. 1996)
[239] Exhibit P-6 August 16, 2023 Letter; Exhibit P-7 August 21, 2023 Letter; Exhibit P-8 Notice of Sale
[240] Exhibit P-8 Notice of Sale
[241] Exhibit P-7 August 21, 2023 Letter
[242] Exhibit P-8 Notice of Sale (*emphasis in original*)

intimidate Plaintiff to trigger a phone call to arrange payments, not to notify the Plaintiff to prepare for a sale of her property.[243] That squarely fits Black's Law Dictionary's definition of the word "threat" as "a communicated intent to inflict harm or loss on another or another's property . . . [or] an indication of an approaching menace [such as] the threat of bankruptcy."[244] In a more specific context, "A 'threat' is easily found where a debt collector sends a communication to a debtor that explicitly states some future civil or criminal action will be taken against the debtor unless the debt is paid."[245]

These communications threatening the approaching menace of a property sale are especially characterized as unintended threats when applying the FDCPA liberally in favor of the consumer as required.[246] "[T]he Act is 'extraordinarily broad' and must be enforced as written, even when eminently sensible exceptions are proposed in the face of innocent and/or de minimis violations."[247] Such broad construction is necessary, "so as to effect its purpose."[248]

This Court should therefore enter judgment in Plaintiff's favor. As the Supreme Court has held in the general context of consumer protection–of which the Fair Debt Collection Practices Act is a part–"it does not seem 'unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'"[249] Here, Constable Kolkman LLC and Rob Kolkman quite brazenly crossed that line and crossed well

---

[243] Kolkman Second Dep. 93:1-8; Exhibit P-6 August 16, 2023 Letter; Exhibit P-7 August 21, 2023 Letter; Exhibit P-8 Notice of Sale

[244] Black's Law Dictionary 1489-90 (7th ed. 1999); *United States v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006) (where a term is not defined within statute analysis begins with term's plain and unambiguous meaning)

[245] *See, e.g., Gradisher v. Check Enforcement Unit, Inc.*, 210 F.Supp.2d 907, 915–17 (W.D.Mich.2002)

[246] *Johnson v. Riddle*, 305 F.3d 1007, 1117 (10th Cir. 2002)

[247] *Blevins v. Hudson & Keyse, Inc.*, 395 F.Supp.2d 655, 658 (S.D. Ohio 2004) (referring to *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir.1992))

[248] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)

[249] *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393, 85 S.Ct. 1035 1047, 13 L.Ed.2d 904 (1965) (*quoting Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340, 72 S.Ct. 329, 330-31, 96 L.Ed. 367 (1952))

into an area of proscribed conduct. "The unlawfulness of Defendant's…threat…, standing on its own, is dispositive of these FDCPA claims."[250]

### Constable Kolkman LLC violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f by falsely representing the character, amount, and legal status of the debt

The FDCPA strictly prohibits debt collectors from making any false representations about the character, amount, and legal status of a debt and more generally prohibits any false representations made in connection with collecting a debt.[251] In falsely threatening to seize and sell Plaintiff's property, Constable Kolkman LLC squarely violated each of these prohibitions. Representing that the additional sale fees were owed when they never actually incurred, authorized by the court, or earned also violates these prohibitions. Even just under the catch-all sections of the FDCPA, falsely representing the legal and financial consequences Plaintiff faced if she failed to pay violated the Act.[252] Merely asserting she owed the debt also violates these provisions as Plaintiff clearly did not owe it. It is inescapable that "the use of any false, deceptive, or misleading representation … violates § 1692e—regardless of whether the representation in question violates a particular subsection of that provision."[253]

Constable Kolkman LLC and Rob Kolkman represented that the amount Plaintiff owed included the sale fees discussed previously.[254] But she never did. Plaintiff never owed the debt at all.[255] Even if she had, the court never authorized those additional amounts[256] and the LLC never

---

[250] *Douyon v. NY Med. Health Care, P.C.*, No. CV 10-3983 (AKT), 2013 U.S. Dist. LEXIS 138053 ¶¶ 17-18 (E.D.N.Y. Sep. 25, 2013)(*citing* 15 U.S.C. §§ 1692e(4) and e(5))
[251] 15 U.S.C. §§ 1692e(2)(A) and 1692e(10)
[252] 15 U.S.C. §§ 1692e and 1692f
[253] *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2nd Cir. 1993)(*citing* 15 U.S.C. § 1692e (specifying certain prohibited acts '[w]ithout limiting the general application of the foregoing' language)
[254] Exhibit P-6 August 21, 2023 Letter; Exhibit P-10 Req. for Admis. No. 3; *See* Exhibit P-5 August 21, 2023 Letter
[255] Exhibit P-9 Order Quashing Writ of Execution; Exhibit P-10 Requests for Admis. No. 10
[256] Exhibit P-3 Application for Writ of Execution; Exhibit P-4 Writ of Execution

earned or incurred those additional amounts.[257] It is therefore a *per se* violation of the FDCPA to assert Plaintiff owed amounts Plaintiff never owed.[258]

The character and legal status of the debt were also not as Constable Kolkman LLC and Rob Kolkman stated. According to their letters, a property sale was imminent and could only be stopped by making a payment.[259] That was never the true character or legal status of the debt. There was never any risk whatsoever of the execution sale actually occurring as the LLC never had authority or legal ability to do so.[260] To state otherwise was patently false, deceptive, or misleading.[261] Plaintiff is therefore entitled to summary judgment on these claims.

**Constable Kolkman LLC violated the FDCPA's Mini Miranda requirements**

In its initial communication with a debtor, a debt collector is required by the FDCPA to notify the debtor "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose."[262] In each and every subsequent communication, the debt collector is also required to notify the debtor "the communication is from a debt collector."[263] These warnings are commonly referred to as the "Mini Miranda" warning, and, like its namesake, their function is not merely formalistic—it is essential to the operation and protections of the FDCPA's statutory scheme. These warnings are so important to protecting a debtor's rights, they are not just statutorily required, but must also be sufficiently clear that even the "least sophisticated consumer" can understand that a debt is being collected.[264] "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers,

---

[257] Exhibit P-10 Requests for Admis. Nos. 8-9; Exhibit P-11 Requests for Prod. Nos. 8-9
[258] 15 U.S.C. §§ 1692e(2)(a) and 1692e(10)
[259] Exhibit P-7 Notice of Sale; Exhibit P-6 August 21, 2023 Letter; Exhibit P-5 August 16, 2023 Letter
[260] Exhibit P-10 Requests for Admis. Nos. 8-9; Exhibit P-11 Requests for Prod. Nos. 8-9; Utah R. Civ. P. 64(d)(3)(C); Utah R. Civ. P. 64(a)(7)
[261] 15 U.S.C. § 1692e
[262] 15 U.S.C. § 1692e(11)
[263] *Id.*
[264] *See Greco v. Trauner Cohen, & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005)

the gullible as well as the shrewd."[265] This requirement is so critical that the Mini Miranda notice required under 1692e(11) must be stated in all communications made to collect a debt.[266]

Despite the authority requiring these Mini Miranda notices in every communication, none of the LLC's letters to the Plaintiff contained the required notices. Rather than notify Plaintiff that Constable Kolkman LLC and Rob Kolkman were debt collectors attempting to collect a debt as required, they instead misrepresented themselves as a government agency. Each letter therefore violated section 1692e(11).[267] Both Kolkman and the LLC agree they never provided these required notices; "Defendants admit that they did not 'notify' Plaintiff that they 'were attempting to collect a debt and that any information obtained will be used for that purpose.'"[268] Constable Kolkman LLC and Rob Kolkman therefore violated 15 U.S.C. §§ 1692e(11) on three separate and distinct occasions.

These admitted violations are far from mere technical oversights; they strike at the heart of the protections codified in the FDCPA. "By requiring disclosure in all communications, Congress has ensured that even if the first notice is not received by the consumer…subsequent notices will nonetheless provide the consumer with the requisite disclosures."[269] On the other hand, when a debt collector fails to provide the statutorily required disclosures of their identity and purpose of the communication, it leaves the recipient without a clear understanding of their legal rights or the nature of the obligation being asserted. This deprives the consumer of the ability to invoke other statutory safeguards such as disputing the debt, requesting a cessation of communications, or requesting validation.[270]

---

[265] *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. 1996)
[266] *Dutton v. Wolpoff and Abramson*, 5 F.3d 649, 653 (3d Cir. 1993)
[267] August 16, 2023 Collection Letter; August 21, 2023 Collection Letter; Notice of Sale
[268] Exhibit P-10 Request for Admis. No. 6
[269] *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989)
[270] 15 U.S.C. §§ 1692c(c) and 1692g

But here, the violation is particularly egregious. Rather than simply omitting notice that it is a debt collector attempting to collect a debt, Constable Kolkman LLC concealed its true status as a debt collector while affirmatively presenting itself as an entity cloaked with governmental authority to exploit the recipient's likely deference to official governmental actors and materially enhancing the perceived legitimacy of its demands for payment.[271] Such conduct not only violates the FDCPA's disclosure requirements but also constitutes a deceptive practice that heightens the potential for coercion and confusion.[272] The FDCPA mandates clear, early, and repeated disclosures by debt collectors precisely to avoid such scenarios.

Because the role of these notice provisions is critical, courts routinely enforce them on a strict liability basis as the Act requires. Because "the FDCPA is a strict liability statute…a consumer need not show intentional conduct by the debt collector to be entitled to damages."[273] Accordingly, the failure to provide the required Mini Miranda disclosures constitutes a material breach of the debt collector's obligations and is actionable regardless of the debt collector's intent or the consumer's damages.[274]

**Constable Kolkman LLC violated the FDCPA's validation notice requirements**

In addition to the Mini Miranda notices, debt collectors are also required to send written notice to the debtor that they have 30 days to dispute the debt.[275] These notices serve the crucial purpose of guaranteeing consumers "receive adequate notice of their rights under the law."[276]

To comply with the validation notice requirements of section 1692g, more is required than the mere inclusion of the notice in a debt collection letter—the required notice must also be

---

[271] Exhibit P-5 August 16, 2023 Letter; Exhibit P-6 August 21, 2023 Letter; Exhibit P-7 Notice of Sale
[272] 15 U.S.C. § 1692e(1), (9), and (13)
[273] *Gonzalez v. Cullimore*, 2018 UT 9, ¶ 28, 417 P.3d 129 (Sup.Ct.)(*internal citations omitted*); *see also Reid v. LVNV Funding, LLC*, at *4 (D. Utah Jan. 20, 2016)
[274] *See Dutton v. Wolpoff & Abramson*, 5 F.3d 649, 653-58 (3d Cir. 1993)
[275] 15 U.S.C. § 1692g(a)
[276] *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir.2000)(*citing* S. Rep. No. 382, 95th Cong., 1st Sess. 4, 8, reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1699, 1702))

conveyed effectively to the debtor.[277] Moreover, the validation notice required by the FDCPA "is to be interpreted from the perspective of the 'least sophisticated debtor.'"[278]

Even the LLC agrees it never provided this required validation notice. "Defendants admit that their communications did not contain information contained in 15 U.S.C. § 1692g."[279] Summary judgment in Plaintiff's favor is therefore appropriate on this claim.

**Rob Kolkman is personally liable under the FDCPA**

Courts have consistently held that individuals are personally liable under the FDCPA when they participate in or exercise control over unlawful debt collection practices—even if those actions are carried out through a business entity.[280] This is because even indirectly collecting or attempting to collect debt renders a person a debt collector under the Act.[281] "Indeed, most of the district courts that have ruled on this issue agree that 'officers and employees of the debt collection agency may be jointly and severally liable with the agency.'"[282] This is especially true here where Mr. Kolkman's own primary purpose is debt collection and because he regularly collects debts on behalf of others.[283]

In this case, Mr. Kolkman's participation in the illegal collection methods at issue is also undisputed. Mr. Kolkman is intimately involved in the collection practices at issue. He is the sole owner of the entity that sent the letters,[284] was personally involved in the LLC's daily operations,[285] managed the business operations,[286] participated in implementing the collection

---

[277] *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1224 (9th Cir. 1988)); *see also Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991)
[278] *Graziano*, 950 F.2d at 111 (*citing Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir. 1982))
[279] Exhibit P-10 Request for Admis. No. 7
[280] *See Brumbelow v. Law Offices of Bennett & Deloney, P.C.*, 372 F. Supp. 2d 615, 618 (D. Utah 2005)
[281] 15 U.S.C. § 1692a(6)
[282] *Brumbelow* at 618-19 (D. Utah 2005)
[283] Kolkman Dep. 19:4-6
[284] Kolkman Second Dep. 6:4-8 and 6:19-21
[285] Kolkman Dep. 11:9-11; Exhibit P-10 Admis. Nos. 1-3
[286] Kolkman Dep. 11:14:19

process,[287] ratified and directly participated in the strategies used to collect,[288] and reaped financial benefits from the collection activity to the tune of collecting more than $3,200,000.00 in a two-year period.[289] He approved of the form letters used, the false representations they contained, and the strategy employed to pressure payments through misleading notices of sale and failures to notify consumers with the disclosures required by the FDCPA.[290] That is more than sufficient to establish personal liability under the FDCPA. As the U.S. District Court for the Northern District of Illinois has stated, "it is highly unlikely that Congress wished to restrict liability to the often small corporate vehicles used for collection, and the statutory language clearly brings all those personally involved within the ambit of 'debt collector.'"[291]

Indeed, courts uniformly do not require proof that the individual defendant authored or reviewed every single communication to be held liable even though Rob Kolkman did both in this matter. On the contrary, the FDCPA's language plainly encompasses indirect collection efforts, and liability attaches where a person "permits collection activity to occur on their behalf" or "profits from unlawful collection conduct."[292] Mr. Kolkman's role as the operator, financial beneficiary, and public-facing identity of the LLC places him well within the scope of FDCPA liability.[293]

---

[287] Kolkman Dep. 19:13-20:4, 22:23-23:4, 24:5-16, 26:2-4; Kolkman Second Dep. 131:21-135:10; Exhibit P-10 Admis. Nos. 1-3
[288] Kolkman Dep. 11:20-25, 15:18-25; Kolkman Second Dep. 61:24-63:3, 79:1-12, 80:1-81:21, 85:5-11, 85:22-25, 88:22-89:13, 90:2-14, 92:3-8, 93:1-8, 97:13-98:22, 99:16-24, 100:13-21, 105:17-20, 108:21-109:2, 111:22-112:3, 114:17-24; Exhibit P-10 Admis. Nos. 1-3
[289] Kolkman Second Dep. 190:18-191:23; Exhibit P-18 Square Payments Register
[290] Kolkman Second Dep. 63:1-11, 64:2-14, 65:4-14; Exhibit P-10 Admis. Nos. 1-3
[291] *Pikes v. Riddle*, 38 F. Supp. 2d 639, 640 (N.D. Ill. 1998)
[292] *See Del Campo v. Kennedy*, 491 F. Supp. 2d 891, 903 (N.D. Cal. 2006)
[293] *Piper v. Portnoff Law Assocs.*, 274 F. Supp. 2d 681, 689 (E.D. Pa. 2003); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, fn. 29 (3d Cir. 2000)(finding that a general partner exercising control over the affairs of such a partnership may be held liable under the FDCPA for the acts of the partnership); *See Musso v. Seiders, 194 F.R.D. 43, 46-47* (D.Conn. 1999) ("A high ranking employee, executive or director of a collection agency may fit within the statutory definition of a debt collector."); *Ditty v. Checkrite, Ltd., 973 F. Supp. 1320, 1336-37* (D.Utah 1997) (finding that a collection firm's attorney was personally liable under the FDCPA after meeting the definition of a debt collector); *Teng v. Metropolitan Retail Recovery, Inc.*, 851 F. Supp. 61, 67 (E.D.N.Y.1994) (*same*); *West v. Costen*, 558 F. Supp. 564, 587 (W.D.Va.1983) (*same*)

Under these circumstances, it would be absurd to pretend Kolkman is not aware of and responsible for the illegal debt collection tactics at issue. It is undisputed that he not only participated in those violations but wholly controlled the entire operation. By any measure, he was both directly and indirectly involved.[294] As the sole manager of the LLC's daily operations, Mr. Kolkman exercised control over the LLC's collection efforts and therefore "should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."[295] For these reasons, Rob Kolkman is a "debt collector" under the FDCPA and personally liable for the acts committed through and by Constable Kolkman LLC. Summary judgment should therefore be entered against both.

**Plaintiff reserves the determination of damages and other claims for a trial by jury**

By this motion Plaintiff only seeks entry of partial summary judgment against the Defendants for the specific FDCPA violations discussed herein. The determination of other claims, issues, and appropriate damages are reserved for trial by jury.[296]

CONCLUSION

Some of Rob Kolkman's and Constable Kolkman LLC's violations of the FDCPA are presented here for summary judgment because the material facts pertaining to those violations are not in dispute. Rob Kolkman and his LLC collected a debt Plaintiff did not owe; his LLC held itself out as having governmental authority it never had; they threatened to take action they never intended to take and could not legally take; they misrepresented the character, amount, and legal status of the debt; and they failed to provide the Mini Miranda and debt validation notices required under the Act. Plaintiff is therefore entitled to summary judgment in her favor that

---

[294] 15 U.S.C. § 1692e(6)
[295] *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000)
[296] *Kobs v. Arrow Service Bureau, Inc.*, 134 F.3d 893, 895-896 (7th Cir. 1986); *Sibley v. Fulton DeKalb Collection Services*, 677 F.2d 830 (11th Cir. 1982)

Constable Kolkman LLC and Rob Kolkman violated multiple sections of the Fair Debt

Collection Practices Act as discussed herein.

DATED 5/23/2025        <u>Eric Stephenson</u>
                            *Attorney for the Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on 5/23/2025 I served the foregoing MOTION FOR PARTIAL

SUMMARY JUDGMENT to all counsel of record through this Court's electronic filing system.

/s/ Eric Stephenson
*Attorney for Plaintiff*