Mark A. Nickel (14082)
J. Tyler Martin (13551)
Ryan L. Anderson (18670)
**GORDON REES SCULLY MANSUKHANI, LLP**
15 W South Temple, Suite 1600
Salt Lake City, Utah 84101
Telephone: (801) 204-9990
mnickel@grsm.com
tmartin@grsm.com
rlanderson@grsm.com

*Attorneys for Defendants Rob Kolkman and Constable Kolkman LLC*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ELIZABETH HERNANDEZ,<br><br>      Plaintiff,<br><br>v.<br><br>ROB KOLKMAN; CONSTABLE KOLKMAN LLC; and JOHN DOES 1-5,<br><br>      Defendants. | **CONSTABLE DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:23-cv-00772<br><br>District Judge: Ann Marie McIff Allen<br><br>Magistrate Judge: Daphne A. Oberg |

Defendants Rob Kolkman and Constable Kolkman LLC ("Kolkman") (collectively, "Constable Defendants"), by and through counsel, respectfully submit this Opposition to Plaintiff's Motion for Partial Summary Judgment.

**INTRODUCTION**

Plaintiff's Motion fails to address the primary questions in this case: whether the Constable Defendants are subject to the Fair Debt Collection Practices Act (FDCPA), and whether the debt claimed is subject to protection under the FDCPA. Without first explaining *how* the FDCPA

applies to the Constable Defendants and establishing that the debt in question meets the criteria of an FDCPA debt, Plaintiff jumps into *why* she believes they have violated it. Constable Defendants have not because they are exempt as a matter of law. However, even if Constable Defendants were not exempt, Plaintiff's motion fails because she has failed to meet her required burden of establishing that the debt in question meets FDCPA requirements. Plaintiff's Motion therefore fails, and Constable Defendants respectfully request that the Court deny it in its entirety.

**RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

In responding to Plaintiff's Undisputed Material Facts, the same shall be referred to herein as, "PSOF:"

1.      Sometime prior to August 31, 2020, Mountain America Credit Union assigned a past due consumer debt to NAR Inc., to collect.

**Response**: Disputed. Plaintiff claims the debt is not hers, that it belongs to a different Elizabeth Hernandez with a different social security number at a different address and has no personal knowledge of the debt.[1]

2.      That past due debt was for a personal credit card issued to someone other than Plaintiff (unknown debtor) for personal, family, or household purposes.

**Response**: Disputed. Plaintiff claims no knowledge and has presented no evidence of the type of debt in question or the purpose for which it was obtained.[2]

3.      To collect the past due debt, NAR Inc., engaged Olson Shaner who subsequently obtained a default judgement against the unknown debtor in the amount of $5,969.78.

---

[1] Plaintiff's Motion for Partial Summary Judgement; Exhibit P-1 State Court Complaint; Exhibit C
[2] *Id.*

**Response**: Undisputed, and material as to Plaintiff's underlying assertion there was no consensual transaction between Plaintiff and Mountain America Credit Union creating any obligation to pay.[3]  Constable Defendants are without personal knowledge as to PSOF No. 3.

4.    After it obtained the judgment, Olson Shaner obtained a Writ of Execution which augmented the amount of the debt to $6,148.81.

**Response**: Undisputed, but immaterial.  Constable Defendants are without personal knowledge as to PSOF No. 4.

5.    Olson Shaner then provided the Writ of Execution and a Praecipe to Rob Kolkman and his company Constable Kolkman LLC to collect the judgement from the Plaintiff.

**Response**: Disputed, but immaterial.  Constable Defendants receive writs of execution which they *execute*, as per the order of the court, and do not "collect," to the extent that term is used to imply that they are debt collectors, which they are not.  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**.)  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

6.    Plaintiff was not named as a party in the original judgement, was not the account holder, and did not receive any underlying credit or services associated with the debt.

**Response**: Undisputed.  Plaintiffs has made repeated statements and representations that she had no knowledge of the debt in question.[4]

7.    Rob Kolkman is the sole owner of Constable Kolkman LLC and was personally

---

[3] *Id.*
[4] *Id.*

involved in the LLC's daily operations, managed the business operations, participating in implementing the collection process, ratified and directly participated in the strategies used to collect, and reaped financial benefits from the collection activity to the tune of collection more than $3,200,000.00 in a two-year period.

> **Response:** Disputed, but immaterial. Constable Defendants receive writs of execution which they *execute*, as per the order of the court, and do not "collect," to the extent that term is used to imply that they are debt collectors, which they are not. (*See* Declaration of Rob Kolkman, attached hereto as Exhibit A.) Constable Defendants do not execute writs "on behalf" of any purported "debt collection lawyers," but rather, serve exclusively as agents for "the court authorizing or directing" them. *See* 2024 Utah Laws Ch. 158 (H.B. 300) (Utah Code § 17-25-1 amendment). Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA. (*See* Argument Sections 3-4, below.)

8.    Constable Kolkman LLC's principal business purpose is focused mainly on using writs of execution to collect judgements from judgement debtors.

> **Response**: Disputed, but immaterial. The purported evidence cited by Plaintiff cherry picks just a couple words out of context from multiple pages to synthesize an incorrect statement or otherwise does not support this PSOF No. 8. Constable Defendants' principal business purpose is not to "collect judgements." (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**.) Furthermore, Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA, and therefore, the purported fact of whether or not the "principal purpose" is to "collect judgements" (it is

not), is immaterial.  (*See* Argument Sections 3-4, below.)

9.      Over the last few years, Constable Kolkman LLC and Rob Kolkman received thousands of writs of execution from various debt collection lawyers and debt collectors.

> **Response**: Disputed, but immaterial.  The purported evidence cited by Plaintiff does not support this PSOF No. 9.  The purported fact that Constable Defendants allegedly received thousands of writs of execution from various debt collection lawyers is irrelevant to this underlying matter and therefore immaterial.  *See Powell v. Computer Credit, Inc.*, 975 F. Supp. 1034, 1039 (S.D. Ohio 1997) ("[T]he Court should consider the debt collector's noncompliance *as to the individual plaintiff only, and not to others who may have been subject to the debt collector's noncompliance*) (emphasis added) (citations omitted).

10.     Beginning January 1, 2023, and continuing over a two-year period, Constable Kolkman LLC and Rob Kolkman received thousands of Writs of Execution from Olson Shaner, typically in weekly batches ranging from 20 to 50 writs.

> **Response:** Undisputed, but immaterial.  Writs of Execution or the fact that Constable Defendants received them *after* the initiation of this underlying matter is irrelevant and therefore immaterial. *See Powell v. Computer Credit, Inc.*, 975 F. Supp. 1034, 1039 (S.D. Ohio 1997) ("[T]he Court should consider the debt collector's noncompliance *as to the individual plaintiff only, and not to others who may have been subject to the debt collector's noncompliance*) (emphasis added) (citations omitted).

11.     Constable Kolkman LLC and Rob Kolkman received approximately 600 writs of execution from The Cherrington Firm in 2023 and 2024.

**Response:** Undisputed, but immaterial.  Writs of Execution or the fact that Constable Defendants received them *after* the initiation of this underlying matter is irrelevant and therefore immaterial. *See Powell v. Computer Credit, Inc.*, 975 F. Supp. 1034, 1039 (S.D. Ohio 1997) ("[T]he Court should consider the debt collector's noncompliance *as to the individual plaintiff only, and not to others who may have been subject to the debt collector's noncompliance*) (emphasis added) (citations omitted).

12.    Constable Kolkman LLC and Rob Kolkman received approximately 1300 writs of execution from Mountain Land Collections in 2023 and 2024.

**Response:** Disputed, but immaterial.  The purported fact that Constable Defendants executed writs of execution on individuals other than Plaintiff is irrelevant to this underlying matter and therefore immaterial.  *See Powel*, 975 F. Supp. at 1039, *supra.* Furthermore, Constable Defendants receive writs of execution which they *execute*, as per the order of the court, and do not "collect," to the extent that term is used to imply that they are debt collectors, which they are not.  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**. Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

13.    Instead of executing the writs of execution the law firms provided, Constable Kolkman LLC and Rob Kolkman mailed letters requesting payments, communicated with debtors by telephone, solicited payments, and discussed payment arrangements.

**Response:** Disputed, but immaterial.  The purported fact that Constable Defendants execute writs of execution received for any individual other than Plaintiff is irrelevant to this underlying matter and therefore immaterial.  *See Powel*, 975 F. Supp. at 1039, *supra.*

Furthermore, Constable Defendants receive writs of execution which they do *execute*, as per the order of the court.  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**.)  Constable Defendants do not utilize the mailing of letters to collect debts, or payments to the extent that those terms are used to imply that they are debt collectors, which they are not.  (*Id.*)  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)  Constable Defendants do not execute writs "on behalf" of anyone but "the court authorizing or directing" them, as its agents.  *See* 2024 Utah Laws Ch. 158 (H.B. 300) (Utah Code § 17-25-1 amendment).

14.    From January 3, 2023 to March 12, 2025, Constable Kolkman LLC and Rob Kolkman received more than 22,000 individual payments, totaling more than $3,382,000.00 collected in that same period.

**Response:** Disputed, but immaterial.  The purported fact that Constable Defendants executed writs of execution on individuals other than Plaintiff is irrelevant to this underlying matter and therefore immaterial.  *See Powel*, 975 F. Supp. at 1039, *supra*.  Furthermore, Constable Defendants receive writs of execution which they *execute*, as per the order of the court, and do not "collect," to the extent that term is used to imply that they are debt collectors, which they are not.  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A).**

15.    The LLC remitted money it collected to the law firms and reported its results to the law firms "once a week."

**Response:** Disputed, but immaterial.  The purported fact that Constable Defendants

executed writs of execution on individuals other than Plaintiff is irrelevant to this

underlying matter and therefore immaterial.  *See Powel*, 975 F. Supp. at 1039, *supra*.

Furthermore, Constable Defendants receive writs of execution which they *execute*, as per

the order of the court, and do not "collect," to the extent that term is used to imply that

they are debt collectors, which they are not.  (*See* Declaration of Rob Kolkman, attached

hereto as **Exhibit A**).

16.    On May 3, 2023, the LLC had more than 3200 cases in its work queue.

**Response**: Disputed, but immaterial.  The purported fact that Constable Defendants have

other cases than that of the Plaintiff is irrelevant to this underlying matter and therefore

immaterial.  (*Id.*)  Furthermore, Constable Defendants receive writs of execution which

they *execute*, as per the order of the court, and do not "collect," to the extent that term is

used to imply that they are debt collectors, which they are not.  (*See* Declaration of Rob

Kolkman, attached hereto as **Exhibit A**.

17.    Constable Kolkman LLC uses a software platform to track payments and debtor

interactions, a payment processing company to process debtor's payments, and employs between

five and seven employees to handle its collection processes.

**Response: Disputed**, but immaterial.  The purported fact that Constable Defendants use

software that allows the tracking of payments to the debtor's creditors so that

unnecessary sales involving personal property are not carried out by mistake is irrelevant

to this matter.  Furthermore, Constable Defendants receive writs of execution which they

*execute*, as per the order of the court, and do not "collect," to the extent that term is used

to imply that they are debt collectors, which they are not.  (*See* Declaration of Rob

Kolkman, attached hereto as **Exhibit A.**

18.    The letters the LLC and Rob Kolkman send, and have sent in thousands of other cases, are based on templates inherited from a prior constable.

> **Response:** Disputed, but immaterial.  Constable communications are required to have
>
> certain official markings and information, thus meaning that every letter likely started
>
> from a basic, official template.

19.    Rob Kolkman approved of the form letters his LLC used, the representations they contained, and the strategies implemented to obtain payments from debtors.

> **Response:** Disputed, but immaterial.  Rob Kolkman did approve the overall templates of
>
> form letters, but the Plaintiff makes inferences from the purported evidence that does not
>
> support this PSOF No. 19.  Furthermore, Constable Defendants are not "debt collectors"
>
> with the purpose of obtaining payments from debtors.

20.    On or about August 16, 2023, Constable Kolkman LLC mailed Plaintiff a letter signed by Rob Kolkman.

> **Response:** Undisputed, but immaterial.

21.    The August 16, 2023 letter was prepared by Constable Kolkman LLC using a template it uses in thousands of other cases.

> **Response:** Disputed, but immaterial.  The purported fact that a template that may have
>
> been used in thousands of other cases other than that of the Plaintiff is irrelevant to this
>
> underlying matter and therefore immaterial.  *See Powel*, 975 F. Supp. at 1039, *supra.*

22.    The August 16, 2023 letter contained Constable Kolkman LLC's business phone number of (801) 561-9391 and address of 750 East 9000 South, Suite B, Sandy, Utah 84070.

**Response:** Undisputed, but immaterial.

23.     An insignia of a sheriff-style law enforcement badge shaped like a star was printed at the top of the August 16, 2023 letter.

**Response:** Undisputed, but immaterial.

24.     The August 16, 2023 letter stated the balance due on the judgment was $6,148.81 and the costs of the Writ of Execution were $259.23 for a total balance due of $6,408.04.

**Response:** Disputed, but immaterial.  The purported evidence cited by Plaintiff does not support this PSOF No. 24.  Constable Defendants included fees as permitted under Utah law.  Utah Code § 17-22-2.5[5] permits fees including: (1) $50 "for … executing an … order for the delivery of personal property" (*Id.* at (2)(d)); (2) "$2.50 for each mile" up to "100 miles" for service (*Id.* at (5)(a)(i)); (3) $15 for "advertising property for sale on execution" as well as for "postponing" or "canceling a sale of property" (*Id.* at (2)(f) and (k)); and (4) 2% of the first $1,000 of the judgment amount and 1.5% for the remaining balance of the judgment amount (*Id.* at (2)(m)).  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**.)  Furthermore, no communication was a "collection letter," to the extent that term is used to imply that Constable Defendants are debt collectors, which they are not.  (*Id.*)  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

25.     The August 16, 2023 letter requested Plaintiff to "contact this office within 10 days of the date of this letter to make payment arrangements."

---

[5] Utah Code § 17-25-2 states that a constable "may for their own use collect as compensation in civil matters the same fees as those specified for sheriffs in Section 17-22-2.5."

**Response:** Disputed, but immaterial.  No communication was a demand for payment to the extent that term "payment arrangements" is used to imply that Constable Defendants are debt collectors, which they are not.  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**. Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

26.     The August 16, 2023 letter did not contain notice Constable Kolkman LLC was attempting to collect a debt and that any information obtained would be used for that purpose.

**Response:** Disputed, but immaterial.  The purported evidence cited by Plaintiff does not support this PSOF No. 26.  No communication was a "collection letter," to the extent that term is used to imply that Constable Defendants are debt collectors, which they are not.  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**.)  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

27.     The August 16, 2023 letter did not provide notice that Plaintiff had 30 days to dispute the alleged debt.

**Response:** Disputed, but immaterial.  The purported evidence cited by Plaintiff does not support this PSOF No. 27.  No communication was a "collection letter," to the extent that term is used to imply that Constable Defendants are debt collectors, which they are not.  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**.)  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

28.     The August 16, 2023 letter was the first communication Constable Kolkman LLC

and Rob Kolkman had with the Plaintiff.

      **Response:** Undisputed, but immaterial.

      29.     On August 21, 2023, Constable Kolkman LLC mailed Plaintiff a letter signed by Rob Kolkman.

      **Response:** Undisputed, but immaterial.

      30.     The August 21, 2023 letter was written by Constable Kolkman LLC using a template it also uses in other cases.

      **Response:** Disputed, but immaterial.  The purported fact that a template that may have been used in thousands of other cases other than that of the Plaintiff is irrelevant to this underlying matter and therefore immaterial.  *See Powel*, 975 F. Supp. at 1039, *supra.*

      31.     The August 21, 2023 letter contained Constable Kolkman LLC's business phone number of (801) 561-9391 and address of 750 East 9000 South, Suite B, Sandy, Utah 84070.

      **Response:** Undisputed, but immaterial.

      32.     An insignia of a sheriff-style law enforcement badge shaped like a star was printed at the top of the August 21, 2023 letter.

      **Response:** Undisputed, but immaterial.

      33.     The August 21, 2023 letter included a section styled as a court caption; listing NAR Inc., as the Plaintiff, Elizabeth Hernandez as the Defendant, displaying the case number, and featuring a horizontal dividing line similar to those used in court filings. The letter also listed Constable Kolkman LLC's address in the location typically reserved for an attorney's address.

      **Response:** Disputed, but immaterial.  Constable Defendants are unaware of any location that is typically reserved for an attorney's address,

34.     The August 21, 2023 letter stated that Plaintiff must call "my office [Constable Kolkman LLC] within ten days to make arrangements to pay the judgment and avoid the sale of your non-exempt personal property."

>   **Response:** Disputed, but immaterial.  No communication was a demand for payment to the extent that this is used to imply that Constable Defendants are debt collectors, which they are not.  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**.) Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

35.     The August 21, 2023 letter stated that the total amount due was $6,408.04.

**Response:** Disputed, but immaterial.  The purported evidence cited by Plaintiff does not support this PSOF No. 35.  Constable Defendants included fees as permitted under Utah law.  Utah Code § 17-22-2.5[6] permits fees including: (1) $50 "for … executing an … order for the delivery of personal property" (*Id.* at (2)(d)); (2) "$2.50 for each mile" up to "100 miles" for service (*Id.* at (5)(a)(i)); (3) $15 for "advertising property for sale on execution" as well as for "postponing" or "canceling a sale of property" (*Id.* at (2)(f) and (k)); and (4) 2% of the first $1,000 of the judgment amount and 1.5% for the remaining balance of the judgment amount (*Id.* at (2)(m)).  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**.)  Furthermore, the amount due is used to infer Constable Defendants are debt collectors, which they are not.  (*Id.*)  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections

---

[6] Utah Code § 17-25-2 states that a constable "may for their own use collect as compensation in civil matters the same fees as those specified for sheriffs in Section 17-22-2.5."

3-4, below.)

36.    The August 21, 2023 letter stated that Plaintiff owed a $50.00 service fee, $26.00 mileage fee, a commission of $97.23, a $60.00 notices fee, and an additional mileage to post fee of $26.00.

> **Response**: Disputed, but immaterial.  The purported evidence cited by Plaintiff does not support this PSOF No. 36.  Constable Defendants included fees as permitted under Utah law.  Utah Code § 17-22-2.5[7] permits fees including: (1) $50 "for … executing an … order for the delivery of personal property" (*Id.* at (2)(d)); (2) "$2.50 for each mile" up to "100 miles" for service (*Id.* at (5)(a)(i)); (3) $15 for "advertising property for sale on execution" as well as for "postponing" or "canceling a sale of property" (*Id.* at (2)(f) and (k)); and (4) 2% of the first $1,000 of the judgment amount and 1.5% for the remaining balance of the judgment amount (*Id.* at (2)(m)).  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**.)

37.    The August 21, 2023 letter did not state that neither Rob Kolkman nor Constable Kolkman LLC had actually incurred the costs itemized in the letter.

> **Response:** Disputed, but immaterial.  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

38.    Constable Kolkman LLC and Rob Kolkman mailed letters using the same template as the August 21, 2023 letter with similar costs listed to "thousands of other debtors."

> **Response:** Disputed, but immaterial.  The purported fact that a template that may have

---

[7] Utah Code § 17-25-2 states that a constable "may for their own use collect as compensation in civil matters the same fees as those specified for sheriffs in Section 17-22-2.5."

been used in thousands of other cases other than that of the Plaintiff is irrelevant to this underlying matter and therefore immaterial.  *See Powel*, 975 F. Supp. at 1039, *supra.*

39.    The August 21, 2023 letter included the Writ of Execution Olson Shaner obtained on behalf of NAR Inc., and a Praecipe directing a constable to "take into your custody whatever property the Defendant(s) may have in the State of Utah that is not exempt by law."

**Response:** Disputed, but immaterial. Constable Defendants receive writs of execution which they *execute*, as per the order of the court, and do not "collect," to the extent that term is used to imply that they are debt collectors, which they are not.  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**.)  Constable Defendants do not execute writs "on behalf" of any purported "debt collection lawyers," but rather, serve exclusively as agents for "the court authorizing or directing" them.  *See* 2024 Utah Laws Ch. 158 (H.B. 300) (Utah Code § 17-25-1 amendment).  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.

40.    The Praecipe included with the August 21, 2023 letter also directed a constable to "attach and execute" on all non-exempt personal property and to "take possession" of that property.

**Response:** Constable Defendants receive writs of execution which they *execute*, as per the order of the court, and do not "collect," to the extent that term is used to imply that they are debt collectors, which they are not.  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**.)  Constable Defendants do not execute writs "on behalf" of any purported "debt collection lawyers," but rather, serve exclusively as agents for "the court authorizing or directing" them.  *See* 2024 Utah Laws Ch. 158 (H.B. 300) (Utah Code §

17-25-1 amendment).  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.

41.     The August 21, 2023 letter did not contain notice that Constable Kolkman LLC and Rob Kolkman were attempting to collect a debt and that any information obtained would be used for that purpose.

**Response:** Disputed, but immaterial.  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

42.     The August 21, 2023 letter did not provide notice that Plaintiff had 30 days to dispute the alleged debt.

**Response:** Disputed, but immaterial.  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

43.     On September 15, 2023 Constable Kolkman LLC mailed Plaintiff a letter signed by Rob Kolkman that notified her to "PLEASE TAKE NOTICE OF THE ATTACHED SALE NOTICE."

**Response:** In context, this text was included among dozens of other important figures and information.

44.     The September 15, 2023 letter also notified Plaintiff that "[w]hen sending payment or calling in reference to this letter, please refer to DOCKET # 228303" and that "sale fees may have been added to the total judgment."

**Response:** In context, this text was included among dozens of other important figures and information.

45.     The September 15, 2023 letter was styled similar to a court caption as it contained

the case number, Plaintiff's information, Defendant's information in the same places as in a court filing, the constable's name and address in the same place as a lawyer's information would be in a court filing, and a separation line between the designation of the parties and the case number as would be found in a court filing.

> **Response:** Disputed. The purported evidence cited by Plaintiff does not support the inference of the Plaintiff that this letter was intended to deceive. Furthermore, Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.

46.    Included with the September 15, 2023 letter was a "Notice of Sale" that stated "NOTICE IS HEREBY GIVEN that all of the right, title and interest of the defendant in the property listed below may be sold at public auction to the highest bidder at the place and time listed."

> **Response:** In context, this text was included among dozens of other important figures and information.

47.    The place of the sale stated in the Notice of Sale was Plaintiff's home address of 5049 W. Corlyn Cir, Salt Lake City, Utah.

> **Response:** In context, this text was included among dozens of other important figures and information.

48.    The time of the sale stated in the Notice of Sale was October 6, 2023 at 15:50.

> **Response:** In context, this text was included among dozens of other important figures and information.

49.    The property to be sold was listed in the Notice of Sale as "Any and all non exempt personal property. Including, but not limited to non exempt TV's, stereos, electronic

equipment, DVD's and players, office equipment, cameras, art, collections, guns, camping

equipment, livestock, machinery, farm equipment, tools and any and all non exempt vehicles."

**Response:** In context, this text was included among dozens of other important figures

and information.

50.    The Notice of Sale indicated that Plaintiff must "CONTACT THIS OFFICE

IMMEDIATELY TO MAKE A PAYMENT OR ARRANGEMENTS TO CANCEL THE

SALE" and that "PAYMENT MAY BE MADE BY CARD, CASH OR CERTIFIED FUNDS."

**Response:** Disputed, but immaterial.  Constable Defendants *executed* the underlying Writ

of Execution, and followed the court instruction they did not "threaten" to do anything

outside of execution of the underlying Writ of Execution.  (*See* Declaration of Rob

Kolkman, attached hereto as **Exhibit A**.)  Furthermore, no communication was a demand

lettter to the extent that the Plaintiff implies that Constable Defendants are debt

collectors, which they are not.  (*Id.*)  Constable Defendants are not "debt collectors" and

are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

51.    The September 15, 2023 letter was written by Constable Kolkman LLC using a

template it also uses in thousands of other cases.

**Response:** Disputed, but immaterial.  The purported fact that a template that may have

been used in thousands of other cases other than that of the Plaintiff is irrelevant to this

underlying matter and therefore immaterial.  *See Powel*, 975 F. Supp. at 1039, *supra.*

52.    The September 15, 2023 letter contained Constable Kolkman LLC's business

phone number of (801) 561-9391 and address of 750 East 9000 South, Suite B, Sandy, Utah

84070.

**Response:** Undisputed, but immaterial.

53.     An insignia of a sheriff-style law enforcement badge shaped like a star was printed at the top of the September 15, 2023 letter and again at the top of the Notice of Sale attached thereto.

**Response:** Undisputed, but immaterial.

54.     The Notice of Sale did not notify the Plaintiff that Constable Kolkman LLC and Rob Kolkman were attempting to collect a debt and that any information obtained would be used for that purpose.

> **Response:** Disputed, but immaterial.  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

55.     None of Constable Kolkman LLC's letters to the Plaintiff contained notice that Constable Kolkman LLC and Rob Kolkman were attempting to collect a debt and that any information obtained would be used for that purpose.

> **Response:** Disputed, but immaterial.  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

56.     Constable Kolkman LLC and Rob Kolkman never notified Plaintiff that they were debt collectors and that any information it obtained would be used to collect the alleged debt.

> **Response:** Disputed, but immaterial.  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

57.     None of Rob Kolkman's or Constable Kolkman LLC's letters provided notice that Plaintiff had 30 days to dispute the alleged debt.

> **Response:** Disputed, but immaterial.  Constable Defendants are not "debt collectors" and

are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

58.     Constable Kolkman LLC and Rob Kolkman never notified Plaintiff that she had 30 days to dispute the alleged debt.

**Response:** Disputed, but immaterial.  Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

59.     Constable Kolkman LLC mailed a Notice of Sale letter signed by Rob Kolkman similar to the September 15, 2023 Notice of Sale to approximately 90% to 100% of the debtors to whom it served or mailed Writs of Execution.

**Response:** Disputed, but immaterial.  The purported fact that Constable Defendants may mail similar Notice of Sale letters to any other individual besides the Plaintiff is irrelevant to this underlying matter and therefore immaterial.  *See Powel*, 975 F. Supp. at 1039, *supra.*

60.     Constable Kolkman LLC and Rob Kolkman are aware that mailing debtors the Notice of Sale letter will cause the debtors "fear, urgency, concern."

**Response:** Disputed, but immaterial.  Constable Defendants are without personal knowledge as to how a third party may or may not react, other than the general knowledge that no one likes to be told they owe money.  PSOF No. 60 is not a fact but speculation. Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.  (*See* Argument Sections 3-4, below.)

61.     Constable Kolkman LLC and Rob Kolkman are aware that seizing and selling a debtor's property would be "devasting" to the debtor.

**Response:** Disputed, but immaterial.  Constable Defendants are without personal

knowledge as to how a third party may or may not react, other than the general

knowledge that no one likes to be told they owe money.  PSOF No. 61 is not a fact but

speculation. Constable Defendants are not "debt collectors" and are therefore exempted

from the FDCPA.  (*See* Argument Sections 3-4, below.)

62.    Approximately 80% of the debtors Constable Kolkman LLC mails the Notice of

Sale letter respond to that letter while 95% of those who respond make a payment.

63.    The reason 80% of debtors respond to the Notice of Sale and 95% of those who

respond pay, is "[b]ecause they want to keep their stuff."

**Response:** Disputed, but immaterial.  Constable Defendants are without personal

knowledge as to how a third party may or may not react.  PSOF No. 63 is not a fact but

speculation. Constable Defendants are not "debt collectors" and are therefore exempted

from the FDCPA.  (*See* Argument Sections 3-4, below.)

64.    Constable Kolkman LLC and Rob Kolkman have never seized or sold any

debtor's personal property after mailing the Notice of Sale.

**Response:** Disputed.  Rob Kolkman has sold a debtor's personal property after a Notice

of Sale has been issued.

65.    Constable Kolkman LLC's and Rob Kolkman's intention in mailing the Notice of

Sale Letters is to "get ahold of the people and have communication with them to find out what

their assets are and go from there."

**Response:** Disputed, but immaterial.  The purported evidence cited by Plaintiff is

inadmissible hearsay or otherwise does not support this PSOF No. 65. Furthermore,

Constable Defendants are not "debt collectors" and are therefore exempted from the

FDCPA.

66.     Constable Kolkman LLC's and Rob Kolkman's other intention in mailing the Notice of Sale Letter to the Plaintiff was "not to notify them [the debtors] that a sale will take place, it's to trigger a phone call from them so [they] can discuss their assets."

**Response:** Disputed, but immaterial. The purported evidence cited by Plaintiff is inadmissible hearsay or otherwise does not support this PSOF No. 66. Furthermore, Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.

67.     When Constable Kolkman LLC told the Plaintiff to "contact this office immediately to make a payment or arrangements to cancel the sale" it was not necessary for Plaintiff to make arrangements or contact the LLC because the sale was not going to take place.

**Response:** Disputed, but immaterial. The purported evidence cited by Plaintiff is inadmissible hearsay or otherwise does not support this PSOF No. 67. Furthermore, Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.

68.     Rob Kolkman and Constable Kolkman LLC never advertised any sale of the Plaintiff's property and never do despite being aware of that obligation since the 1980s.

**Response:** Disputed, but immaterial. The purported evidence cited by Plaintiff is inadmissible hearsay or otherwise does not support this PSOF No. 68. Furthermore, Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.

69.     Rob Kolkman and Constable Kolkman LLC did not arrange for any movers or

storage to accommodate a seizure and storage of Plaintiff's property.

**Response:** Disputed, but immaterial. The purported evidence cited by Plaintiff does not support this PSOF No. 69. Furthermore, Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.

70.     Rob Kolkman and Constable Kolkman LLC did not post public notice of a sale of Plaintiff's property.

71.     Rob Kolkman and Constable Kolkman LLC did not contact local law enforcement before notifying Plaintiff about the Writ of Execution or mailing the Notice of Sale.

**Response:** Disputed, but immaterial. The purported evidence cited by Plaintiff is inadmissible hearsay or otherwise does not support this PSOF No. 71. Furthermore, Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.

72.     Neither Defendant ever seized or sold Plaintiff's property.

**Response:** Undisputed.

73.     Plaintiff never owed the debt Defendants sought to collect.

**Response:** Disputed, but immaterial. Constable Defendants have no personal knowledge of the debt associated with the writ of execution, or its validity.

74.     Constable Kolkman LLC Rob Kolkman and have no procedures in place to avoid violating the FDCPA.

**Response:** Constable Defendants are not "debt collectors" and are therefore exempted from the FDCPA.

## STATEMENT OF ADDITIONAL MATERIAL FACTS (SOF)

1.      Constable Defendants are sworn constables in the State of Utah.  (*See* Constable Defendants' Oath of Office, attached hereto as **Exhibit B**.)

2.      As sworn constables of the State of Utah, Constable Defendants have relied on and operated under their interpretation of the law in Utah which provides that constables are not "debt collectors" under the FDCPA.  (*See* Declaration of Rob Kolkman, attached hereto as **Exhibit A**.)

3.      Constable Defendants, in executing the underlying Writ of Execution per the order of the Court, and to avoid the hardship that would come to Plaintiff through selling non-exempt personal property, canceled the sale of property to work with Plaintiff so that she could make payments toward the judgment.  (*Id.*)

4.      Unbeknownst to the Constable Defendants at the time of their communications with Plaintiff, Plaintiff was purportedly not the correct individual named on the underlying Writ of Execution, which was not Constable Defendants' error, but rather, the judgment creditor's.  (*Id.*)

5.      Upon discovery, Defendants *immediately* ceased execution efforts.  (*Id.*)

6.      At no time did anyone oppose Constable Defendants' conduct of seeking to work out a payment plan on the judgment amount.  (*Id.*)

7.      Constable Defendants employ procedures for avoiding violation of the law as constables, by (but not limited to) reviewing the writs of execution received, and reviewing Utah statutes and rules for execution of writs of execution, so as to ensure compliance to the best of their knowledge as constables of the State of Utah.  (*Id.*)

8.      Based on Constable Defendants' reliance on their interpretation of the law in Utah which provides that constables are not "debt collectors" under the FDCPA, Constable Defendants'

procedures were adapted to avoid violating law as constables, not "debt collectors."  (*Id.*)

9.    Constable Defendants did not intentionally violate any law, including the FDCPA. (*Id.*)

10.    The underlying Writ of Execution states:

TO THE CONSTABLE/SHERIFF IN THE STATE OF UTAH:

*    *    *

YOU ARE COMMENDED to collect the judgment, with costs, interest, and fees, and to sell enough of Defendant(s) non-exempt personal property including but not limited to: cash, TV's, stereos, electronic equipment, VCR's, office equipment, cameras, works of art, collections, guns, camping equipment, furniture, livestock, machinery, farm equipment, tools and any and all vehicles to satisfy the same.

This shall be your sufficient warrant for so doing.

(*See* Writ of Execution, attached to Motion as Plaintiff's Exhibit 5.)

## ARGUMENT

Plaintiff is not entitled to judgment as a matter of law in her favor.  Summary judgment is "drastic and should be applied with caution[.]" *Jones v. Nelson*, 4884 F.2d 1165, 1168 (10th Cir. 1973).  Plaintiff carries the initial burden of showing that "there is an absence of evidence to support the non-moving party's case." *Beletso v. Sherman*, No. 2:12–cv–419, 2014 WL 583345, at *1 (D. Utah Feb. 13, 2014) (unpublished) (citing *Cellotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  She has failed to do so, and in fact, has failed entirely to establish as a matter of law that 1) the debt is subject to FDCPA protection and 2) Constable Defendants are subject to the FDCPA.  The "ultimate burden of persuasion … always remains on the moving party." *Lambertsen v. Utah Dept. of Corrections*, 922 F. Supp. 533, 535 (D. Utah 1995) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727 (2d Ed.1983)).

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(d). "To state an FDCPA claim, Plaintiffs must first allege that they have been the object of collection activity arising from 'debt.'" *Hall v. Phenix Investigations, Inc.*, 642 F.App'x 402, 405 (5th Cir. 2016) (citing *Douglas v. Select Portfolio Servicing, Inc.*, No. 4:14-1329, 2015 WL 1064623, at *4 (S.D. Tex. Mar. 11, 2015) (setting forth the elements of a FDCPA claim)). The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgement." 15 U.S.C. § 1692a(5). "[I]n simpler terms, FDCPA debts are 'payment obligations of (1) a consumer arising out of (2) a transaction in which the money, property, insurance or services at issue are (3) primarily for personal, family or household purposes.'" *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 581 (5th Cir. 2020) (quoting *Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 950 (11th Cir. 2016)); *Snow v. Jesse L. Riddle, P.C.*, 143 F.3d 1350, 1353 (10th Cir. 1998) ("Under the 'plain meaning' test, it would seem to use that a 'debt' in created where one obtains goods and [incurs an obligation] in return therefor.").

To assist in making the debt determination, the Third Circuit has helpfully "distill[ed] a three-part test to evaluate whether an obligation constitutes 'debt' under the FDCPA." *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 360 (3d Cir. 2018). First, we determine if the "underlying obligation arises out of a transaction" meaning the "consensual exchange involve[es] an affirmative request and the rendition of a service or purchase of property or other item of value, such as a contract." *Id.* (internal citations and quotations omitted). Second, if we

affirmatively answer the first question, we "next identify what money, property, insurance, or services . . . are the the subject of the transaction, i.e., what it is that is being rendered in exchange for the monetary payment." *Id*. at 361. Third, "we consider the characteristics of that 'money, property, insurance, or services' to ascertain whether they are 'primarily for personal, family, or household purposes.'" *Id.*  Under the Third Circuit's test, a plaintiff must satisfy all three prongs of the *St. Pierre* test for the obligation of repayment to constitute an FDCPA debt.

### 1.  The underlying debt of this matter did not arise from a transaction.

Congress did not define the term transaction.  "[T]he consensus among circuit courts [is] that the term 'transactions' refers to business dealings best characterized as a 'consensual exchange involving an affirmative request' and 'the rendition of a service or purchase of property or other item of value.'" *St. Pierre*, 898 F.3d at 360; *see* also *Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004) (limiting FDCPA's reach "to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services"). "[T]he statute thus makes clear that the mere obligation to pay does not constitute a 'debt' under the FDCPA," *Oppenheim v. I.C. System, Inc.*, 627 F.3d 833, 837 (11th Cir. 2010); *see,* e.g., *Hawthorne v. Mac Adjustment Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) (holding that obligation to pay damages arising from tort was not a "transaction" under the FDCPA); *Begga v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998) (holding that personal property taxes were not "debt" because they did not arise from a transaction). "[A]t a minimum, a 'transaction' under the FDCPA must involve some kind of . . . consensual obligation." *Hawthorne* at 1371.  Finally, consider *Shorts v. Palmer*, 155 F.R.D. 172, 175-76 (S.D. Ohio 1994) in which an obligation to pay for the non-negotiated crime of shoplifted merchandise was not a debt under the FDCPA because the plaintiff never had a

contractual arrangement to incur the debt.

Here, using the plain language of the phrase 'consensual exchange', the Plaintiff by her own admission, never made an affirmative request for credit with Mountain America Credit Union[8]. Under the limited Tenth Circuit analysis of FDCPA debt in *Snow*, the underlying debt in the Plaintiff's complaint would not qualify because she never obtained goods of any kind.[9] This is reinforced by the Plaintiff being unaware of not only the characteristics of, but what money, property, insurance, or services were ascertained by the Mountain America Credit Union credit card.[10] Thus, the Plaintiff fails the first part of the *St. Pierre* test. The underlying debt does not constitute an FDCPA debt, and therefore Plaintiff has no resultant FDCPA claim against Constable Defendants.

   **2.  Even if the Court finds that the debt arose from a transaction, the Plaintiff has not established that her claim's underlying debt was primarily for personal, family or household purposes.**

The FDCPA's protections apply only to consumer debts, which the Act defines as any obligation to pay money "arising out of transaction" entered into "primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5). The FDCPA defines consumer debt, not a debt collector's disclaimer, statements made as part of debt collection efforts, court actions against an individual, or personal declarations. *Boosahda v. Providence Dane LLC*, 462 Fed.Appx. 331, 334 (4th Cir. 2012). To make out a cause of action under the FDCPA, then, a plaintiff must offer evidence permitting a jury to conclude that the debt at issue falls within the statutory definition. See *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579-80 (7th Cir. 2019) Even Plaintiff's claiming

---

[8] Exhibit C
[9] *Id.*
[10] *Id.*

that the underlying debt was not [hers] . . . must offer some corroborated evidence to establish that the debt was a consumer debt, as the FDCPA requires that the "debt" in question be entered "primarily for personal, family, or household purposes." *Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 684 (7th Cir. 2018); *Goodman v. Asset Acceptance LLC*, 428 F.Supp.3d 526, 530 (D. Colo. 2019). Determining whether a transaction is primarily for personal, family, or household purposes is a fact-specific analysis. *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068-69 (9th Cir. 1992); *see also Hepsen v. J.C. Christensen and Assocs., Inc.*, No. 8:07-cv-1935, 2009 WL 3064865, at *3 (M.D.Fla. Sept. 22, 2009); *Hansen v. Ticket Track, Inc.*, 280 F.Supp.2d 1196, 1204 (W.D.Wash. July 21, 2003) ("[T]he determination of whether a debt is incurred 'primarily for personal, family, or household purposes' is a fact driven one, and should be decided on a case-by-case . . . basis looking at all relevant factors.").

Here, like in *Burton*, the judgement against the Plaintiff was dismissed on the basis of her denial that she was the individual who had incurred the underlying debt. *Burton* strongly disavowed the debt, claiming that he had no idea what it was, and it was the wrong person and information. The Plaintiff in this case also strongly disputed the debt. She signed a holographic statement that the social security number, person who signed for the credit card, and the address it was sent to was not her.[11] The Seventh Circuit found that although there were debt collectors pursuing Burton personally and the credit card billing statements were sent to a residence, it was not enough to establish consumer debt. Burton, disavowed any knowledge of anything to do with the debt, and therefore his subsequent statements like any subsequent statements from the Plaintiff claiming the debt was consumer debt were disregarded. A very similar fact pattern was decided

---

[11] Exhibit C

in the same way by the Fourth Circuit Court of Appeals in *Boosahda*. The plaintiff in that case disclaimed all knowledge of the debt, until it became clear that his FDCPA case would fail. His subsequent revelatory and contradictory statements resulted in the Court finding that he failed to establish the essential consumer debt element of his FDCPA claims. Lastly, in *Martin v. Allied Interstate, LLC*, the District Court in Florida found that despite the fact that there may be information somewhere in the record, because the plaintiff did not present it or disclose it – "it is not the Court's responsibility to scour the record in order to find such information." If the Plaintiff in this matter attempts similar assertions in an attempt to create an issue of material fact, this Court should follow the examples of the District Court in Florida and disallow it for both failing to disclose it to opposing counsel as well as for being contradictory to the Plaintiff's holographic, signed statement. The Plaintiff has presented insufficient evidence to establish her required element of consumer debt for the FDCPA claim. The Court should strongly weigh the measured opinions and consistent rulings of the circuit courts and find that the Plaintiff has failed to establish that the debt in question in this matter is consumer debt as defined by the FDCPA. Therefore, the Plaintiff's motion fails for lack of a viable FDCPA claim with the related FDCPA claim dismissed as well.

### 3. The Constable Defendants are Officers Excluded from the Definition of "Debt Collector" Under the FDCPA.

The Constable Defendants are not subject to the FDCPA because they are excluded from the definition of "debt collector." The term "debt collector" excludes "any *officer* or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties[.]" 15 U.S.C § 1692a(6)(C) (emphasis added). More specifically, constables, as a matter of law in the State of Utah, are deemed "officers of the state,"

*i.e.*, endowed "with the authority to conduct official actions on behalf of a court that other private individuals cannot legally perform," and therefore, are "<u>excluded from the definition of 'debt collector' under the FDCPA</u>."  *Sexton v. Poulsen & Skousen P.C.*, 372 F. Supp. 3d 1307, 1316 (D. Utah 2019) (emphasis added).

The Constable Defendants are "officers" of the State of Utah for purposes of the FDCPA and cannot therefore be held liable for the purported violations claimed by Plaintiff in her Motion unless they were not in the performance of their duties.  They were, as explained below, and Plaintiff's Motion should be denied.

### 4.    The Constable Defendants Were in Performance of their Official Duties.

Since Constable Defendants are officers of the State of Utah, and therefore exempted from the FDCPA as a matter of law, the only way that Plaintiff may prevail in proving purported violations is by showing that Constable Defendants were not acting "in the performance of [their] official duties" in executing the subject Writ of Execution against Plaintiff.  *See* 15 U.S.C § 1692a(6)(C).  Plaintiff has failed to do so.  Constable Defendants were performing their official duties at all times.

"A constable's official duties are defined by the orders and writs issued by a court or a court clerk authorizing the constable's actions." *Sexton*, 372 F. Supp. 3d at 1316.  In Utah, "[a] writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment or order requiring the delivery of property or the payment of money."  Utah R. Civ. P. 64E(a).  The Writ of Execution in this case identified Constable Defendants' duties, which they performed.  Specifically, it stated that the Constable Defendants were "to collect the judgment, with costs, interest, and fees" to satisfy the judgment,

which included "cash." (*See* Constable Defendants' SOF 10.) This coincides with Rule 64E providing that a writ is available to "seize" property in the judgment debtor's possession or under their control, which necessarily includes cash. That is what Constable Defendants sought to do prior to being informed that Plaintiff was incorrectly identified on the underlying Writ of Execution—at which point Constable Defendants immediately ceased execution efforts. (*Id.* at 5.) In seeking to work out a payment plan, which involved communications with Plaintiff to maintain a civil and amicable relationship, Constable Defendants were not only abiding by the Writ of Execution which ordered them (broadly) to "collect the judgment," which included "cash," but they were doing so in such a way as to not burden Plaintiff more than she presumably already was given her status as a judgment debtor (again, at the time, Constable Defendants were unaware she was incorrectly identified as the judgment debtor).

Importantly, the terms "collect the judgment" and "seize" are undefined in the Writ of Execution, Rule 64E, and in the pertinent statutes and rules pertaining to constables in Utah. In construing undefined statutory language, the object is to effectuate the Congressional or legislative intent. *See State of Colo. v. Idarado Min. Co.*, 916 F.2d 1486, 1494 (10th Cir.1990); *see also Marc Development v. Federal Deposit Ins. Corp.*, 771 F. Supp. 1163, 1165 (D. Utah 1991) (vacated on other grounds). A court, however, is not bound by the plain meaning of the statute if such would thwart the obvious purpose of the statute. (*Id.*) A court must not only look to the language of the statute but the "design of the statute as a whole and its object and policy." *Crandon v. United States*, 494 U.S. 152, 110 S. Ct. 997, 108 L.Ed.2d 132 (1990).

The overall intent of Rule 64E is to obtain the judgment amount from the judgment debtor. *See generally* Utah R. Civ. P. 64E. Whether the property subject to the Writ of Execution, *i.e.*,

"cash," was obtained involuntarily through force or voluntarily by Plaintiff willingly making periodic payments, the undisputed fact is that had Plaintiff been the correctly identified judgment debtor, money would have been obtained for satisfaction of the judgment amount—again, Constable Defendants immediately ceased execution efforts upon discovery that Plaintiff was not the correct judgment debtor, which was the judgment creditor's mistake (Constable Defendants' SOF 4.)  *See*, *e.g.*, *Hill v. Whitlock Oil Services, Inc.*, 450 F.2d 170, 174 (10th Cir. 1971) (ruling that while neither "levy" nor "seize" were defined in the subject statute, the "fact that [judgment creditor] did not go on the land and take actual possession is not pertinent").  There is nothing in Utah law that expressly prohibits a constable from "seizing" personal property, *i.e.*, "cash," or "collecting a judgment," by using a reduced-conflict method of working out a payment plan—which makes sense because it is intended to benefit the judgment debtor and relieve further stress of having personal property sold.

In fact, while not expressly addressing a "payment plan," Rule 69A of the Utah Rules of Civil Procedure provides as the first-listed method of "seizure of property," the "Debtor's Preference."  *See* Utah R. Civ. P. 69A(a).  More specifically, "[w]hen there is more property than necessary to satisfy the amount due, the officer must seize such part of the property *as the defendant may indicate*." (*Id.*) (emphasis added).  A payment plan rather than having personal property sold is certainly the preferred outcome for a judgment debtor when subjected to a writ of execution.

Further, and even assuming, *arguendo*, the FDCPA applied to Constable Defendants, its underlying purpose is to thwart "abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).  Constable Defendants not only followed the Writ of Execution and Utah law, but they

did so in a civil manner that falls well short of anything close to "abusive"—trying to help another person when they are already down by working out a payment plan cannot be considered abusive. Even more, Constable Defendants were unaware of the fact that Plaintiff was incorrectly identified as the judgment debtor, which was the judgment creditor's mistake. (Constable Defendants' SOF 4.) Upon discovery, Constable Defendants *immediately* ceased collection efforts. (*Id.* at 5.) This is a far cry from any purported abusive behavior.

Accordingly, Constable Defendants were performing their official duties at all times, and judgment in Plaintiff's favor is improper as a matter of law.

### 5. The Bona Fide Error Defense Precludes Ruling for Plaintiff as a Matter of Law.

Notwithstanding that Constable Defendants are exempt under the FDCPA, as they are state officials performing their official duties, and in the unlikely event the Court is inclined to rule for Plaintiff to the contrary, Plaintiff's Motion still fails based on Constable Defendants' bona fide error defense. "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error" (*i.e.*, the bona fide error defense). 15 U.S.C. § 1692k(c). "[A]n FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite 'the maintenance of procedures reasonably adapted to avoid' the violation." *Johnson v. Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006). The first prong of the defense is a subjective test of the defendant's intent in violating the FDCPA—*i.e.*, the issue of intent becomes principally a credibility question as to the defendants' subjective intent to violate the FDCPA. *Id.* at 728. The

second and third prongs of the defense involve objective tests.  *Id.* at 729.

Importantly, nothing in 15 U.S.C. § 1692k(c) limits the reach of the bona fide error defense to clerical errors and other mistakes not involving the exercise of legal judgment.  In other words, the bona fide error defense applies to mistakes of law, which has been affirmed in the Utah District.  *See Johnson v. Riddle*, 305 F.3d 1107, 1124 (10th Cir. 2002) (noting that the bona fide error defense applies to mistakes of law, stating, "the plain language of the FDCPA suggests no intent to limit the bona fide error defense to clerical errors") (citing S. Rep. No. 95–382, at 5.)

For the first prong, Constable Defendants need only show that the purported FDCPA violation was unintentional, not that their actions were unintentional.  *See Johnson*, 443 F.3d at 728.  It is undisputable that the Constable Defendants did not intend to violate the FDCPA.  (*See* Constable Defendants' SOF 9.)

For the second and third prongs, where a case involves a mistake of law, "whether the debt collector's mistake was bona fide will often turn on the debt collector's due diligence practices.  As a result, the bona fide prong and the procedures prong will often merge[,]" and therefore, the analysis is "whether [the debt collector's] procedures were reasonable based on the facts of [the] case." *See Johnson*, 443 F.3d at 729.  This analysis involves a two-step inquiry: first, whether the debt collector "maintained"—*i.e.*, actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were "reasonably adapted" to avoid the specific error at issue.  (*Id.*) (citing 15 U.S.C. § 1692k(c)).  Whether the error was bona fide, the error must have been made in good faith; a genuine mistake, as opposed to a contrived mistake.  *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 538 (7th Cir. 2005) (citing Black's Law Dictionary 168 (7th ed. 1999)) (defining "bona fide" as "1. Made in good faith; without fraud" and "2. Sincere;

genuine").

Constable Defendants, in good faith, employed procedures for ensuring that they did not violate the law as constables. (*See* Constable Defendants' SOF 7.) These procedures included (but are not limited to) reviewing writs of execution received, and reviewing Utah statutes and rules for execution of writs of execution, so as to ensure compliance to the best of their knowledge as constables of the State of Utah. (*Id.*) Such procedures were based on the good faith belief and understanding that Constable Defendants are "officers" of the State of Utah for purposes of the definition of "debt collector" under the FDCPA,[12] and are therefore exempt from the requirements of the FDCPA. In other words, because Constable Defendants believed (and courts in the District of Utah confirmed)[13] they were not "debt collectors," the procedures they employed were to avoid violations of law as constables, *i.e.*, officers of the State of Utah. They were also based on the good faith interpretation of writs of execution received, as well as Utah law, which neither define "seize" nor "collect the judgment," nor do they expressly prohibit working out payment plans— such payment plans are unopposed by both judgment debtors and judgment creditors. In fact, based on Rule 69A, Constable Defendants are permitted to abide by "debtor preference" to an extent, and payment plans rather than selling personal property is certainly preferred.

Accordingly, while Constable Defendants are not "debt collectors" and were performing their "official duties" as officers for the State of Utah, they are nevertheless shielded in this case by the bona fide error defense which is reasonably based on their mistake of law.

---

[12] *See* Constable Defendants SOF 1, citing oaths of office as state officials.
[13] The *Sexton* case came out prior to Constable Defendants' interactions with Plaintiff in this case (2019), further supporting the understanding that they are not "debt collectors" under the FDCPA.

## CONCLUSION

Based on the foregoing, Constable Defendants respectfully request that the Court deny Plaintiff's Motion in its entirety.

DATED this 7th day of July, 2025.

**GORDON REES SCULLY MANSUKHANI**

*/s/ Ryan L. Anderson*
*Mark A. Nickel*
*J. Tyler Martin*
*Ryan L. Anderson*
*Attorneys for Defendants Rob Kolkman and*
*Constable Kolkman LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July 2025, a true and correct copy of the foregoing **CONSTABLE DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was filed with the Clerk of the Court using an approved electronic filing system, ECF, which will automatically send notification of such filing to all counsel who have entered an appearance in this action.

*/s/ Amber Liechty*