Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

---

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH CENTRAL DIVISION

---

| | |
|---|---|
| ELIZABETH HERNANDEZ,<br><br>    Plaintiff,<br><br>vs.<br><br>ROB KOLKMAN,<br>CONSTABLE KOLKMAN<br>LLC, and JOHN DOES 1-5,<br><br>    Defendants. | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*(Hearing Requested)*<br><br>Case Number: 2:23-cv-00772<br>Judge: Ann Marie McIff Allen<br>Magistrate Judge: Daphne A. Oberg |

Plaintiff respectfully submits this Reply Memorandum in support of her request for partial summary judgment. Plaintiff also requests a hearing on these matters.

## INTRODUCTION

Plaintiff established both Defendants acted in concert to commit multiple violations of the FDCPA. Rather than contest those violations, Defendants asserted arguments that are; (1) unsupported by the evidence, (2) contradicted by the record, and (3) immaterial under the governing legal standards. Rule 56 requires genuine disputes of material fact—not theoretical, fictitious, or semantic disagreements. It is therefore uncontested that Defendants violated the FDCPA and have no valid defenses.

## OBJECTION

Plaintiff objects to the Declaration of Constable Kolkman as a "sham affidavit" that contradicts the affiant's prior testimony and sets forth arguments instead of admissible facts.[1]

---

[1] *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)(collecting cases holding that "courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue."); Fed. R. Civ. P. 56(c)

RESPONSE TO DEFENDANTS STATEMENT OF ADDITIONAL MATERIAL FACTS

1.    Constable Defendants are sworn constables in the State of Utah.

**Response:** Disputed. Rob Kolkman is a sworn constable in Ogden City, Utah. He is not appointed by the State of Utah while Constable Kolkman LLC is a private company that is not, and cannot be, a constable.[2]

2.    As sworn constables of the State of Utah, Constable Defendants have relied on and operated under their interpretation of the law in Utah which provides that constables are not "debt collectors" under the FDCPA.

**Response:** Disputed and immaterial. Defendants' personal interpretation of law is irrelevant, incorrect, and improper. The FDCPA is a strict liability statute[3] and "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute."[4] The LLC is also not a constable. Plaintiff objects to this statement as it is argumentative rather than stating factual information.[5]

3.    Constable Defendants, in executing the underlying Writ of Execution per the order of the Court, and to avoid the hardship that would come to Plaintiff through selling non-exempt personal property, canceled the sale of property to work with Plaintiff so that she could make payments toward the judgment.

**Response:** Disputed and immaterial. Defendants did not "execute" the Writ of Execution as they never served the writ or took into their possession or control any property[6] as is required to properly execute a writ of execution.[7] Defendants

---

[2] Exhibit P-22 Certificate of Organization; Exhibit P-21 Annual Report
[3] *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010)(*citing* 15 U.S.C. § 1692k; *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010))
[4] *Jerman v. Carlisle et al.,* 130 S.Ct. 1605, 1611, 176 L. Ed. 2d 519 (2010)
[5] Fed. R. Civ. P. 56(c)
[6] Exhibit P-9 Order Quashing Writ of Execution; Exhibit P-10 Admis. Nos. 1-3, 8-10, 12-14; Exhibit P11 Req. for Prod. No. 3, 8-9, 13; Exhibit P-17 Kolkman Second Dep. 89:9-13; 90:2-14, 92:3-8, 93:2-8
[7] Utah R. Civ. P. 69A and 64(d)

also never "cancelled" any sale as stated since no sale was ever actually scheduled.[8] Defendants also did not act altruistically as alleged. Their motivation was not to help Plaintiff avoid any hardship but to profit from the Plaintiff's "fear, urgency, concern" their letters were intended to trigger.[9] Plaintiff also objects to this statement as it is argumentative rather than stating factual information.[10]

    4.    Unbeknownst to the Constable Defendants at the time of their communications with Plaintiff, Plaintiff was purportedly not the correct individual named on the underlying Writ of Execution, which was not Constable Defendants' error, but rather, the judgment creditor's.

    **Response:** Disputed and immaterial. What Defendants knew or did not know is immaterial because the FDCPA is a strict liability statute.[11] Plaintiff also objects to this statement as it is argumentative rather than stating factual information.[12]

    5.    Upon discovery, Defendants immediately ceased execution efforts.

    **Response:** Disputed and immaterial. Defendants never even attempted to execute the Writ of Execution.[13] They therefore could not have "ceased execution efforts" as claimed. This statement is also immaterial as the FDCPA does not allow a party to escape liability by ceasing illegal conduct.[14] Plaintiff objects to this statement as it is argumentative rather than stating factual information.[15] Plaintiff also objects as this statement is ambiguous, vague, and unintelligible.

---

[8] Exhibit P-17 Kolkman Second Dep. 85:22-86:7, 89:9-13, and 93:6-8; Exhibit P-10 Req. for Admis. Nos. 3, and 8-9; Exhibit P-11 Req. for Prod. Nos. 8-9; Kolkman Second Dep. 92:3-8
[9] Exhibit P-17 Kolkman Second Dep. 89:9-13; 93:6-8; 99:16-24; and 100:13-21
[10] Fed. R. Civ. P. 56(c)
[11] *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1190 (11th Cir. 2010)(*citing* 15 U.S.C. § 1692k; *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010))
[12] Fed. R. Civ. P. 56(c)
[13] Exhibit P-17 Kolkman Second Dep. 89:9-13; 90:2-14, 92:3-8, 93:2-8; 99:16-24; and 100:13-21; Mem. in Opp'n to Motion for Partial Summ. J. at 32 (ECF No. 80) (acknowledging Defendants attempted to "work out a payment plan" with Plaintiff rather than executing the Writ.)
[14] *See* 15 U.S.C. § 1692 *et seq.*
[15] Fed. R. Civ. P. 56(c)

6.    At no time did anyone oppose Constable Defendants' conduct of seeking to work out a payment plan on the judgment amount.

> **Response:** Disputed and immaterial. Plaintiff and her husband both opposed the Defendants' attempts to collect the alleged debt.[16] It is also immaterial as the Defendants' efforts were strictly prohibited by the FDCPA whether opposed or not.[17] Plaintiff objects to this self-serving and incorrect characterization of Defendants' conduct as it is argumentative rather than stating facts.[18]

7.    Constable Defendants employ procedures for avoiding violation of the law as constables, by (but not limited to) reviewing the writs of execution received, and reviewing Utah statutes and rules for execution of writs of execution, so as to ensure compliance to the best of their knowledge as constables of the State of Utah.

> **Response:** Disputed and immaterial. Rob Kolkman testified that the Defendants do not employ any procedures to avoid violating the FDCPA.[19] Defendants' personal knowledge and beliefs are also immaterial because the FDCPA is a strict liability statute[20] and "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute."[21]

8.    Based on Constable Defendants' reliance on their interpretation of the law in Utah which provides that constables are not "debt collectors" under the FDCPA, Constable Defendants' procedures were adapted to avoid violating law as constables, not "debt collectors."

---

[16] Exhibit P-17 Kolkman Second Dep. 157:17-22
[17] *See* 15 U.S.C. § 1692 *et seq*.
[18] Fed. R. Civ. P. 56(c)
[19] Exhibit P-17 Kolkman Second Dep. 34:21-36:9
[20] *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010)(*citing* 15 U.S.C. § 1692k; *Ellis v. Solomon & Solomon, P.C*., 591 F.3d 130, 135 (2d Cir. 2010))
[21] *Jerman v. Carlisle et al.,* 130 S.Ct. 1605, 1611, 176 L. Ed. 2d 519 (2010)

**Response:** Disputed and immaterial. Defendants are debt collectors under the FDCPA.[22] Their personal interpretation of the FDCPA is irrelevant and incorrect. Plaintiff also objects as this statement is argumentative instead of factual.

9.    Constable Defendants did not intentionally violate any law, including the FDCPA.

**Response:** Disputed and immaterial. The FDCPA is a strict liability statute that applies whether the violation was intentional or not.[23] The constable Defendants also intentionally engaged in conduct that violated the FDCPA.[24] Plaintiff objects to this statement as it is argumentative rather than stating factual information.[25]

ARGUMENT

**It is undisputed both Defendants violated multiple provisions of the FDCPA**

Plaintiff presented multiple violations of the FDCPA for which she is entitled to summary judgment.[26] Defendants did not contest any of those violations or produce any evidence to rebut those violations.[27] As a result, "there is no genuine dispute as to any material fact" and Plaintiff "is entitled to judgment as a matter of law."[28] Plaintiff is therefore entitled to summary judgment against Rob Kolkman and Constable Kolkman LLC jointly and severally. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29]

Both Defendants also conceded that Rob Kolkman is personally liable for the LLC's violations as he not only participated in but profited from exercising control over the unlawful

---

[22] *See infra* at 10; See Motion for Partial Summ. J.;  See also Mem. in Opp'n to Motion for Partial Summ. J. at 32 (ECF No. 80) (acknowledging Defendants attempted to "work out a payment plan" with Plaintiff.)
[23] *Young v. Erickson*, No. 2:23-cv-420-TS-CMR, 2025 U.S. Dist. LEXIS 57625 (D. Utah Mar. 25, 2025)(collecting cases finding the FDCPA to be a strict liability remedial statute)
[24] *See* Motion for Partial Summary Judgment (ECF No. 72)
[25] Fed. R. Civ. P. 56(c)
[26] *See* Motion for Partial Summary Judgment (ECF No. 72)
[27] *See* Memorandum in Opposition to Motion for Partial Summary Judgment (ECF No. 80)
[28] Fed. R. Civ. P. 56(a)
[29] *Id*.

debt collection practices of his company.[30] Under the FDCPA even indirectly collecting or attempting to collect debt renders a person a debt collector.[31] It is therefore undisputed that Mr. Kolkman's role as the operator, financial beneficiary, and public-facing identity of the LLC places him well within the scope of FDCPA liability.[32] As the sole manager of the LLC's daily operations, Mr. Kolkman exercised control over the LLC's collection efforts and therefore must "bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."[33]

**It is undisputed Defendants regularly engage in debt collection and that debt collection is their principal purpose**

Plaintiff presented substantial evidence proving both Defendants regularly collect debts owed to others and that their primary purpose is debt collection.[34] Neither Defendant contested that evidence.[35] That makes sense since debt collection is the only reason Rob Kolkman created the LLC.[36] Even so, because Plaintiff satisfied the *Goldstein* factors that courts use to evaluate the regularity of collection activity and proved that both Defendants' principal purpose is debt collection, it is appropriate for this Court to enter findings that these Defendants are debt collectors under the FDCPA.[37] "As long as a business's raison d'être is obtaining payment on the debts that it acquires, it is a debt collector."[38]

---

[30] *See Brumbelow v. Law Offices of Bennett & Deloney, P.C.*, 372 F. Supp. 2d 615, 618 (D. Utah 2005)
[31] 15 U.S.C. § 1692a(6)
[32] *Piper v. Portnoff Law Assocs.*, 274 F. Supp. 2d 681, 689 (E.D. Pa. 2003); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, fn. 29 (3d Cir. 2000)(finding that a general partner exercising control over the affairs of such a partnership may be held liable under the FDCPA for the acts of the partnership); *See Musso v. Seiders, 194 F.R.D. 43, 46-47* (D.Conn. 1999) ("A high ranking employee, executive or director of a collection agency may fit within the statutory definition of a debt collector."); *Ditty v. Checkrite, Ltd., 973 F. Supp. 1320, 1336-37* (D.Utah 1997) (finding that a collection firm's attorney was personally liable under the FDCPA after meeting the definition of a debt collector); *Teng v. Metropolitan Retail Recovery, Inc*., 851 F. Supp. 61, 67 (E.D.N.Y.1994) (*same*); *West v. Costen*, 558 F. Supp. 564, 587 (W.D.Va.1983) (*same*)
[33] *Pollice v. Nat'l Tax Funding, L.P*., 225 F.3d 379, 405 (3d Cir. 2000)
[34] Motion for Partial Summary Judgment at 14-17 and 38-40 (ECF No. 72)
[35] *See* Memorandum in Opposition to Motion for Partial Summary Judgment (ECF No. 80)
[36] Kolkman Second Dep. 23:21-24, 24:1-4, 24:9-20, 56:17-57:14, 59:21-60:8; Kolkman Dep. 10:4-9, 10:20-24, 19:4-6; Exhibit 10 Admis. No. 9
[37] Fed. R. Civ. P. 56(a)
[38] *Barbato v. Greystone All., LLC*, 916 F.3d 260, 267 (3d Cir. 2019)

**Defendants are not entitled to the bona fide error defense**

It is improper for Defendants to even raise the bona fide error defense because this Court already rejected the argument that their mistaken interpretation of the FDCPA immunizes their conduct.[39] This Court also rejected the same arguments in a related case.[40] These rejections occurred because, among other things, the case Defendants cited in support of their argument has been unequivocally overruled.

According to the long-standing Supreme Court authority this Court previously recognized multiple times in rejecting Defendants' argument, "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute."[41] "[A] misunderstanding about what the Act requires cannot render the violation 'not intentional,' given the general rule that mistake or ignorance of law is no defense."[42] In any event, because this Court previously rejected Defendants' assertion of the bona fide error defense and because mistaken interpretations of the FDCPA do not qualify for the defense, Defendants' attempt to re-argue this point fails as a matter of law, is barred by the law of the case doctrine, and legally unsound.[43]

Defendants' assertion of this defense also fails because they never identified any bona fide errors.[44] To survive a motion for summary judgment against them, Defendants were required to "establish a bona fide error for each and every alleged violation of the FDCPA."[45] As this Court previously noted, "[t]he bona-fide-error defense is afforded to those debt collectors who mistakenly violate operative provisions of the FDCPA, notwithstanding their adoption of

---

[39] *Hernandez v. Kolkman*, No. 2:23-cv-00772, 2025 U.S. Dist. LEXIS 55599, ¶¶ 10-12 (D. Utah Mar. 25, 2025)
[40] *Young v. Erickson*, No. 2:23-cv-420-TS-CMR, 2025 U.S. Dist. LEXIS 57625, ¶¶ 9-11 (D. Utah Mar. 25, 2025)
[41] *Jerman v. Carlisle et al.,* 130 S.Ct. 1605, 1611, 176 L. Ed. 2d 519 (2010)
[42] *Jerman* at 1611
[43] Fed. R. Civ. P. 11(b)(2)
[44] Exhibit P-17 Kolkman Second Dep. 35:1-3; *See* Memorandum in Opposition to Motion for Partial Summary Judgment (ECF No. 80); *See also Young v. Erickson*, No. 2:23-cv-420-TS-CMR, 2025 U.S. Dist. LEXIS 57625, ¶ 11 (D. Utah Mar. 25, 2025)(holding that "the bona fide error defense does not apply as a matter of law" under a nearly identical set of facts)
[45] *Caputo v. Professional Recovery Services, Inc*., 261 F. Supp. 2d 1249, 1259 (D. Kan. 2003)

procedures designed to avoid those violations."[46] And because the FDCPA is a strict liability statute, the defense only applies to "an error made in good faith; a genuine mistake, as opposed to a contrived mistake."[47] A party may therefore not knowingly violate the law and then retroactively assert that its actions should be excused as mistaken—especially when it continues to engage in the same violative conduct it claims was unintentional.[48]

Defendants' attempt to excuse their conduct under the bona fide error defense also fails because they do not have any specific procedures in place to prevent the violations at issue.[49] Indeed, when asked point-blank to identify what procedures they employ, Kolkman obfuscated and ultimately found it impossible to identify any.[50] Defendants similarly failed to produce or identify any specific procedures in written discovery.[51] Even now, when faced potential judgment on the issue, neither Defendant produced any evidence to establish it has any specific procedures in place that are reasonably adapted to avoid the specific violations at issue here.[52] These failures are fatal. The bona fide error defense only applies when the debt collector proves how its procedures are somehow "reasonably adapted" to avoid each specific violation at issue.[53]

Because this Court rejected Defendants' bona fide error defense, that issue also cannot be re-litigated again under the law of the case doctrine which precludes relitigating issues either expressly or implicitly resolved in prior proceedings in the same court.[54] Under this doctrine,

---

[46] *Hernandez v. Kolkman*, No. 2:23-cv-00772, 2025 U.S. Dist. LEXIS 55599, Fn. 27 (D. Utah Mar. 25, 2025)
[47] *See Kort v. Diversified Collection Servs., Inc.,* 394 F.3d 530, 538 (7th Cir. 2005)
[48] Kolkman Second Deposition 181:3-25(confirming that the Defendants continue to collect debts for Olson Shaner but still do not carry out any property seizures or sales.); *See* Exhibit P-18 Square Payments Register (showing payments collected from debtors up to the end date of the subpoena in March of 2025)
[49] *Caputo v. Professional Recovery Services, Inc*., 261 F. Supp. 2d 1249, 1259 (D. Kan. 2003)
[50] Exhibit P-17 Kolkman Second Dep.35:4-36:14
[51] Exhibit P-11 Response to Requests for Production Nos. 4, 5, 11, 12, 13
[52] *See* Memorandum in Opposition to Motion for Partial Summary Judgment (ECF No. 80)
[53] *Young v. Erickson*, No. 2:23-cv-420-TS-CMR, 2025 U.S. Dist. LEXIS 57625, ¶¶ 9-11 (D. Utah Mar. 25, 2025); *Caputo v. Professional Recovery Services, Inc*., 261 F. Supp. 2d 1249, 1259 (D. Kan. 2003)
[54] *See Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1280 (10th Cir. 2010) ("[T]he law of the case doctrine applies to issues previously decided, either explicitly or by necessary implication." (*internal quotation marks omitted*)); Charles Alan Wright *et al*., 18B Fed. Prac. & Proc. Civ. § 4478 (2d ed. 2002) ("The decision of an issue need not be express to establish the law of the case. Implicit decision suffices.")

"'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"[55] It is therefore improper and wasteful of judicial resources for Defendants to raise the issue again after this Court previously rejected it.[56]

Even if the issue could be relitigated, Defendants did not carry their burden to meet any, let alone all, of the requirements of the defense. Their conduct was intentional, they did not identify any errors, they did not explain why whatever errors they committed were somehow bona fide errors rather than being contrived after-the-fact to escape liability, and they have no procedures in place to prevent whatever errors they never identified.[57] Furthermore, mistakes in interpreting the requirements and prohibitions the FDCPA do not qualify for this defense. As this Court has stated, "[f]ailing to meet any one of the three prongs bars the defense."[58] Because there is no dispute of any material fact as to the inapplicability of this Defense, and this Court's prior rejection of the defense, summary judgment should be entered in Plaintiff's favor that the bona fide error defense does not immunize the Defendants' conduct.[59]

### The alleged debt arose from a financial transaction[60]

The undisputed evidence establishes that the alleged debt originated from a financial transaction between a consumer named Elizabeth Hernandez and Mountain America Credit Union.[61] Mountain America extended credit to a consumer, and when that debt was reduced to

---

[55] *Pepper v. United States*, 562 U.S. 476, 506, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011) (*quoting Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983))

[56] *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1240 (10th Cir. 2016) (*citing McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000); Wright *et al., supra*, § 4478 (the doctrine embodies "[t]he basically simple principle of disciplined self-consistency.")

[57] *See* Opp'n Mem.

[58] *Young v. Erickson*, No. 2:23-cv-420-TS-CMR, 2025 U.S. Dist. LEXIS 57625, ¶ 9 (D. Utah Mar. 25, 2025) (*internal citation omitted*)

[59] *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1195 (10th Cir. 2021); *Reid v. LVNV Funding, LLC*, No. 2:14CV471DAK, 2016 U.S. Dist. LEXIS 7233, ¶ 16 (D. Utah Jan. 20, 2016)

[60] Defendants frame their argument as a dispute over the term "transaction" but that argument is actually more appropriately deemed an argument whether Plaintiff is a "consumer" under the FDCPA. Either way, Defendants position is incorrect as a matter of law. Plaintiff is a consumer and the alleged debt arose from a transaction.

[61] Exhibit P-1 State Court Complaint, ¶ 4; Exhibit P-23 Cardholder Agreement

judgment, Rob Kolkman and Constable Kolkman LLC joined in concert to collect it.[62] Whether Plaintiff was the correct Elizabeth Hernandez or not makes no difference. The FDCPA protects all consumers—including those who do not owe the alleged debt—against abusive, deceptive, or unfair collection practices.[63] Courts have consistently recognized that even wholly innocent individuals mistakenly targeted by debt collectors are entitled to the Act's protections.[64] Under its plain language, a person "allegedly obligated to pay" must be covered, just as is a person who is "obligated" to pay, to avoid rendering the phrase "or allegedly obligated" superfluous.[65] This principal is grounded on the remedial purpose of the FDCPA and its requirement to construe it liberally favor of the consumer.[66]

    As such, courts routinely conclude that collecting from someone who did not owe the debt violates the FDCPA by, among other things, falsely representing the legal nature of the debt under Section 1692e(2)(A) of the FDCPA.[67] Other courts agree that collecting from a non-debtor "constitutes a 'false representation' as to the character or status of the debt in violation of 1692e."[68] Attempting to collect from someone who is not legally obligated to pay the debt violates the FDCPA "as a matter of law because it is, ipso facto, a false representation about the status or character of the debt."[69]

    It is also important to emphasize again that liability for falsely representing the character or legal status of a debt can be predicated upon conduct that was neither knowing nor

---

[62] Exhibit P-6 August 16, 2023 Letter; Exhibit P-7 August 21, 2023 Letter; Exhibit P-8 Notice of Sale; Exhibit P-10 Admis. Nos. 1-3; Exhibit P-23 Cardholder Agreement
[63] *See* 15 U.S.C. §§ 1692c, 1692d, 1692e, 1692f
[64] *See Reid v. LVNV Funding, LLC*, No. 2:14CV471DAK, 2016 U.S. Dist. LEXIS 7233 (D. Utah Jan. 20, 2016)
[65] *Loja v. Main St. Acquisition Corp.,* 906 F.3d 680, 683-84 (7th Cir. 2018)(*citing See, e.g., Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009) (describing the canon against superfluity as "one of the most basic interpretive canons"); *Rubin v. Islamic Rep. of Iran*, 830 F.3d 470, 484 (7th Cir. 2016) (*similar*)
[66] *Clark v. Capital Credit & Collection Servs., Inc*., 460 F.3d 1162 , 1171 (9th Cir. 2006); *See also Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993)
[67] *Johnson v. Bullhead Invs.*, LLC, 2010 U.S. Dist. LEXIS 2382, 2010 WL 118274 at *6 (M.D.N.C. Jan. 11. 2010)
[68] *Stuart v. AR Res., Inc*., 2011 U.S. Dist. LEXIS 27025, 2011 WL 904167 at *4 & n.2 (E.D. Pa. Mar. 16, 2011); *Velazquez v. NCO Fin. Sys., Inc*., 2011 U.S. Dist. LEXIS 57896, 2011 WL 2135633 at *5 (E.D. Pa. May 31, 2011)
[69] *Owens v. Howe*, 2004 U.S. Dist. LEXIS 22728, 2004 WL 6070565 at *11 (N.D. Ind. Nov. 8, 2004)

intentional.[70] This is because the FDCPA is a strict liability remedial statute.[71] Defendants' attempt to convert their violations into excusable conduct simply because the Plaintiff was an innocent party therefore fails as a matter of law. The statute's protections are not contingent on the debtor's identity but rather on the collector's conduct.[72] As such, Defendants' actions fall squarely within the type of misconduct the FDCPA was enacted to prohibit.

**The alleged debt was incurred primarily for personal, family, or household purposes**

The Fair Debt Collection Practices Act applies to obligations that arise from consumer transactions—i.e., those incurred primarily for personal, family, or household purposes.[73] Under its plain language it protects any natural person "allegedly obligated to pay any debt" whether they owe the debt or not.[74] The undisputed evidence in this case establishes that the underlying debt meets this standard regardless of whether the Plaintiff was the true debtor.

The debt originated from a credit card account issued to a consumer by Mountain America Credit Union.[75] That alone is sufficient to establish that the debt was incurred primarily for personal, family, or household purposes.[76] "What matters in the context of an FDCPA claim is the asserted basis for the obligation to pay."[77] Here, that asserted basis is a consumer credit card agreement issued to a consumer at her home address under her personal Social Security number—all earmarks of a personal debt as opposed to a business debt.[78] The Agreement also

---

[70] *Gearing v. Check Brokerage Corp*., 233 F.3d 469, 473 (7th Cir. 2000); *Clark v. Captial Credit & Collection Servs., Inc*., 460 F.3d 1162, 1174-75 (9th Cir. 2006); *See also Loja v. Main St. Acquisition Corp.,* 906 F.3d 680, 684 (7th Cir. 2018) (holding "that the definition of 'consumer' under the FDCPA includes consumers who have been alleged by debt collectors to owe debts that the consumers themselves contend they do not owe")
[71] *Clark v. Capital Credit & Collection Servs.,* 460 F.3d 1162, 1175-76 (9th Cir. 2006)
[72] *Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 684 (7th Cir. 2018)
[73] 15 U.S.C. § 1692a(5)
[74] 15 U.S.C. § 1692a(3)
[75] Exhibit P-23 Cardholder Agreement
[76] Utah Code Ann. § 70C-1-201; Utah Code Ann. § 70C-1-202(2)(a)
[77] *Beauvoir v. Israel*, 794 F.3d 244, 248 (2d Cir. 2015) (*quotation marks omitted*)
[78] *See Hepsen v. Resurgent Capital Servs., LP*, 383 F. App'x 877, 884 n.7 (11th Cir. 2010) (affirming district court's ruling that "debt was a 'consumer' debt because it was related to a . . . credit card in [the debtor's] name, connected to his home address, and not used for business")

expressly characterizes advances under the Agreement as "consumer advances"[79] and it similarly refers to the both the Federal Reserve Regulation Z and Utah Consumer Credit Code as governing.[80] It even devotes two pages to discussing a consumer's billing rights as protected by the Fair Credit Billing Act.[81] Since all of those statutes and regulations only apply to consumer transactions, and expressly exempt business transactions, the original purpose of the alleged debt could only be for personal, family, or household purposes.[82]

Documentation filed in the state case also reinforces the conclusion that the alleged debt was incurred for personal, family, or household purposes. Throughout the case, the defendant was named as Elizabeth Hernandez while no business or commercial entities were ever included.[83] The Complaint, Summons, Military Service Affidavit, Default Judgment, Application for Writ of Execution, the Writ of Execution, and the Praecipe filed in that case all identify the defendant as an individual consumer with a residential address.[84] The Default Judgment and Military Service Affidavit also both include the consumer's Social Security number and date of birth while making no mention whatsoever of any business information or commercial liability for the alleged debt.[85] Just the fact that Military Service Affidavit was filed confirms this was a consumer debt as such an Affidavit is only required when suing a natural person.[86]

The Defendants' subsequent collection efforts also confirm the obligation was a consumer debt. When the constables began collecting, they communicated with, and tried to

---

[79] Exhibit P-23 Cardholder Agreement ¶ 9
[80] *Id.* at ¶ 12 and pages 7-8
[81] *Id.* at ¶ 20 and pages 7-8
[82] 15 U.S. Code § 1603(1); 12 CFR § 1026.3; Utah Code Ann. § 70C-1-201; Utah Code Ann. § 70C-1-202(2)(a)
[83] Exhibit P-1 Complaint; Exhibit P-2 Default Judgment; Exhibit P-3 Application for Writ of Execution; Exhibit P-4 Writ of Execution; Exhibit P-5 Praecipe
[84] Exhibit P-1 Complaint; Exhibit P-2 Default Judgment; Exhibit P-3 Application for Writ of Execution; Exhibit P-4 Writ of Execution; Exhibit P-5 Praecipe; Exhibit P-24 Military Service Affidavit
[85] Exhibit P-2 Default Judgment; Exhibit P-24 Military Service Affidavit
[86] 50 U.S.C. § 3931(b); See 50 U.S.C. § 3911 (defining a servicemember as a "member of the uniformed services.")

collect from, a consumer at her home address.[87] None of their letters were ever addressed to a business or mailed to a business or commercial property.[88] The Writ of Execution, Praecipe, and the Defendants' letters also expressly identify personal property would be seized rather than identifying business assets or commercial property.[89] Defendants even provided Plaintiff with a list of exempt assets[90] which under Utah law, only applies to consumers.[91] Throughout that process Defendants never asserted any entitlement to collect business proceeds or assets.

From the inception of the alleged debt to termination of the lawsuit, the alleged debt was always characterized and treated as a consumer debt and there is zero evidence it could ever be considered anything other than a consumer debt. A consumer applied for the debt, the Agreement was for a consumer debt, the lawsuit was filed against a consumer, the judgment was entered against a consumer, and all collection efforts were focused on collecting personal property from a consumer. By any objective standard the alleged debt is a consumer debt.

Whether Plaintiff disputes owing a debt does not alter its character as a consumer obligation. The FDCPA focuses on the nature of the debt, not whether the party being targeted actually incurred it.[92] Courts have consistently held that even mistaken attempts to collect a consumer debt from the wrong person are actionable under the FDCPA.[93] If it were otherwise, victims of identity theft and mistaken identity would be left entirely defenseless to whatever abuses debt collectors devise—a result prohibited by the plain language of the statue which protects anyone who is "allegedly obligated to pay any debt."[94] To prevent that result, "the

---

[87] Exhibit P-6 August 16, 2023 Letter; Exhibit P-7 August 21, 2023 Letter; Exhibit P-7 September 15, 2023 Letter; Exhibit P-8 Notice of Sale Letter
[88] *Id*.
[89] Exhibit P-4 Writ of Exec.; Exhibit P-5 Praecipe; Exhibit P-7 August 21, 2023 Letter; Exhibit P-8 Notice of Sale
[90] Exhibit P-7 August 21, 2023 Letter
[91] Utah Code Ann. §§ 78B-5-505 and 78B-5-506
[92] *See, e.g., Slenk v. Transworld Sys., Inc*., 236 F.3d 1072, 1075–76 (9th Cir. 2001) (holding that the purpose of the debt—rather than the identity of the debtor—controls the analysis under the FDCPA)
[93] *Reid v. LVNV Funding, LLC*, No. 2:14CV471DAK, 2016 U.S. Dist. LEXIS 7233, at *10–12 (D. Utah Jan. 20, 2016); *Dutton v. Wolhar*, 809 F. Supp. 1130, 1134 (D. Del. 1992)
[94]  15 U.S.C. § 1692a(3)

FDCPA's protections apply to a non-debtor if she can show that the defendant alleged that she owed a debt, regardless of whether the debt was one incurred by the plaintiff herself."[95]

The result Defendants seek is also contrary to basic common sense. "Forcing a victim of identity theft or mistaken identity to prove the intent of an unknown individual would obviously create an insurmountable obstacle in many FDCPA cases."[96] "Creating such an obstacle for these plaintiffs, …would contravene both the plain meaning and purpose of the FDCPA."[97] "By its plain text, the FDCPA encompasses claims brought by individuals subjected to collection efforts for obligations they are falsely alleged to have owed."[98] Indeed, one of the reasons Congress created the FDCPA was to "'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'"[99] "To adopt the Defendants' argument would therefore ignore Congress's intent and essentially read-out the portion of the FDCPA which covers [innocent] individuals because, according to the Defendants, identity theft victims would rarely, if ever, be able to sustain a claim."[100] Accordingly, "where

---

[95] *Rosa v. Mandarich L. Grp., LLP*, No. 22-cv-4720 (LJL), 2024 U.S. Dist. LEXIS 35499, ¶ 13 (S.D.N.Y. Feb. 29, 2024); *See Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572 (7th Cir. 2019); *Loja v. Main Street Acquisition Corp.*, 906 F.3d 680, 683-84 (7th Cir. 2018); *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1002 (8th Cir. 2011) ("[W]e read § 1692a(3) to include individuals who are mistakenly dunned by debt collectors."); *Gendelberg v. Warfield*, 2021 U.S. Dist. LEXIS 63431, 2021 WL 1224831 at *5 (E.D.N.Y. Mar. 31, 2021); cf. *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 361 (6th Cir. 2012) (stating that the legislative history of the FDCPA demonstrates Congress intended to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid" (*quoting* S. Rep. No. 95-382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699))
[96] *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1305 (S.D. Fla. 2016)
[97] *Id.*
[98] *Davis v. Midland Funding, LLC*, 41 F. Supp. 3d 919, 924 (E.D. Ca. 2014) (discussing the definitions of "debt" and "consumer"); *see also Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1002 (8th Cir. 2011) (finding that the definition of consumer included "individuals who are mistakenly dunned by debt collectors")
[99] *Swanson v. S. Or. Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (*quoting* S. Rep. No. 382, 95th Cong. 2d Sess. at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699)
[100] *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1304 (S.D. Fla. 2016); *Collins v. Portfolio Recovery Assocs. LLC*, No. 2:12-cv-138, 2013 U.S. Dist. LEXIS 162624, 2013 WL 9805805, at*4-5 (E.D. Tenn. June 7, 2013) (denying a motion for summary judgment when an identity theft victim provided evidence that the credit card in question was a consumer card even though she lacked knowledge as to the nature or purpose of the charges on the account because "[t]o hold otherwise would defy common sense, as it would allow debt collectors to utilize unfair collection tactics against already vulnerable individuals")

the consumer lacks knowledge of the exact nature of the charges on an account due to alleged identity theft … the alleged obligation on a consumer account will nonetheless constitute a 'debt' for purposes of the FDCPA analysis."[101]

All relevant indicators—the origin of the debt with a consumer credit union, the consumer-focused requirements of the Agreement creating the alleged debt, the nature of the original judgment, the method of collection, and the Defendants' repeated allegations that the consumer Plaintiff owed the alleged debt—confirm that the obligation was a consumer debt within the meaning of the FDCPA.

**Private business entities are not "state officers" under the FDCPA**

The Fair Debt Collection Practices Act exempts from the definition of "debt collector" any officer of the United States or a State, "to the extent that collecting or attempting to collect any debt is in the performance of his official duties."[102] This exemption is narrow and only applies to government officers acting within the scope of their official duties.[103] Constable Kolkman LLC, is however, a private, for-profit company, not a government officer.[104] It is not, and can never be, appointed as a constable under state law.[105] It therefore does not have any "official duties" that could bring it within the scope of the statutory exemption. This Court has already repeatedly rejected the notion that Mr. Kolkman's status as a constable could somehow extend to the LLC for purposes of FDCPA immunity. "Defendants Utah Process, Inc., and Constable Kolkman LLC, as business entities, are not state officers."[106]

---

[101] *Collins v. Portfolio Recovery Assocs., LLC*, No. 2:12-cv-138, 2013 U.S. Dist. LEXIS 162624, ¶ 15, (E.D. Tenn. June 7, 2013)
[102] 15 U.S.C. § 1692a(6)(C)
[103] *Sexton v. Poulsen & Skousen P.C.*, 372 F. Supp. 3d 1307, 1316 (D. Utah 2019)
[104] Exhibit P-22 Certificate of Organization; Exhibit P-21 Annual Report
[105] Utah Code Ann. § 17-25a-2(1); Utah Code Ann. § 53-13-105(1)(a)
[106] *Young v. Erickson*, No. 2:23-cv-420-TS-CMR, 2025 U.S. Dist. LEXIS 57625, ¶ 6 (D. Utah Mar. 25, 2025); *See also Hernandez v. Kolkman*, No. 2:23-cv-00772, 2025 U.S. Dist. LEXIS 55599, ¶ 11 (D. Utah Mar. 25, 2025)(finding "There is no evidence in the record that provides a basis for Defendants' assertion that Mr. Kolkman's status as a constable can be extended to the LLC for purposes of the FDCPA exclusion the LLC invokes.")

It is therefore undisputed that the LLC is not a "state officer" and was not performing any official duties when it attempted to collect the alleged debt. On the contrary, it was engaged in ordinary private debt collection activity indistinguishable from any other third-party collection agency. Constable Kolkman LLC regularly collects debts for others, its principal business purpose is debt collection, and it engages in no other meaningful commercial activity.[107] Even Defendants acknowledge the LLC mailed demand letters "seeking to work out a payment plan" with the Plaintiff—core functions of a debt collector.[108] Accordingly, the LLC is not entitled to the "state officer" exemption and instead squarely qualifies as a "debt collector" subject to all the FDCPA's prohibitions and requirements.

**Rob Kolkman was not performing any "official duties" when collecting from the Plaintiff**

Unlike the LLC, Rob Kolkman is appointed as a constable. In collecting from the Plaintiff, however, he was not performing any "official duties."[109] Under Utah law, a constable's official duties center primarily on serving legal process.[110] Constables are also authorized to conduct administrative property sales to satisfy judgments.[111] But it is undisputed that Kolkman did none of those things. Instead, he engaged in quintessential debt collection activities such as mailing letters, requesting payment, asserting consequences for failing to pay, and in his own words, "seeking to work out a payment plan."[112]

Nothing in Utah law authorizes constables to engage in traditional debt collection activities or to use any "reduced-conflict method of working out a payment plan."[113] On the

---

[107] Kolkman Second Dep. 23:21-24:4, 50:8-13; Kolkman Dep. 10:4-9, 10:20-11:1, 34:2-8
[108] Memorandum in Opposition to Motion for Partial Summary Judgment at 32 (ECF No. 80); Exhibit P-6 August 16, 2023 Letter; Exhibit P-10 Requests for Admis. Nos. 1, 2, 12, 13 and 14; Kolkman Second Dep. 61:24-62:25 and 79:11-12 and 80:1-3; Exhibit P-7 August 21, 2023 Letter; Answer ¶ 40; Exhibit P-8 September 15 Notice of Sale Letter
[109] 15 U.S.C. § 1692(a)(6)(C)
[110] Utah Code Ann. § 17-25-1
[111] Utah Code Ann. §§ 17-25a-3(2), 78B-6-812(1), (3); Utah R. Civ. P. 64E(a)
[112] Memorandum in Opposition to Motion for Partial Summary Judgment at 32
[113] *Id*. at 33

contrary, the law explicitly outlines what constables can and cannot do—but unilaterally disregarding the law, the Writ of Execution, and the Praecipe to engage in so-called "reduced-conflict methods" such as negotiating payment arrangements, mailing collection letters, making collection calls, or collecting partial or periodic payments is not included. Under the plain language of the law, the Writ of Execution, and the Praecipe, Kolkman was only authorized to execute the Writ of Execution which requires serving the Writ of Execution and taking the property into his possession to sell at a public auction.[114] "In other words, the only authority conferred by the Writ was to seize and sell personal property."[115] Nonetheless, instead of executing the Writ, Kolkman mailed three letters[116] seeking to "work out a payment plan" with the Plaintiff in the same manner as any other run of the mill debt collector.[117] By doing so, Kolkman exceeded the scope of his authority which was limited by law to serving the Writ of Execution and seizing and selling the Plaintiff's property.[118]

> "Both the Utah Rules of Civil Procedure and the specific Writ at issue do specify how a constable is to collect a judgment: by seizing and selling personal property. And indeed, the duties given to constables under the Utah Code include only executing, serving, and returning legal process."[119]

Kolkman is therefore not entitled to the officer of the state exemption.[120]

Other courts also agree that the government officer exception under which Defendants seek to hide is strictly limited in scope and does not include private parties collecting privately

---

[114] Utah R. Civ. P. 64E(a)
[115] *Peretto v. Erickson*, No. 1:23-cv-00025-DBB-DBP, 2024 U.S. Dist. LEXIS 24611, ¶ 14 (D. Utah Feb. 12, 2024)
[116] Exhibit P-6 August 16, 2023 Letter, Exhibit P-7 August 21, 2023 Letter; Exhibit P-8 Notice of Sale
[117] Mem. in Opp'n to Motion for Partial Summ. J. at 32-33
[118] Utah R. Civ. P. 64E(a)
[119] *Peretto v. Erickson*, No. 1:23-cv-00025-DBB-DBP, 2024 U.S. Dist. LEXIS 24611, ¶ 15 (D. Utah Feb. 12, 2024)
[120] *Sexton v. Poulsen & Skousen P.C.,* 372 F. Supp. 3d 1307, 1318 (D. Utah 2019); *Young v. Erickson*, No. 2:23-cv-420-TS-CMR, 2025 U.S. Dist. LEXIS 57625, ¶ 8 (D. Utah Mar. 25, 2025)

owed debts on behalf of other private parties.[121] To hold otherwise would perpetuate the exact evils the FDCPA was enacted to prohibit.[122]

> "[W]here the language of the statute is clear, policy arguments have no place; if the legislature had intended to allow independent contractors, rather than just government agencies and employees, to escape liability under the FDCPA, it could have explicitly stated as much. Since it did not, however, this Court follows the express language of the statute and holds that **independent contractors are not exempt from the FDCPA pursuant to 15 U.S.C. § 1692a(6)(C)."**[123]

**Rob Kolkman's sham affidavit does not preclude summary judgment**

Rob Kolkman submitted a Declaration that contradicts his prior sworn testimony.[124] Plaintiff objects to that Declaration and submits that this Court should disregard it as a "sham affidavit."[125] Kolkman was cross-examined about the same issues in his depositions, he had access to the pertinent information at the time of that testimony, Kolkman's personal opinions and legal conclusions are not based on any newly discovered evidence, and Kolkman's Declaration does not attempt to explain any earlier confusion about his prior testimony.[126] On the contrary, his Declaration attempts to contradict or negate his prior testimony by replacing that testimony with self-serving personal opinions and incorrect legal conclusions. His Declaration therefore does not create any disputes of material fact but only raises a sham issue instead.[127]

---

[121] *Brannan v. United Student Aid Funds, Inc*., 94 F.3d 1260, 1263 (9th Cir. 1996); *Gradisher v. Check Enforcement Unit, Inc*., 133 F.Supp.2d 988, 992 (W.D. Mich. 2001); *Tito Pollice v. Nat'l Tax Funding*, 225 F.3d 379 (3rd Cir. 2000)
[122] 15 U.S.C. § 1692(a) and (e)
[123] *Gradisher v. Check Enf't Unit, Inc.,* at 992 (*citing Brannan,* 94 F.3d at 1263 (*emphasis added*))
[124] Declaration of Rob Kolkman (ECF No. 80-1)
[125] *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)(collecting cases holding that "courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue.")
[126] *Franks at* 1237 (10th Cir. 1986)(*citing Camfield Tires, Inc. v. Michelin Tire Corp*., 719 F.2d 1361, 1364-65 (8th Cir. 1983) and *Perma Research & Development Co. v. Singer Co*., 410 F.2d 572, 578 (2d Cir. 1969)
[127] *Franks v. Nimmo*, at 1237

Kolkman's personal opinions and incorrect conclusions on legal matters are not persuasive, binding, or legally sufficient to avoid summary judgment.[128] The very purpose of summary judgment under Rule 56 is to prevent "the assertion of unfounded claims or the interposition of specious denials or sham defenses...."[129] "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."[130]

This is especially so since those opinions and conclusions are demonstrably incorrect as discussed previously. Kolkman and his LLC regularly engage in debt collections on behalf of others and their principal purpose is collecting debt; they do not have any procedures in place to avoid violations of the FDCPA; and they unequivocally sent collection letters to the Plaintiff and thousands of other debtors in attempting to collect from those debtors.[131] Even they conceded they were collecting debt from the Plaintiff, or in their words, attempting to "work out a payment plan" when they mailed her three different letters soliciting contact and payments.[132]

CONCLUSION

Defendants conceded they violated multiple provisions of the FDCPA. Since one violation is sufficient to ground liability, summary judgment that both Rob Kolkman and Constable Kolkman LLC violated the FDCPA is appropriate.

Summary judgment that the bona fide error does not shield those violations is also appropriate since neither Defendant carried their burden of proof. They did not produce any evidence their violations were unintentional, that their violations were the result of any bona fide

---

[128] Fed. R. Civ. P. 56(c); *Franks v. Nimmo*, at 1237
[129] 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2712 (1983)
[130] *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969)
[131] *See* Motion for Partial Summary Judgment
[132] Opp'n to Motion for Summ. J. at 24, 32; *See also Id*. at 33 (discussing "using a reduced-conflict method of working out a payment plan" rather than executing the Writ of Execution)

error, or that they have any procedures in place to avoid the specific violations at issue. Moreover, this Court already rejected the Defendants' assertion of the bona fide error defense making that rejection the law of the case and wholly improper to reassert.

As for their remaining excuses, each one fails under even a small amount of scrutiny. For example, the alleged debt is a debt under the FDCPA. Whether Plaintiff engaged in any transaction is irrelevant. Under the plain language of the FDCPA she was "allegedly obligated to pay" the alleged debt. The debt was also inescapably incurred primarily for personal, family, or household purposes as demonstrated by the Cardholder Agreement establishing the alleged debt, the allegations that a consumer owed the alleged debt, the court filings that all identified a consumer as the debtor, and the collection efforts by the Defendants all being targeted at a consumer and her personal property rather than a business or any business property.

Finally, neither of the Defendants were acting in performance of their official duties. The LLC has no official duties while a constable's official duties are limited to serving legal process. Under the plain language of the law, that required Kolkman—and only Kolkman—to seize and sell Plaintiff's property as that was what the Writ of Execution and Praecipe commanded. Nothing in the statutes governing a constables' official duties allows constables to step outside the role of process server and into the role of a surrogate debt collector mailing collection letters, making collection calls, negotiating payment arrangements, collecting individual payments, or otherwise acting in the exact same manner as any other run-of-the-mill debt collector. That is especially true for the LLC who is not and can never be a constable. If the law did allow any such collection activity it would be preempted by the plain language of the FDCPA.

Because it is undisputed that both Defendants violated the FDCPA and are not entitled to the bona fide error defense, summary judgment in Plaintiff's favor is appropriate.

DATED 7/22/2025          Eric Stephenson
                        _____
                        *Attorney for the Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on 7/22/2025 I served the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT to all counsel of record through this Court's electronic filing system.

/s/ Eric Stephenson
*Attorney for Plaintiff*