Exhibit P-1

Page 1

1              UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF UTAH CENTRAL DIVISION

3

4    * * * * * * * * * * * * * * * * *          **CERTIFIED COPY**
                                      *
5    ELIZABETH HERNANDEZ,            *
                                      *
6              Plaintiff,            *    Case Number: 2:23-cv-00772
                                      *    Judge: Jill N. Parrish
7    v.                              *
                                      *    Magistrate Judge:
8    ROB KOLKMAN, CONSTABLE KOLKMAN  *    Daphne A. Oberg
     LLC, and JOHN DOES 1-5,         *
9                                     *
               Defendants.           *
10   * * * * * * * * * * * * * * * * *

11

12

13              DEPOSITION OF

14              Rob Kolkman

15              April 22, 2024

16

17

18        CONTAINS CONFIDENTIAL TESTIMONY

19

20

21

22

23

24
          Reported by:    Spencer Von Jarrett, RPR No. 993793
25

ELIZABETH HERNANDEZ vs ROB KOLKMAN
ROB KOLKMAN - 04/22/2024

**Page 2**

```
1   Deposition of Rob Kolkman, taken on April 22, 2024 at 10:00 a.m.
2   at the offices of JD Legal Support, 2901 W. Bluegrass Blvd,
3   Suite 200, Lehi, UT 84043, before Spencer Von Jarrett, Certified
4   Court Reporter, in and for the State of Utah.
5
                    A P P E A R A N C E S
6
    Eric Stephenson (9779)
7   STEPHENSON LAW FIRM
    250 North Redcliffs Drive, 4B #254
8   Saint George, Utah 84790
    ericstephenson@utahjustice.com
9   Attorney for Plaintiff
    Christopher Hill
10  KIRTON McCONKIE
11  36 S. State St., Ste. 1900
    Salt Lake City, UT 84111
12  CHill@kmclaw.com
    Attorney for the Defendants
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
1                   I N D E X
    WITNESS: Rob Kolkman
2
    EXAMINATION                              PAGE
3
      By: Mr. Stephenson                     4
4
5
6
              E X H I B I T S
7
8   NUMBER          DESCRIPTION              PAGE
9
10
            C O N F I D E N T I A L
11
12     PAGE  LINE
       18  - 25
13     21  - 10
       22  - 1
14     23  - 25
       24  - 22
15     25  - 19
       26  - 9
16     29  - 8
17
18
19
20
21
22
23
24
25
```

**Page 4**

```
1                   P R O C E E D I N G S
2   [On the record at 10:01 a.m.]
3   [Appearances noted.]
4                   ROB KOLKMAN,
5   a witness herin, having been administered an oath,
6   was examined and testified as follows.
7                   EXAMINATION
8   BY MR. STEPHENSON:
9      Q.   State your name, please.
10     A.   You need to speak up.  I'm a little hard of hearing and
11  there is an echo.
12     Q.   The echo is driving me crazy already.
13     A.   Okay.
14     Q.   Can you tell us your name.
15     A.   Rob Kolkman.
16     Q.   Is that your full true name?
17     A.   Yes.
18     Q.   Do you have any aliases you go by?
19     A.   No.
20     Q.   And what company do you work for?
21     A.   Constable Kolkman.
22     Q.   Is that the full title of the company?
23     A.   Constable Kolkman LLC.
24     Q.   Okay.  Do you own any other companies?
25     A.   Yes.
```

**Page 5**

```
1      Q.   What are the names of those companies?
2      A.   Let's see -- Kolkman Constable Services.
3      Q.   Is that all?
4      A.   Yeah.
5      Q.   Okay.  And what is your title at Kolkman -- Constable
6   Kolkman LLC, is it?
7      A.   Yeah.
8      Q.   What's your title there?
9      A.   Owner.
10     Q.   And who else owns that with you?
11     A.   No one.
12     Q.   So let me talk about depositions and how to do this.
13          Have you been deposed before?
14     A.   No.
15     Q.   What did you do to prepare for today's deposition?
16     A.   Looked at some notes.
17     Q.   What notes did you look at?
18     A.   The ones that were in my computer.
19     Q.   What were they specifically?
20          MR. HILL:  Objection.  Vague.
21          You can answer to the best of your ability.
22     Q.   Your answer didn't tell me what the notes were.
23          Were they notes taken by you or by somebody else?
24     A.   They were notes taken by someone else.
25     Q.   Who took those notes?
```

Page 6

1    MR. HILL:  Objection, foundation.
2    You can answer.
3    A.  I believe it was either -- it could have been Andrea and
4    Cory.
5    Q.  Okay.  And who is Andrea?
6    A.  She is an employee.
7    Q.  What's her last name?
8    A.  Dobson [phonetic].
9    Q.  And Cory is Cory Revel [phonetic]?
10   A.  Correct.
11   Q.  Okay.  And what do those notes tell you?
12   A.  A rough outline.
13   MR. HILL:  Objection, vague.
14   You can answer.
15   A.  Just a rough outline of what occurred in any
16   conversations.
17   Q.  And have those notes been produced in discovery?
18   A.  I don't know.
19   Q.  Are they handwritten or typed?
20   A.  Typed.
21   Q.  Do they have a date of their creation on them?
22   A.  I believe so.
23   Q.  Do you know what the date is, what the date is on those?
24   A.  Right off the top of my head, no.
25   Q.  How would I identify those notes when I ask for them in

Page 7

1    later discovery requests; what would I call those notes?
2    What do you call those notes?
3    A.  They're just a timeline of kind of what occurred when we
4    had communications.
5    Q.  Okay.  So I'm going to call them the timeline and
6    communications notes in case we need to speak about them later.
7    Is that fair?
8    A.  Sure.
9    Q.  Okay.  And then when I request them in discovery, you'll
10   know what I'm asking for -- your counsel will.
11   Okay.  Did you bring a copy of those notes with you
12   today?
13   A.  I did not.
14   Q.  Now who did you talk to prepare for this case -- this
15   deposition, specifically?
16   A.  My attorney.
17   Q.  Which attorney?
18   A.  Chris Hill.
19   Q.  Did you speak to anyone else?
20   A.  No.
21   Q.  Did you talk to Cory or Andrea?
22   A.  Correction: I did tell them I was being deposed on the
23   Hernandez case.
24   Q.  Did they help you prepare for this deposition by talking
25   to you and telling you anything?

Page 8

1    A.  No, not really.
2    Q.  When you say not really, is that an absolute no, or is
3    that, "They said something but it's not important."?
4    A.  We'd already had communications back and forth.
5    Q.  Okay.  And those communications were -- what were those
6    specific communications: what did they say to you?
7    A.  What occurred.
8    Q.  Okay.  Basically what was already in the notes?
9    A.  Yes.
10   Q.  Did they give you any information that was not in the
11   notes?
12   A.  No.
13   Q.  Okay.  So now, in a deposition you understand that you
14   just took an oath to tell the truth and you're under penalty of
15   perjury; correct?
16   A.  Yes.
17   Q.  And do you understand that includes answering the
18   question I asked, not changing the question by answering a
19   different question?
20   A.  Okay.
21   Q.  And you know that that you can't -- when your oath is to
22   tell the truth the whole truth and nothing but the truth, it means
23   you don't leave out important details; correct?
24   A.  Okay.
25   Q.  And you agree that that your role here is not to argue

Page 9

1    with me about a question or an answer, it's just to answer the
2    questions?
3    A.  Yes.
4    Q.  Is there anything right now that you would say is
5    hindering your ability to answer questions truthfully honestly and
6    fully today?
7    A.  No.
8    Q.  Okay.  So tell me the name of your company again: it was
9    Kolkman LLC; Rob Kolkman LLC?
10   A.  Constable Kolkman --
11   MR. HILL:  Objection, asked and answered and misstates
12   prior testimony.
13   You can answer.
14   MR. STEPHENSON:  What was I misstating about?  He told
15   me the name of his company; what was I misstating?
16   I want to be sure I get it right.
17   MR. HILL:  Well, not to get into argument in the course
18   of a deposition, but he testified there were two companies and you
19   asked the question is if there was a single company.  That could
20   be misleading.
21   MR. STEPHENSON:  Okay.  That's --
22   BY MR. STEPHENSON:
23   Q.  We're talking about one company here at this point:
24   we're talking about Constable Kolkman LLC.
25   That's the main company, correct?

Case 2:23-cv-00772-AMA-DAO    Document 87-1    Filed 08/19/25    PageID.2625    Page
5 of 22

ELIZABETH HERNANDEZ vs ROB KOLKMAN
ROB KOLKMAN - 04/22/2024

Confidential
Pages 10..13

**Page 10**

1   A.   Correct.

2   Q.   Okay.  And how long have you owned that company?

3   A.   About a year.

4   Q.   And what does Constable Kolkman LLC do that's different

5   from your other company?

6        MR. HILL:  I'm going to object on the grounds that it's

7   beyond the scope of discovery or relevance in this action.

8   You can answer.

9   A.   We mainly focus on writs of execution.

10  Q.   And the other company focuses on what?

11       MR. HILL:  Same objection: beyond the scope of

12  discovery.

13       You can answer.

14  A.   Can you -- I didn't hear.

15  Q.   Yeah.  And your other company, what does it do?

16       MR. HILL:  Same objection.

17       Go ahead.

18  A.   It serves all kinds of legal process including writs of

19  execution.

20  Q.   Okay.  And so Constable Kolkman LLC is specifically

21  targeted, though, at writs of execution only?

22  A.   Constable Kolkman.

23  Q.   Constable Kolkman LLC?

24  A.   Yeah.

25  Q.   That's just writs of execution?

**Page 11**

1   A.   Pretty much.

2   Q.   Okay.  And when you say one year, are you approximating

3   that?  Or how close to a year are we; is it one year exactly or

4   one year three months?

5   A.   I think it was January of '23.

6   Q.   And what is your position at that company; just owner,

7   or do you have another title?

8   A.   Owner.

9   Q.   What are your duties and responsibilities for Constable

10  Kolkman LLC?

11  A.   To keep an eye on the daily activity.

12  Q.   Is keep an eye on -- can I call that management?

13  A.   Yes.

14  Q.   And what else do you do for Constable Kolkman LLC?

15  A.   I take care of the books.

16  Q.   Okay.  So you manage.

17  A.   Payroll.

18  Q.   Oh sorry, go ahead.

19  A.   Take care of the books, the payroll.

20  Q.   Okay.  And other than the books and the payroll and

21  managing the daily operations, what else do you do for Constable

22  Kolkman LLC?

23  A.   I research some of the executions.  I go out and observe

24  any property that we may be looking at and have conversations with

25  the employees on where we're going on different writs.

**Page 12**

1   Q.   Okay.  Other than talking to the employees, observing

2   property, handling the books and payroll, managing daily activity,

3   what else do you do for Constable Kolkman LLC?

4   A.   That's about it.

5   Q.   And the other company -- I forgot the name, so would you

6   tell me that again?

7   A.   Kolkman Constable Services.

8   Q.   And Kolkman Constable Services: what do you do for that

9   company?

10       MR. HILL:  Objection.  Irrelevant, outside the scope of

11  discovery.

12       You can answer.

13       MR. STEPHENSON:  I'm going to stop you real quick,

14  because that's the third time you've objected for relevancy and

15  it's not a proper objection for a deposition.  It's one of those

16  depositions that's reserved, so.

17       MR. HILL:  I'm going to amend my objection: because it

18  is outside the scope of discovery, it is intended to annoy,

19  harass -- or only intended to annoy/harass the witness which is a

20  proper objection.

21       And you can answer the question.

22       THE WITNESS:  Could you ask the question again?

23  BY MR. STEPHENSON:

24  Q.   Kolkman Constable Services: what do you do for that

25  company?

**Page 13**

1   A.   I service.  It's a one-man operation, I do it all.

2   Q.   Can you give me an example of what you do?

3   A.   I serve the papers, I bill the papers, I pay the bills.

4   Q.   And what kind of papers do you serve for that company,

5   for Kolkman Constable Services?

6   A.   Legal process.

7   Q.   Okay.  And other than serving legal process, handling

8   the bills and that sort of thing, what do you do for Kolkman

9   Constable Services?

10  A.   That's it.

11  Q.   Briefly, let's touch on Wasatch Constables.

12       You used to work for Wasatch Constables?

13  A.   Yes.

14  Q.   Did you own part of Wasatch Constables?

15  A.   Yes.

16  Q.   And how much of it did you own?

17  A.   At one point, 50 percent.

18  Q.   Okay.  50 percent or 0.5 -- 50 percent, right?

19  A.   Correct.

20  Q.   Okay.  And who did you own Wasatch Constables with?

21  A.   Steve Maese.

22  Q.   Will you spell Maese for the court reporter?

23  A.   M-A-E-S-E.

24  Q.   Is he a constable?

25  A.   No.

ELIZABETH HERNANDEZ vs ROB KOLKMAN
ROB KOLKMAN - 04/22/2024

Confidential
Pages 14..17

---

Page 14

1   Q.  Does he still own the company?
2   A.  As far as I know.
3   Q.  Do you still own the company?
4   A.  No.
5   Q.  When did you sell your share of Wasatch Constables?
6   A.  I did not sell it.
7   Q.  How did you lose 50 percent of the company?
8   A.  I walked away.
9   Q.  Why did you walk away from Wasatch Constables?
10      MR. HILL:  Objection.  Beyond the scope; therefore, the
11  question is designed to annoy or harass the witness.
12      You can answer.
13  A.  I found that the partner was becoming an extreme
14  liability and we didn't get along.
15  Q.  Steve Maese?
16  A.  Correct.
17  Q.  When did you walk away?
18  A.  I think it was October 1st, 2019.
19  Q.  So from October 1st 2019 when you walked away from
20  Wasatch Constables, you then worked for Kolkman Constable
21  Services.
22      Is that right?
23  A.  Correct.
24  Q.  And that went -- and that's ongoing, right now?
25  A.  Yes.

---

Page 15

1   Q.  Okay.  And then a year ago in January of 2023 you
2   started a new company, Constable Kolkman LLC.
3   A.  Correct.
4   Q.  Okay.  How many Constables are employed at Kolkman
5   Constable Services?
6   A.  Constables or deputies?
7   Q.  Start with Constables.
8   A.  One.
9   Q.  You?
10  A.  Yes.
11  Q.  And how many deputies?
12  A.  Two part-time.
13  Q.  Their names?
14  A.  Chris Stewart [phonetic] and -- I just went blank on
15  him.  I'm picturing him.
16  Q.  It's not Cory Revel?
17  A.  No.  It's Tyler Plowman [phonetic].
18  Q.  Okay.  And they are deputies, meaning that they work
19  under your supervision?
20  A.  Yes.
21  Q.  You're an Ogden City Constable?
22  A.  Correct.
23  Q.  And Chris Stewart and Tyler Plowman are both deputies
24  under that same --
25  A.  Under me.

---

Page 16

1   Q.  Okay.  And I'm trying to think of the word.
2       Would it be authorization or appointment; appointment
3   for Ogden City, right?
4       MR. HILL:  Objection to the extent it calls for a legal
5   conclusion or for foundation.
6       You can answer the best of your ability.
7   Q.  Let me stop you there before you answer that.
8       Do you know whether or not you're appointed or some
9   other name for your ability to be a Constable for Ogden City?
10  A.  I'm appointed.
11  Q.  Okay.  You don't need to be a lawyer to know that.
12  A.  I'm appointed; they're deputized.
13  Q.  Okay.  Under your appointment only?
14  A.  Yes.
15  Q.  Okay.  How many employees does Constable Kolkman
16  Services have that are not constables or deputies?
17  A.  Five.
18  Q.  And how many employees does Constable Kolkman LLC have,
19  other than you?
20  A.  Run that one past me again.
21  Q.  Constable Kolkman LLC, your other company: there's you,
22  but then how many employees does that company have?
23  A.  Myself and maybe, part-time, one.
24  Q.  Okay.  You and one part-time.
25      And who is that part-timer?

---

Page 17

1   A.  Chris Stewart.
2   Q.  Okay.  Let's circle back on Cory Revel, then.
3       Which company does he work for?
4   A.  Constable Kolkman.
5   Q.  Okay.  But you just said there was only one employee
6   under you, Chris Stewart.
7   A.  For Kolkman Constable Services:  I thought that's what
8   you meant.
9   Q.  No, I'm more confused now.
10  A.  So am I.
11  Q.  Okay.  So who does Cory work for; which company?
12  A.  Constable Kolkman.
13  Q.  Constable Kolkman LLC.  Okay.
14      Constable Kolkman LLC then has you, Chris Stewart as a
15  part-time employee, and then Cory Revel also.
16  A.  Yes.  And others.
17  Q.  Oh, others.  Who else; how many others?
18  A.  Probably five.
19  Q.  Okay.  Are they the same five that work for Kolkman
20  Constable Services?
21  A.  No.
22  Q.  Okay.  So between the two companies, you've got roughly
23  10 employees under you?
24  A.  Probably roughly.
25  Q.  Do these two companies keep a separate office from each

---

ELIZABETH HERNANDEZ vs ROB KOLKMAN
ROB KOLKMAN - 04/22/2024

Confidential
Pages 18..21

**Page 18**

1 other?

2 A. Depends where I'm at.

3 Q. Do the two companies keep separate bank accounts?

4 A. Yes.

5 Q. And do you get separate paychecks from the two

6 companies?

7 A. I wish I got one from both, but I don't.

8 Q. Okay. Which company pays you?

9 A. Constable Kolkman.

10 Q. And why don't you get paid from Kolkman Constable

11 Services?

12 MR. HILL: Objection. It's beyond the scope of

13 discovery and disproportionate to the matter in this case, and as

14 a result is only intended to harass or annoy the witness.

15 I will allow the witness to answer the question, but I'm

16 going to ask the court reporter to designate that portion of the

17 transcript as confidential under the court's standard protective

18 order.

19 MR. STEPHENSON: I'll object to that.

20 BY MR. STEPHENSON:

21 Q. Go ahead and answer.

22 A. What was the question again?

23 Q. Why don't you get paid any money from Kolkman Constable

24 Services?

25 [The following testimony deemed confidential.]

**Page 19**

1 A. ████████████

2 ████████████ [End of confidential testimony.]

3

4 Q. Most of your efforts are spent for Kolkman -- I'm sorry,

5 for Constable Kolkman LLC?

6 A. Yes.

7 Q. How many of these 10 employees for these two companies

8 came to you from Wasatch Constables?

9 A. Two.

10 Q. Who were those two?

11 A. Chris Stewart and Tyler Plowman.

12 Q. How many of -- well, let's go back to it.

13 How did Constable Kolkman LLC begin; did you buy that

14 company from someone else with a different name, or did you just

15 start it from scratch?

16 A. Started it from -- which one?

17 Q. Constable Kolkman LLC, the one you started in January of

18 2023.

19 A. I was approached from another individual that had it

20 before and I took it over.

21 Q. And did you -- that was Michael Erickson [phonetic] that

22 approached you?

23 A. In a roundabout way.

24 Q. Go ahead.

25 A. No, go ahead.

**Page 20**

1 Q. I thought you were going to say more.

2 Okay. So you obtained that business from Michael

3 Erickson, though?

4 A. Yes.

5 Q. And who approached you about taking it over for Michael

6 Erickson?

7 A. John Sindt.

8 Q. And that's spelled S-I-N-D-T?

9 A. Yes.

10 Q. He's a constable?

11 A. No.

12 Q. Oh, who's John Sindt, then?

13 A. He's John Sindt.

14 Q. Okay. Does he work for you or for Michael Erickson?

15 A. He doesn't work for me, and I don't think he worked for

16 Mike.

17 Q. Okay. I thought that he was a constable, and you're

18 telling me he's not?

19 A. He was at one time.

20 Q. He was, okay.

21 And when did he stop being a constable?

22 MR. HILL: Objection, foundation.

23 MR. STEPHENSON: The foundation is laid: he said he

24 doesn't work as a constable anymore.

25 BY MR. STEPHENSON:

**Page 21**

1 Q. Go ahead.

2 A. I couldn't tell you exactly when he quit.

3 Q. Okay. You're friends with him?

4 A. I know him, yes.

5 Q. Okay. And did you know Michael Erickson before John

6 Sindt contacted you to take over Michael Erickson's business?

7 A. Yeah.

8 Q. Okay. And what was the arrangement for taking over

9 Michael Erickson's business?

10 [The following testimony deemed confidential.]

11 A. ████████████████████

12 ████████ [End of confidential testimony.]

13

14 MR. HILL: I'm going to move to designate or request

15 that the court reporter designate the answer to that question as

16 confidential in the protective order.

17 MR. STEPHENSON: And I'll object.

18 BY MR. STEPHENSON:

19 Q. Okay. And health issues meaning he wanted to stop?

20 A. Pardon?

21 Q. Health issues meaning Michael Erickson wanted to stop

22 conducting business altogether, or scale it back?

23 A. I don't know what he was going to do afterwards.

24 Q. What specific business did you take over from Michael

25 Erickson?

**Page 22**

1        [The following testimony deemed confidential.]
2    A.    ▓▓▓▓▓▓▓▓▓▓▓▓▓
3        [End of confidential testimony.]
4    Q.    And that was why you started?
5        MR. HILL:  I'm going to request the answer be designated
6    confidential in the protective order.
7        MR. STEPHENSON:  I'm going to ask you to stop doing
8    that, because this is a deposition where I'm entitled to ask
9    questions freely.
10        MR. HILL:  I'm not objecting to your entitlement to ask
11    questions, but I have an obligation to designate confidential
12    material at the time the answer is provided.
13        We'll waive that -- and I'm not willing to waive that
14    designation.
15        MR. STEPHENSON:  Okay.  Well, there's nothing
16    confidential about why he took over a business or what he took
17    over.
18        MR. HILL:  That is going to be for the judge to decide
19    if and when it becomes appropriate.  But I'm not going to stop
20    raising the -- or protecting what we're entitled to protect under
21    the protective order.
22    BY MR. STEPHENSON:
23    Q.    Okay.  So you took over the writ of execution side of
24    Michael Erickson's business, correct?
25    A.    I believe so, yeah.

**Page 23**

1    Q.    And that means what?
2        Explain exactly what you mean by taking over that writ
3    of execution part.
4    A.    We started handling the writ of executions.
5    Q.    Let's make sure we're on the same page here:
6        When you say handling the writ of executions, you mean
7    in a different way than you were handling them before January of
8    2023, correct?
9    A.    No.
10    Q.    Okay.  So before January of 2023, when you started this
11    new company, your other company was handling writs of execution
12    the same way it is now, or the same way the new company is now?
13    A.    It varied on each circumstance.
14    Q.    Okay.  Is Constable Kolkman LLC doing anything
15    business-like or business-wise different than Kolkman Constable
16    Services did before you started the new company?
17    A.    Each circumstance had a different issue, so no.
18    Q.    Okay.  So Kolkman Constable Services was collecting
19    payments on executions before Constable Kolkman LLC started
20    collecting payments on executions?
21        MR. HILL:  I'm going to object on the grounds that it's
22    beyond the scope and disproportionate.  As a result, it's only
23    intended to harass or annoy the witness.
24        You can answer.
25        [The following testimony deemed confidential.]

**Page 24**

1    A.    ▓▓▓▓▓▓▓
2        [End of confidential testimony.]
3        MR. HILL:  And I'm going to move to designate that
4    answer of the deposition transcript as confidential.
5    Q.    What factors did you consider when considering whether
6    to take over Michael Erickson's business?
7    A.    I needed the work.
8    Q.    The serving papers under Kolkman Constable Services
9    wasn't as much as you wanted to have being done?
10    A.    Yeah.
11    Q.    You saw taking over Michael Erickson's business as a
12    growth of your professional business?
13    A.    Yes.
14    Q.    Did Michael Erickson tell you how much money to expect
15    you would make taking over his business?
16    A.    Not really.
17    Q.    What parts of his business did you take from Michael
18    Erickson?
19        Specifically, let's start with -- you took over his
20    letters, right -- the letter templates look the same to me.
21        Did you get those from Michael Erickson?
22        [The following testimony deemed confidential.]
23    A.    ▓▓▓▓
24        [End of confidential testimony.]
25        MR. HILL:  I'm going to designate that portion of that

**Page 25**

1    answer in the deposition transcript as confidential.
2        MR. STEPHENSON:  Yeah, we're going to stop doing this.
3        That's not confidential.  And if you keep doing that on
4    answers that are not confidential -- let's mark that one, put the
5    word purple there.
6        We're going to come back to that, because I'm going to
7    call a judge if you keep doing that with stuff that's not -- I
8    mean, health issues, even that shouldn't be.
9        You can take up confidentiality issues later if you
10    want.
11        MR. HILL:  But I have to preserve it during the
12    deposition.
13        MR. STEPHENSON:  Yeah, I know.
14        Let's do this.
15    BY MR. STEPHENSON:
16    Q.    Let me ask you this.
17        You took over the letter templates from Michael
18    Erickson, correct?
19        [The following testimony deemed confidential.]
20    A.    ▓▓▓▓
21        [End of confidential testimony.]
22    Q.    What else did you take over from Michael Erickson?
23        MR. HILL:  And I'm going to -- same objection.
24        MR. STEPHENSON:  Same objection.
25    Q.    What else did you take over from Michael Erickson?



Page 26

1    A.   I'm not sure what you're asking.
2    Q.   Well, when you took over Michael Erickson's business,
3  you took over clients?
4    A.   Yes.
5    Q.   What clients did you take over?
6    A.   There were several.  Which ones do you want to know
7  about?
8    Q.   I would like you to name each one, please.
9         [The following testimony deemed confidential.]
10   A.   ████████████████████████████████████████████
     ████████████████████████████████████████
     ████████████████████████
     █████████████████████████████████████████████
     ██████████████████████████████
     ████████████████████████████████████████
     ███████████████████████████
     ███████████
     █████████████████████████████████████████
     ████████████████████████████████
     ██████████████████████████████
     ████████████████████████████████████████████
     ████████████████████████
     █████████████████████████████████████████
     █████████████████████████████████████
     ████████████████████
     ████████████████████████████████████████████
     ████████████████████
     █████████████████████████████
     ████████████████████████████████████
     ████████████████████████████████████████
     ██████████████████████████
14        [End of confidential testimony.]
15        MR. HILL:  Again, designating confidential.
16        We can --
17        MR. STEPHENSON:  Yeah, we're going to call the judge.
18        Let's go off the record.
19        [Off the record at 10:33 a.m.]
20        [Back on record at 10:41 a.m.]
21  BY MR. STEPHENSON:
22   Q.   Okay.  So let's go to Kolkman Constable Services: does
23  it execute writs of execution?
24   A.   Yes.
25   Q.   And Constable Kolkman LLC: does it execute writs of

Page 28

1  execution?
2    A.   Now I'm starting to get confused.
3    Q.   I'm sorry.  Kolkman Constable Services, that's the
4  company that serves papers?
5    A.   Yeah.
6    Q.   Does it execute writs of execution?
7    A.   Yes.
8    Q.   And Kolkman Constable LLC, that's the new company: that
9  executes writs of execution?
10   A.   Correct.
11   Q.   Okay.  What's the difference between the two companies
12  and how they do their -- how they execute writs of execution?
13   A.   Nothing.
14   Q.   Okay.  So Mountain Land, Charrington, Olson Shener, and
15  NAR: which company do they hire when they want writs of execution
16  executed?
17   A.   Do they hire?
18   Q.   Yeah.
19   A.   They are clients of ours.
20   Q.   Okay.  Which company, though?
21   A.   Constable Kolkman.
22   Q.   Constable Kolkman LLC, the new one?
23   A.   Yeah.
24   Q.   Okay.  And then who does Kolkman Constable Services, the
25  old company: who does it execute writs for?

Page 29

1    A.   Different clients.
2    Q.   What clients does Kolkman Constable Services execute
3  writs of execution for?
4        MR. HILL:  I'm going to object on the grounds that
5  that's beyond the scope, it's not relevant, disproportionate, it's
6  only intended to harass/annoy this witness.
7        You can answer.
8        [The following testimony deemed confidential.]
9    A.   ████████████████████████████████████████
     ████████████████████████████████
     ████████████████████████████████████
     █████████████████████████████
     ████████████████████████████
15        [End of confidential testimony.]
16        MR. HILL:  I'm going to move -- I'm going to designate
17  that portion of the deposition transcript as confidential under
18  the protective order.
19        MR. STEPHENSON:  Purple.
20        What exactly is confidential about that information?
21        MR. HILL:  Again, for purposes of meet and confer only,
22  not to argue, you are asking an individual witness information
23  about the clients of a non-party to this action.  That non-party
24  entity is entitled to maintain its client relationships as
25  confidential.

**Page 30**

1    MR. STEPHENSON:  But what is confidential about that?

2    MR. HILL:  The existence of an identity of its client

3  relationships.

4  BY MR. STEPHENSON:

5    Q.   Okay.  Mr. Kolkman, when you execute a writ for LeBaron

6  and Jensen, is their name on the writ?

7    A.   What do you mean on the writ?

8    Q.   Well, you know what a writ of execution looks like, of

9  course.

10   A.   I've seen one.

11   Q.   Okay.  You've seen hundreds, thousands, right?

12        It's not a mystery.

13   A.   Okay.

14   Q.   Correct?

15   A.   Yeah.

16   Q.   Okay.  And when LeBaron and Jensen gives you a writ of

17  execution to execute, their name is on that writ, correct?

18   A.   I just need a little clarification.

19        Are you saying on the writ as a plaintiff or defendant

20  or as the attorneys?

21   Q.   Anywhere on the writ.

22   A.   It is on the writ.

23   Q.   Okay.  So the fact that LeBaron and Jensen is your

24  client is not a secret at all, is it?

25    MR. HILL:  Objection.  Misstates his testimony.

**Page 31**

1        And you can answer -- well, you can answer the best of

2  your understanding.

3    A.   I'm trying to think here, and I'm not trying to be

4  deceitful.

5        Just to make it simpler, yeah.

6    Q.   Okay.  And is there --

7        Okay.  When you execute a writ of execution, you hand

8  papers to a person who is subject to that writ, correct?

9    MR. HILL:  I'm going to object again that this is beyond

10  the scope of relevance or proportionality in this action and is

11  therefore only intended to annoy or harass the witness.

12        You can answer the best of your understanding.

13    MR. STEPHENSON:  Hang on.

14        You really want to say that I'm asking an irrelevant

15  question and harassing the witness by asking him how he executes a

16  writ of execution; is that your objection?

17    MR. HILL:  How he -- as you well know, this has been the

18  subject of meet and confer discussions in other discovery disputes

19  in this case and other cases.

20        Mr. Kolkman's conduct with respect to other -- how he

21  handles the service of other documents in other cases unrelated to

22  this case is established in other jurisdictions as not within the

23  scope of relevance of this action.

24        We've seen no authority from you countering those

25  positions.

**Page 32**

1        And so yes, we believe that that is not relevant.  And

2  as a result of being disproportionate, it's only purpose is to

3  annoy or harass the witness.

4        That is the subject of ongoing meet and confers and

5  disputes over the scope of what is permitted in discovery.

6        We've seen no contrary authority from you to that point.

7        And I am preserving that objection in this deposition

8  transcript.

9    MR. STEPHENSON:  You haven't clarified your objection.

10        What -- forget your objection.

11  BY MR. STEPHENSON:

12    Q.   When you execute a writ of execution, in general --

13  let's start from the very beginning.

14        We want to be here all day, apparently.

15    Q.   When you execute a writ of execution, what -- you go to

16  the door with paperwork in your hand, correct?

17    A.   Yeah.

18    Q.   And that paperwork has -- one of the documents is a writ

19  of execution, correct?

20    A.   Correct.

21    Q.   And the attorney who issued -- or who obtained that writ

22  from the court is noted on the writ of execution, correct?

23    A.   Yes.

24    Q.   And sometimes that attorney's name is Mountain Land

25  Collections, sometimes it's Cherrington, sometimes it's Olson

**Page 33**

1  Shaner, sometimes it's LeBaron and Jensen; correct?

2    MR. HILL:  I'm going to object again that getting into

3  the details of specific --

4        I'm going to raise the objection which is beyond the

5  scope of discovery and disproportionate, and as a result intended

6  to harass and annoy the witness.

7        You can answer to the best of your understanding.

8    A.   What's your question again?

9    Q.   Will you read the question back, please?

10    "Q.   And sometimes that attorney's name is Mountain Land

11  Collections, sometimes it's Cherrington, sometimes it's Olson

12  Shaner, sometimes it's LeBaron and Jensen; correct?"

13    A.   Sometimes, yes.

14    Q.   And those writs of execution are public documents,

15  correct?

16    A.   Correct.

17    Q.   So the fact that you have those clients or any specific

18  client at all is not confidential in any way, shape or form, is

19  it?

20    MR. HILL:  Objection, calls for legal conclusion.

21    Q.   You can answer, it's okay.

22    A.   Not to my knowledge.

23    MR. STEPHENSON:  Let's go off the record real quick.

24        [Off the record at 10:49 a.m.]

25        [Back on record at 10:51 a.m.]

**Page 34**

1 BY MR. STEPHENSON:

2  Q.  Okay.  Let's talk about Constable Kolkman LLC, the new

3 company.

4      You said its job is to serve writs of execution; is that

5 right?

6  A.  Yeah.

7  Q.  Does that company serve any other documents?

8  A.  Not to my knowledge.

9  Q.  Kolkman Constable Services, the old company: is that the

10 one that serves garnishments, writs of restitution, subpoenas,

11 summons and complaints?

12  A.  Correct.

13  Q.  Did you ever get a legal opinion from an attorney prior

14 to starting this new company?

15  A.  No.

16  Q.  Did Michael Erickson provide you anything from an

17 attorney saying it's legal to run your company the way you are

18 running it?

19  A.  No.

20  Q.  How many writs of execution does Constable Kolkman LLC

21 serve in a given week?

22  A.  Kolkman Constable Services?

23  A.  The new company, Constable Kolkman LLC.

24  A.  How many do we serve in a week?

25  Q.  Yeah.

**Page 35**

1  A.  Oh, anywhere from 20-plus.

2  Q.  And those are served how?

3  A.  By service: by either being served to the plaintiff or

4 by a letter.

5  Q.  And what do you mean served to the plaintiff?

6  A.  Pardon?

7  Q.  What do you mean by being served to the plaintiff?

8  A.  When we actually -- not to the plaintiff, but to the

9 defendant.

10  Q.  Okay.  So that was a mistake when you said plaintiff;

11 you meant defendant, right?

12  A.  Oh, yeah.  Sorry.

13  Q.  No big deal.  It just confused me.  And the echo doesn't

14 help, honestly.

15  A.  No.

16  Q.  Okay.  So some of these, you serve by mail?

17  A.  We have, yes.

18  Q.  And some you serve by personally handing them to the

19 defendant?

20  A.  Or someone who resides there by the legal definition of

21 getting a paper served.

22  Q.  And how many of that 20-plus writs of execution that you

23 serve weekly are by mail compared to in person?

24  A.  The majority is by person.

25      And is mailing the writ of execution considered proper

**Page 36**

1 service of process of a writ of execution?

2      MR. HILL:  Objection, calls for a legal conclusion.

3  Q.  You can answer, it's okay.

4  A.  When we mail one to an individual, it is because they've

5 called our office from a letter or notice.

6      We let them know what we have and what it's about and if

7 they are all right with receiving it by mail.

8  Q.  You only mail writs of execution when the person, the

9 defendant, tells you it's okay to mail it?

10  A.  Correct.

11  Q.  Is looking in people's windows and pounding on their

12 doors and looking in their car windows part of serving these writs

13 of execution?

14      MR. HILL:  I'm going to object to that as irrelevant,

15 beyond the scope of discovery, disproportionate to the issues in

16 this case, only intended to harass or annoy the witness.

17  A.  As far as I know, we don't do that.

18  Q.  Okay.  You don't look in people's windows when you serve

19 papers?

20      MR. HILL:  Objection.  Same objection: intended to annoy

21 harass.

22  A.  Yes, if we're walking up the sidewalk and the windows

23 are right there, yeah, we would look in there.

24  Q.  You don't go out, step onto the grass or into a planter

25 bed and look with your face up against a window?

**Page 37**

1      MR. HILL:  Same objection: annoy/harass.

2  A.  No.

3  Q.  And why wouldn't you do that; why wouldn't you want to

4 see who's home?

5      MR. HILL:  Objection, intended to annoy/harass the

6 witness.

7      MR. STEPHENSON:  You're obstructing my deposition, by

8 the way.

9      And we are going to put an end of this in a little

10 while, and then I'm going to go after fees and costs.

11      MR. HILL:  We're about ready to put a termination to

12 this to seek a protective order.

13      MR. STEPHENSON:  Really?

14      MR. HILL:  So we're fine with this being --

15      MR. STEPHENSON:  Oh, I would love that.  That would be

16 much better.

17      Why don't you do this: why don't you go ahead and answer

18 that question.

19      And then let's give him a break to cool down because

20 he's shaking right now.

21      MR. HILL:  I am fine.

22 BY MR. STEPHENSON:

23  Q.  Why don't you go ahead and answer the question: why is

24 it that you don't --

25      MR. HILL:  I object to the mischaracterization of my

ELIZABETH HERNANDEZ vs ROB KOLKMAN
ROB KOLKMAN - 04/22/2024

Confidential
Pages 38..41

Page 38

1  behavior on the record.
2          You are welcome to answer the question.
3      Q.   **Please answer the question: why don't you look through**
4  **windows and put your face up against windows to see who's inside?**
5          MR. HILL:  Subject to the same objection.
6      A.   I personally do not do that.
7      Q.   **Right, but why?**
8      A.   I would glance as I'm walking by to see what there is in
9  there, as far as if there's a threat to me.  But to do that as a
10  peeping tom, I do not condone that and I have never done that.
11     Q.   **And why?**
12         MR. HILL:  Same objection: annoy and harass.
13     A.   It's just not ethical.
14         MR. HILL:  I think this would be a good time to take a
15  break, as you had suggested, as I would like to confer with my
16  client.
17         MR. STEPHENSON:  He's still under oath.  So go ahead,
18  and I'll ask him questions about it.
19         MR. HILL:  Understood.
20         [Off the record at 10:57 a.m.]
21         [Back on record at 11:05 a.m.]
22         MR. HILL:  In light of the last question that was
23  answered and the repeated history of questions that have been
24  objected to in this deposition, we are going to suspend and
25  terminate this deposition for the purpose under Rule 30(b) --

Page 39

1  sorry, 30(c) -- sorry, under Rule 30(d)(3), to terminate the
2  deposition for the purpose of seeking a protective order.
3         MR. STEPHENSON:  And the protective order is based on
4  what?
5         MR. HILL:  Well, on the continuing annoyance and
6  harassment of the witness by asking questions that are beyond the
7  scope of discovery and outside the scope of proportionality for
8  this case and the inability to get resolution on that dispute.
9         MR. STEPHENSON:  Can you give me an example?
10         MR. HILL:  Eric, we will be bringing our motion for
11  protective order.
12         We've already met and conferred on the record about your
13  challenging the objections and protective order requests that I've
14  made.
15         I think you have your examples.  We've met and conferred
16  and you already indicated that.
17         The other examples will be indicated in our motion for
18  protective order.
19         And we'd ask for an expedited copy of the transcript
20  thus far.
21         MR. STEPHENSON:  Well, I'd like to have some
22  conversation with you before you just terminate this.  Because
23  we've obviously got a lot of questions and I've traveled a long
24  way and expended a lot of -- you're not going to let me finish my
25  sentence?

Page 40

1         MR. HILL:  You can -- I'm not interrupting you.
2         MR. STEPHENSON:  Okay.  You look like you are, the way
3  you're talking in the air.
4         MR. HILL:  Again, I object to his mischaracterization of
5  my behavior.
6         I said nothing while he was in the process of finishing
7  his question and your statement, and you're entitled to continue
8  doing so.
9         MR. STEPHENSON:  Your head was bobbing and your mouth
10  was opening and closing like you were speaking.
11         So let me be sure I understand this: even though I have
12  other questions that I could ask, -- and you haven't heard those
13  questions yet -- it's your -- you think that those questions are
14  all going to be irrelevant, and that's why you want to terminate?
15         MR. HILL:  Eric, you know as well as I do that I don't
16  know what your questions are.  But the questions you've asked thus
17  far and continue to ask are objectionable and harassing.
18         And we're entitled to suspend the deposition under Rule
19  30(d)(3) to get a ruling on that before we continue.  And that is
20  what we are doing.
21         Thank you for describing your position, but we will --
22  yes, that that's the process of suspending a deposition under Rule
23  30(d)(3) is you don't get to the end of it and then suspend it.
24         MR. STEPHENSON:  I'm trying to meet and confer.  I'm
25  trying to discuss this with you so we can avoid that if we can.

Page 41

1         Are you open to avoiding that suspension and letting me
2  continue?
3         We do have a judge that I've called twice now.
4         MR. HILL:  I understand.
5         MR. STEPHENSON:  And we could wait for that.
6         MR. HILL:  Well, we don't have to sit here -- we don't
7  know if the judge is going to get back to us today or not.  We
8  don't have to sit here indefinitely.
9         And based on the questions you've continued to ask in
10  the face of the ongoing objections, yes, I believe you are in a
11  line of questioning that will continue to be objectionable and
12  there is no purpose.
13         I think the intent is to get the judge's ruling on the
14  nature of the harassment and annoyance and the scope of a
15  protective order before we continue.
16         I do agree with -- I do -- I maintain that position.
17         MR. STEPHENSON:  Help me understand the scope of your
18  protective order, then.
19         What are you asking for specifically; how am I --
20         No, because this is part of our meet and confer.
21         If I can limit my question -- let me finish before you
22  interrupt.
23         MR. HILL:  I had not started --
24         MR. STEPHENSON:  If I could finish -- you've got this
25  this incredible effect to you that you don't want to let me

**Page 42**

1  finish.
2          But if I can ask questions, if you can help me ask
3  questions -- tell me how I can ask a question that is satisfactory
4  to you that is not going to harass your client.
5          He doesn't seem harassed to me.
6          MR. HILL:  Eric.  We had, now in the first hour, at
7  least a dozen questions, if not more, where you're asking
8  questions about matters that do not pertain to this action.
9          I've articulated that the grounds for why they are
10  annoying and harassing, already in connection with the objections,
11  you don't seem to want to learn or change your pattern of behavior
12  in light of those objections because you continue to ask ongoing
13  questions in the same vein as the prior objections.
14          So no, I don't see any value to continuing and allowing
15  you to --
16          You've already established an unwillingness to change
17  your behavior in the face of already existing objections.
18          And rather than meet and confer, you called the judge
19  looking for direction which we haven't gotten an answer from.
20          We're going to go to the judge and get the same
21  direction that you're seeking in the purpose of the voicemail that
22  you left the judge.
23          MR. STEPHENSON:  Well, I'm willing to change my behavior
24  so I will stop offending you.
25          What I'd like to do is be able to ask questions and not

**Page 43**

1  have a relevancy objection, because that's not a proper objection.
2  And you've made it enough times that it's not proper
3          Confidentiality:  you don't have to make that during.
4  You can if you want, but you don't have to.  You can actually make
5  that later on.  And under the standard protective order, that's
6  totally fine.
7          But I'm not harassing the witness by asking him
8  questions about his business conduct, what he does, and how he
9  does it.  That's totally within the scope of this --
10          First of all, it doesn't matter if it's relevant or not:
11  I can ask him what he likes for breakfast, and he would have to
12  answer.  You know that.
13          But I'm not asking him questions that are irrelevant.
14          What I'm asking him for is questions that pertain
15  directly to how he conducts business and what that business is.
16          MR. HILL:  And I'm going to object to your
17  characterization that you are trying to ask questions that don't
18  offend me.
19          Nothing about this is about my offense; this is about
20  your treatment of the witness, my client, that I am protecting.
21          Yes, you can ask him questions about what he had for
22  breakfast.  And yes, he has to answer.
23          That does not make that question insulated from being an
24  annoyance or harassment when it's beyond the scope of the
25  discovery.

**Page 44**

1          And that's what we're dealing with here.
2          Yes, we have not instructed the witness not to answer
3  any questions thus far.
4          We've preserved objections.  And notwithstanding the
5  preserving of those objections, you are continuing to ask
6  questions that are outside of what is relevant to this matter,
7  beyond the scope of discovery.  And at some point, that becomes
8  annoying and harassing.
9          And so no, I don't know how to instruct you what
10  questions to ask that would not be offensive.  I don't know what
11  your questions are that you have lined up other than those that
12  relate to the issues in the pleading, the complaint, the matters
13  in the causes of action alleged in this action.
14          And you've gone well beyond that.  And we've preserved
15  our objections.
16          You don't believe you're going beyond that; we'll bring
17  our motion for protective order.
18          MR. STEPHENSON:  Okay.  If there's nothing I can do to
19  meet and confer with you and satisfy you.
20          MR. HILL:  We've met and conferred.  Don't --
21          MR. STEPHENSON:  I understand that.
22          MR. HILL:  Don't put in this deposition that we're
23  unwilling to meet and confer, because that's not true.
24          MR. STEPHENSON:  We're conferring now; you've fully
25  satisfied that.

**Page 45**

1          My concern is that I'm not sure how I've been unable to
2  satisfy you.  Because I'm ready to proceed, I've paid a fortune to
3  be here, I spent my time to be here.
4          And that's the perfect smile to show how much -- your
5  contempt for me and why this is -- you're interfering with my
6  ability to take this deposition with your questions.
7          And I'm going to ask for sanctions for the way you've
8  interfered so far.
9          But now you're actually terminating, and I am going to
10  ask for sanctions on that.
11          And I know you're not concerned about that and nobody
12  cares, but I do.  I have a job to do.
13          He's willing to answer my questions.  He's been
14  extremely cooperative.
15          It's just you that hasn't been.
16          MR. HILL:  I object to that characterization.
17          MR. STEPHENSON:  Of course, you do.
18          MR. HILL:  Again, this is not personal between the
19  attorneys, and you're making it personal between the attorneys.
20          MR. STEPHENSON:  Not at all.
21          MR. HILL:  I am protecting my client's interest.
22          I think we've said enough on the record.  I don't have
23  anything further to say.
24          We'll see you in the briefing on the protective order.
25          MR. STEPHENSON:  Okay.  I guess that's all we can do.

ELIZABETH HERNANDEZ vs ROB KOLKMAN
ROB KOLKMAN - 04/22/2024

Confidential
Pages 46..48

Page 46

1    [Adjourned at 11:14 a.m.]
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 48

1           REPORTER'S CERTIFICATE
2    STATE OF UTAH )
3    COUNTY OF UTAH )
4           I, Spencer Von Jarrett, a Certified Shorthand Reporter,
5    Registered Professional Reporter, hereby certify:
6           THAT the foregoing proceedings were taken before me at
7    the time and place set forth in the caption hereof; that the
8    witness was placed under oath to tell the truth, the whole truth,
9    and nothing but the truth; that the proceedings were taken down by
10   me in shorthand and thereafter my notes were transcribed through
11   computer-aided transcription; and the foregoing transcript
12   constitutes a full, true, and accurate record of such testimony
13   adduced and oral proceedings had, and of the whole thereof.
14           I have subscribed my name on this 22nd day of April,
15   2024.
16           _____
17           Spencer Von Jarrett
18           Registered Professional Reporter #993793
19
20
21
22
23
24
25

Page 47

1           CERTIFICATE OF DEPONENT
2    PAGE    LINE    CHANGE
3    _____
4    _____
5    _____
6    _____
7    _____
8    _____
9    _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18           I, Rob Kolkman, deponent herein, do hereby certify and
19   declare under penalty of perjury the within and foregoing
20   transcription to be my deposition in said action; that I have
21   read, corrected, and do hereby affix my signature to said
22   deposition.
23           _____
24           Rob Kolkman, Deponent
25

**0**

**0.5**  13:18

**1**

**10**  17:23 19:7
**10:01**  4:2
**10:33**  27:19
**10:41**  27:20
**10:49**  33:24
**10:51**  33:25
**10:57**  38:20
**11:05**  38:21
**11:14**  46:1
**1st**  14:18,19

**2**

**20-plus**  35:1,22
**2019**  14:18,19
**2023**  15:1 19:18 23:8,10
**23**  11:5

**3**

**30(b)**  38:25
**30(c)**  39:1
**30(d)(3)**  39:1 40:19,23

**5**

**50**  13:17,18 14:7

**A**

**a.m.**  4:2 27:19,20 33:24,25 38:20,21
  46:1
**ability**  5:21 9:5 16:6,9 45:6
**absolute**  8:2
**accounts**  18:3

**action**  10:7 29:23 31:10,23 42:8
  44:13
**activity**  11:11 12:2
**Adjourned**  46:1
**administered**  4:5
**agree**  8:25 41:16
**ahead**  10:17 11:18 18:21 19:24,25
  21:1 37:17,23 38:17
**air**  40:3
**aliases**  4:18
**alleged**  44:13
**allowing**  42:14
**altogether**  21:22
**amend**  12:17
**Andrea**  6:3,5 7:21
**annoy**  12:18 14:11 18:14 23:23 31:11
  32:3 33:6 36:16,20 38:12
**annoy/harass**  12:19 37:1,5
**annoyance**  39:5 41:14 43:24
**annoying**  42:10 44:8
**answering**  8:17,18
**answers**  25:4 26:14
**anymore**  20:24
**apparently**  32:14
**Appearances**  4:3
**appointed**  16:8,10,12
**appointment**  16:2,13
**approached**  19:19,22 20:5
**approximating**  11:2
**argue**  8:25 29:22
**argument**  9:17
**arrangement**  21:8
**articulated**  42:9
**attorney**  7:16,17 32:21 34:13,17
**attorney's**  32:24 33:10
**attorneys**  30:20 45:19
**authority**  31:24 32:6
**authorization**  16:2

**avoid**  40:25
**avoiding**  41:1

**B**

**back**  8:4 17:2 19:12 21:22 25:6 27:20
  33:9,25 38:21 41:7
**bank**  18:3
**based**  39:3 41:9
**Basically**  8:8
**bed**  36:25
**begin**  19:13
**beginning**  32:13
**behavior**  38:1 40:5 42:11,17,23
**big**  35:13
**bill**  13:3
**bills**  13:3,8
**blank**  15:14
**bobbing**  40:9
**books**  11:15,19,20 12:2
**break**  37:19 38:15
**breakfast**  43:11,22
**briefing**  45:24
**briefly**  13:11
**Briefly**  13:11
**bring**  7:11 44:16
**bringing**  39:10
**business**  20:2 21:6,9,22,24 22:16,24
  24:6,11,12,15,17 26:2 27:11 43:8,15
**business-like**  23:15
**business-wise**  23:15
**buy**  19:13

**C**

**call**  7:1,2,5 11:12 25:7 27:17
**called**  36:5 41:3 42:18
**calls**  16:4 33:20 36:2
**car**  36:12
**care**  11:15,19

cares 45:12

case 7:6,14,23 18:13 31:19,22 36:16 39:8

cases 31:19,21

challenging 39:13

change 42:11,16,23

changing 8:18

characterization 43:17 45:16

Cherrington 26:11 27:1,10 28:14 32:25 33:11

Chris 7:18 15:14,23 17:1,6,14 19:11

circle 17:2

circumstance 23:13,17

City 15:21 16:3,9

clarification 30:18

clarified 32:9

client 29:24 30:2,24 33:18 38:16 42:4 43:20

client's 45:21

clients 26:3,5,18,25 28:19 29:1,2,23 33:17

close 11:3

closing 40:10

collecting 23:18,20

Collections 27:1,10 32:25 33:11

communications 7:4,6 8:4,5,6

companies 4:24 5:1 9:18 17:22,25 18:3,6 19:7 28:11

company 4:20,22 9:8,15,19,23,25 10:2,5,10,15 11:6 12:5,9,25 13:4 14:1, 3,7 15:2 16:21,22 17:3,11 18:8 19:14 23:11,12,16 28:4,8,15,20,25 34:3,7,9, 14,17,23

compared 35:23

complaint 44:12

complaints 34:11

computer 5:18

concern 45:1

concerned 45:11

conclusion 16:5 33:20 36:2

condone 38:10

conduct 31:20 43:8

conducting 21:22

conducts 43:15

confer 29:21 31:18 38:15 40:24 41:20 42:18 44:19,23

conferred 39:12,15 44:20

conferring 44:24

confers 32:4

confidential 18:17,25 19:3 21:10,13, 16 22:1,3,6,11,16 23:25 24:2,4,22,24 25:1,3,4,19,21 26:9,15 27:6,14,15 29:8,15,17,20,25 30:1 33:18

confidentiality 25:9 43:3

confused 17:9 28:2 35:13

connection 42:10

considered 35:25

constable 4:21,23 5:2,5 9:10,24 10:4, 20,22,23 11:9,14,21 12:3,7,8,24 13:5, 9,24 14:20 15:2,5,21 16:9,15,18,21 17:4,7,12,13,14,20 18:9,10,23 19:5, 13,17 20:10,17,21,24 23:14,15,18,19 24:8 27:22,25 28:3,8,21,22,24 29:2 34:2,9,20,22,23

constables 13:11,12,14,20 14:5,9,20 15:4,6,7 16:16 19:8

contacted 21:6

contempt 45:5

continue 40:7,17,19 41:2,11,15 42:12

continued 41:9

continuing 39:5 42:14 44:5

contrary 32:6

conversation 39:22

conversations 6:16 11:24

cool 37:19

cooperative 45:14

copy 7:11 39:19

correct 6:10 8:15,23 9:25 10:1 13:19 14:16,23 15:3,22 22:24 23:8 25:18 28:10 30:14,17 31:8 32:16,19,20,22 33:1,12,15,16 34:12 36:10

Correction 7:22

Cory 6:4,9 7:21 15:16 17:2,11,15

costs 37:10

counsel 7:10

countering 31:24

court 13:22 18:16 21:15 32:22

court's 18:17

crazy 4:12

creation 6:21

D

daily 11:11,21 12:2

date 6:21,23

day 32:14

deal 35:13

dealing 44:1

deceitful 31:4

decide 22:18

deemed 18:25 21:10 22:1 23:25 24:22 25:19 26:9 29:8

defendant 30:19 35:9,11,19 36:9

definition 35:20

Depends 18:2

deposed 5:13 7:22

deposition 5:15 7:15,24 8:13 9:18 12:15 22:8 24:4 25:1,12 29:17 32:7 37:7 38:24,25 39:2 40:18,22 44:22 45:6

depositions 5:12 12:16

deputies 15:6,11,18,23 16:16

deputized 16:12

describing 40:21

designate 18:16 21:14,15 22:11 24:3, 25 29:16

designated 22:5

designating 27:6,15

designation 22:14

designed 14:11

ELIZABETH HERNANDEZ vs ROB KOLKMAN
ROB KOLKMAN - 04/22/2024

Confidential
Index: details..harassment

**details** 8:23 33:3

**difference** 28:11

**direction** 42:19,21

**directly** 43:15

**discovery** 6:17 7:1,9 10:7,12 12:11, 18 18:13 31:18 32:5 33:5 36:15 39:7 43:25 44:7

**discuss** 40:25

**discussions** 31:18

**disproportionate** 18:13 23:22 29:5 32:2 33:5 36:15

**dispute** 39:8

**disputes** 31:18 32:5

**Dobson** 6:8

**documents** 31:21 32:18 33:14 34:7

**door** 32:16

**doors** 36:12

**dozen** 42:7

**driving** 4:12

**duties** 11:9

E

**echo** 4:11,12 35:13

**effect** 41:25

**efforts** 19:4

**employed** 15:4

**employee** 6:6 17:5,15

**employees** 11:25 12:1 16:15,18,22 17:23 19:7

**end** 19:3 21:13 22:3 24:2,24 25:21 27:14 29:15 37:9 40:23

**entitled** 22:8,20 29:24 40:7,18

**entitlement** 22:10

**entity** 26:23 29:24

**Eric** 39:10 40:15 42:6

**Erickson** 19:21 20:3,6,14 21:5,21,25 24:14,18,21 25:18,22,25 26:19 27:1 34:16

**Erickson's** 21:6,9 22:24 24:6,11 26:2

**established** 31:22 42:16

**ethical** 38:13

**EXAMINATION** 4:7

**examined** 4:6

**examples** 39:15,17

**execute** 27:23,25 28:6,12,25 29:2 30:5,17 31:7 32:12,15

**executed** 28:16

**executes** 28:9 31:15

**execution** 10:9,19,21,25 22:23 23:3, 11 27:23 28:1,6,9,12,15 29:3 30:8,17 31:7,16 32:12,15,19,22 33:14 34:4,20 35:22,25 36:1,8,13

**executions** 11:23 22:2 23:4,6,19,20

**existence** 30:2

**existing** 42:17

**expect** 24:14

**expedited** 39:19

**expended** 39:24

**Explain** 23:2

**extent** 16:4

**extreme** 14:13

**extremely** 45:14

**eye** 11:11,12

F

**face** 36:25 38:4 41:10 42:17

**fact** 30:23 33:17

**factors** 24:5

**fair** 7:7

**fees** 37:10

**fine** 37:14,21 43:6

**finish** 39:24 41:21,24 42:1

**finishing** 40:6

**Firm** 27:1

**focus** 10:9

**focuses** 10:10

**forget** 32:10

**forgot** 12:5

**form** 33:18

**fortune** 45:2

**found** 14:13

**foundation** 6:1 16:5 20:22,23

**freely** 22:9

**friends** 21:3

**full** 4:16,22

**fully** 9:6 44:24

G

**garnishments** 34:10

**gas** 19:1

**general** 32:12

**get along** 14:14

**give** 8:10 13:2 37:19 39:9

**glance** 38:8

**good** 38:14

**grass** 36:24

**grounds** 10:6 23:21 29:4 42:9

**growth** 24:12

**guess** 45:25

H

**hand** 31:7 32:16

**handing** 35:18

**handles** 31:21

**handling** 12:2 13:7 23:4,6,7,11

**handwritten** 6:19

**Hang** 31:13

**harass** 12:19 14:11 18:14 23:23 31:11 32:3 33:6 36:16,21 38:12 42:4

**harass/annoy** 29:6

**harassed** 42:5

**harassing** 31:15 40:17 42:10 43:7 44:8

**harassment** 39:6 41:14 43:24

ELIZABETH HERNANDEZ vs ROB KOLKMAN
ROB KOLKMAN - 04/22/2024

Confidential
Index: hard..maintain

**hard** 4:10 27:8

**head** 6:24 26:10,21,23 27:3 40:9

**health** 21:11,19,21 25:8

**hear** 10:14

**heard** 40:12

**hearing** 4:10

**herin** 4:5

**Hernandez** 7:23

**Hill** 5:20 6:1,13 7:18 9:11,17 10:6,11, 16 12:10,17 14:10 16:4 18:12 20:22 21:14 22:5,10,18 23:21 24:3,25 25:11, 23 26:14 27:6,15 29:4,16,21 30:2,25 31:9,17 33:2,20 36:2,14,20 37:1,5,11, 14,21,25 38:5,12,14,19,22 39:5,10 40:1,4,15 41:4,6,23 42:6 43:16 44:20, 22 45:16,18,21

**hindering** 9:5

**hire** 28:15,17

**history** 38:23

**home** 37:4

**honestly** 9:5 35:14

**hour** 42:6

**hundreds** 30:11

**I**

**identify** 6:25

**identity** 30:2

**important** 8:3,23

**inability** 39:8

**includes** 8:17

**including** 10:18

**incredible** 41:25

**indefinitely** 41:8

**individual** 19:19 29:22 36:4

**information** 8:10 29:20,22

**inside** 38:4

**instruct** 44:9

**instructed** 44:2

**insulated** 43:23

**insurance** 19:2

**intended** 12:18,19 18:14 23:23 29:6 31:11 33:5 36:16,20 37:5

**intent** 41:13

**interest** 45:21

**interfered** 45:8

**interfering** 45:5

**interrupt** 41:22

**interrupting** 40:1

**irrelevant** 12:10 31:14 36:14 40:14 43:13

**issue** 23:17

**issued** 32:21

**issues** 21:12,19,21 25:8,9 36:15 44:12

**J**

**January** 11:5 15:1 19:17 23:7,10

**Jensen** 29:9,11,13,14 30:6,16,23 33:1,12

**job** 34:4 45:12

**John** 20:7,12,13 21:5

**Johnson** 29:12

**judge** 22:18 25:7 27:17 41:3,7 42:18, 20,22

**judge's** 41:13

**jurisdictions** 31:22

**K**

**kind** 7:3 13:4

**kinds** 10:18

**knowledge** 33:22 34:8

**Kolkman** 4:4,15,21,23 5:2,5,6 9:9,10, 24 10:4,20,22,23 11:10,14,22 12:3,7, 8,24 13:5,8 14:20 15:2,4 16:15,18,21 17:4,7,12,13,14,19 18:9,10,23 19:4,5, 13,17 23:14,15,18,19 24:8 27:22,25 28:3,8,21,22,24 29:2 30:5 34:2,9,20, 22,23

**Kolkman's** 31:20

**L**

**laid** 20:23

**Land** 26:11 27:1,10 28:14 32:24 33:10

**lawyer** 16:11

**learn** 42:11

**leave** 8:23

**Lebaron** 29:9,11,12,14 30:5,16,23 33:1,12

**left** 42:22

**legal** 10:18 13:6,7 16:4 33:20 34:13, 17 35:20 36:2

**letter** 24:20 25:17 35:4 36:5

**letters** 24:20

**letting** 41:1

**liability** 14:14

**light** 38:22 42:12

**likes** 43:11

**limit** 41:21

**lined** 44:11

**LLC** 4:23 5:6 9:9,24 10:4,20,23 11:10, 14,22 12:3 15:2 16:18,21 17:13,14 19:5,13,17 25:13,17 27:25 28:8,22 34:2,20,23

**long** 10:2 39:23

**Looked** 5:16

**lose** 14:7

**lot** 19:1 39:23,24

**love** 37:15

**M**

**M-A-E-S-E** 13:23

**made** 39:14 43:2

**Maese** 13:21,22 14:15

**mail** 35:16,23 36:4,7,8,9

**mailing** 35:25

**main** 9:25

**maintain** 29:24 41:16

**majority** 35:24

**make** 23:5 24:15 31:5 43:3,4,23

**making** 45:19

**manage** 11:16

**management** 11:12

**managing** 11:21 12:2

**mark** 25:4 26:14

**material** 22:12

**matter** 18:13 43:10 44:6

**matters** 42:8 44:12

**meaning** 15:18 21:19,21

**means** 8:22 23:1

**meant** 17:8 35:11

**meet** 29:21 31:18 32:4 40:24 41:20
42:18 44:19,23

**met** 39:12,15 44:20

**Michael** 19:21 20:2,5,14 21:5,6,9,11,
21,24 22:24 24:6,11,14,17,21 25:17,
22,25 26:2,18 27:1 34:16

**Mike** 20:16

**mischaracterization** 37:25 40:4

**misleading** 9:20

**misstates** 9:11 30:25

**misstating** 9:14,15

**mistake** 35:10

**money** 18:23 24:14

**months** 11:4

**motion** 39:10,17 44:17

**Mountain** 26:11 27:1,10 28:14 32:24
33:10

**mouth** 40:9

**move** 21:14 24:3 29:16

**mystery** 30:12

---

### N

**names** 5:1 15:13

**NAR** 26:11,22 27:2,11 28:15

**nature** 41:14

**needed** 24:7

**non-party** 29:23

**noted** 4:3 32:22

**notes** 5:16,17,22,23,24,25 6:11,17,25
7:1,2,6,11 8:8,11

**notice** 36:5

**notwithstanding** 44:4

---

### O

**oath** 4:5 8:14,21 38:17

**object** 10:6 18:19 21:17 23:21 29:4
31:9 33:2 36:14 37:25 40:4 43:16
45:16

**objected** 12:14 38:24

**objecting** 22:10

**objection** 5:20 6:1,13 9:11 10:11,16
12:10,15,17,20 14:10 16:4 18:12
20:22 25:23,24 30:25 31:16 32:7,9,10
33:4,20 36:2,20 37:1,5 38:5,12 43:1

**objectionable** 40:17 41:11

**objections** 39:13 41:10 42:10,12,13,
17 44:4,5,15

**obligation** 22:11

**observe** 11:23

**observing** 12:1

**obstructing** 37:7

**obtained** 20:2 32:21

**occurred** 6:15 7:3 8:7

**October** 14:18,19

**offend** 43:18

**offending** 42:24

**offense** 43:19

**offensive** 44:10

**office** 17:25 36:5

**Ogden** 15:21 16:3,9

**Olson** 26:12,22 27:2,10 28:14 32:25
33:11

**one-man** 13:1

**ongoing** 14:24 32:4 41:10 42:12

**open** 41:1

**opening** 40:10

**operation** 13:1

**operations** 11:21

**opinion** 34:13

**order** 18:18 21:16 22:6,21 29:18
37:12 39:2,3,11,13,18 41:15,18 43:5
44:17 45:24

**outline** 6:12,15

**owned** 10:2

**owner** 5:9 11:6,8

**owns** 5:10

---

### P

**paid** 18:10,23 45:2

**paper** 35:21

**papers** 13:3,4 24:8 28:4 31:8 36:19

**paperwork** 32:16,18

**Pardon** 21:20 35:6

**part** 13:14 23:3 36:12 41:20

**part-time** 15:12 16:23,24 17:15

**part-timer** 16:25

**partner** 14:13

**parts** 24:17

**past** 16:20

**pattern** 42:11

**pay** 13:3

**paychecks** 18:5

**payments** 23:19,20

**payroll** 11:17,19,20 12:2

**pays** 18:8 19:1

**peeping** 38:10

**penalty** 8:14

**people's** 36:11,18

**percent** 13:17,18 14:7

**perfect** 45:4

**perjury** 8:15

permitted 32:5

person 31:8 35:23,24 36:8

personal 45:18,19

personally 35:18 38:6

pertain 42:8 43:14

phonetic 6:8,9 15:14,17 19:21

picturing 15:15

plaintiff 30:19 35:3,5,7,8,10

planter 36:24

pleading 44:12

Plowman 15:17,23 19:11

point 9:23 13:17 32:6 44:7

portion 18:16 24:25 29:17

position 11:6 40:21 41:16

positions 31:25

pounding 36:11

prepare 5:15 7:14,24

preserve 25:11

preserved 44:4,14

preserving 32:7 44:5

Pretty 11:1

primary 27:11

prior 9:12 34:13 42:13

proceed 45:2

process 10:18 13:6,7 36:1 40:6,22

produced 6:17

professional 24:12

proper 12:15,20 35:25 43:1,2

property 11:24 12:2

proportionality 31:10 39:7

protect 22:20

protecting 22:20 43:20 45:21

protective 18:17 21:16 22:6,21 29:18
   37:12 39:2,3,11,13,18 41:15,18 43:5
   44:17 45:24

provide 34:16

provided 22:12

public 33:14

purple 25:5 26:16 29:19

purpose 32:2 38:25 39:2 41:12 42:21

purposes 29:21

put 25:4 37:9,11 38:4 44:22

### Q

question 8:18,19 9:1,19 12:21,22
   14:11 18:15,22 21:15 31:15 33:8,9
   37:18,23 38:2,3,22 40:7 41:21 42:3
   43:23

questioning 41:11

questions 9:2,5 22:9,11 38:18,23
   39:6,23 40:12,13,16 41:9 42:2,3,7,8,
   13,25 43:8,13,14,17,21 44:3,6,10,11
   45:6,13

quick 12:13 33:23

quit 21:2

### R

raise 33:4

raising 22:20

read 33:9

ready 37:11 45:2

real 12:13 33:23

receiving 36:7

record 4:2 27:18,19,20 33:23,24,25
   38:1,20,21 39:12 45:22

relate 44:12

relationships 29:24 30:3

relevance 10:7 31:10,23

relevancy 12:14 43:1

relevant 29:5 32:1 43:10 44:6

remembering 27:8

repeated 38:23

reporter 13:22 18:16 21:15

request 7:9 21:14 22:5

requests 7:1 39:13

research 11:23

reserved 12:16

resides 35:20

resolution 39:8

respect 31:20

responsibilities 11:9

restitution 34:10

result 18:14 23:22 32:2 33:5

Revel 6:9 15:16 17:2,15

Rob 4:4,15 9:9

role 8:25

rough 6:12,15

roughly 17:22,24

roundabout 19:23

Rule 38:25 39:1 40:18,22

ruling 40:19 41:13

run 16:20 34:17

running 34:18

### S

S-I-N-D-T 20:8

sanctions 45:7,10

satisfactory 42:3

satisfied 44:25

satisfy 44:19 45:2

scale 21:22

scope 10:7,11 12:10,18 14:10 18:12
   23:22 29:5 31:10,23 32:5 33:5 36:15
   39:7 41:14,17 43:9,24 44:7

scratch 19:15

secret 30:24

seek 37:12

seeking 39:2 42:21

sell 14:5,6

sentence 39:25

separate 17:25 18:3,5 26:24

separately 26:22

serve 13:3,4 34:4,7,21,24 35:16,18,23
   36:18

**served** 35:2,3,5,7,21

**serves** 10:18 28:4 34:10

**service** 13:1 31:21 35:3 36:1

**Services** 5:2 12:7,8,24 13:5,9 14:21
15:5 16:16 17:7,20 18:11,24 23:16,18
24:8 27:22 28:3,24 29:2 34:9,22

**serving** 13:7 24:8 36:12

**shaking** 37:20

**Shaner** 26:12,22 27:2,11 28:14 33:1,
12

**shape** 33:18

**share** 14:5

**show** 45:4

**side** 22:23

**sidewalk** 36:22

**simpler** 31:5

**Sindt** 20:7,12,13 21:6

**single** 9:19

**sit** 41:6,8

**smile** 45:4

**sort** 13:8

**speak** 4:10 7:6,19

**speaking** 40:10

**specific** 8:6 21:24 33:3,17

**specifically** 5:19 7:15 10:20 24:19
41:19

**spell** 13:22

**spelled** 20:8

**spent** 19:4 45:3

**standard** 18:17 43:5

**start** 15:7 19:15 24:19 32:13

**started** 15:2 19:16,17 22:4 23:4,10,
16,19 41:23

**starting** 28:2 34:14

**State** 4:9

**statement** 40:7

**step** 36:24

**STEPHENSON** 4:8 9:14,21,22 12:13,
23 18:19,20 20:23,25 21:17,18 22:7,

15,22 25:2,13,15,24 26:16,17 27:17,
21 29:19 30:1,4 31:13 32:9,11 33:23
34:1 37:7,13,15,22 38:17 39:3,9,21
40:2,9,24 41:5,17,24 42:23 44:18,21,
24 45:17,20,25

**Steve** 13:21 14:15

**Stewart** 15:14,23 17:1,6,14 19:11

**stop** 12:13 16:7 20:21 21:19,21 22:7,
19 25:2 42:24

**stuff** 25:7

**subject** 31:8,18 32:4 38:5

**subpoenas** 34:10

**suggested** 38:15

**summons** 34:11

**supervision** 15:19

**suspend** 38:24 40:18,23

**suspending** 40:22

**suspension** 41:1

---

## T

**taking** 20:5 21:8 23:2 24:11,15

**talk** 5:12 7:14,21 34:2

**talking** 7:24 9:23,24 12:1 40:3

**targeted** 10:21

**telling** 7:25 20:18

**tells** 36:9

**templates** 24:20 25:17

**terminate** 38:25 39:1,22 40:14

**terminating** 45:9

**termination** 37:11

**testified** 4:6 9:18

**testimony** 9:12 18:25 19:3 21:10,13
22:1,3 23:25 24:2,22,24 25:19,21 26:9
27:14 29:8,15 30:25

**thing** 13:8

**things** 19:2

**thinking** 26:23

**thought** 17:7 20:1,17

**thousands** 30:11

**threat** 38:9

**time** 12:14 20:19 22:12 27:8 38:14
45:3

**timeline** 7:3,5

**times** 24:1 43:2

**title** 4:22 5:5,8 11:7

**today** 7:12 9:6 41:7

**today's** 5:15

**told** 9:14

**tom** 38:10

**top** 6:24 26:10,20 27:3

**totally** 43:6,9

**touch** 13:11

**transcript** 18:17 24:4 25:1 26:15
29:17 32:8 39:19

**traveled** 39:23

**treatment** 43:20

**true** 4:16 44:23

**truth** 8:14,22

**truthfully** 9:5

**Tyler** 15:17,23 19:11

**typed** 6:19,20

---

## U

**unable** 45:1

**understand** 8:13,17 40:11 41:4,17
44:21

**understanding** 21:11 31:2,12 33:7

**Understood** 38:19

**unrelated** 31:21

**unwilling** 44:23

**unwillingness** 42:16

---

## V

**vague** 5:20 6:13

**varied** 23:13

**vein** 42:13

**voicemail** 42:21

---

**W**

---

**wait** 41:5

**waive** 22:13

**walk** 14:9,17

**walked** 14:8,19

**walking** 36:22 38:8

**wanted** 21:11,19,21 24:9

**Wasatch** 13:11,12,14,20 14:5,9,20
19:8

**week** 34:21,24

**weekly** 35:23

**window** 36:25

**windows** 36:11,12,18,22 38:4

**word** 16:1 25:5

**work** 4:20 13:12 15:18 17:3,11,19
20:14,15,24 24:7

**worked** 14:20 20:15

**writ** 22:2,23 23:2,4,6 30:5,6,7,8,16,17,
19,21,22 31:7,8,16 32:12,15,18,21,22
35:25 36:1

**writs** 10:9,18,21,25 11:25 23:11
27:23,25 28:6,9,12,15,25 29:3 33:14
34:4,10,20 35:22 36:8,12

---

**Y**

---

**year** 10:3 11:2,3,4 15:1